# EXHIBIT 8

Instrument#: 2015000074995, MTG BK:
5687 PG: 201 DOCTYPE: 002  06/19/2015
at 12:30:06 PM, 1 OF 14
HORRY COUNTY, SC REGISTER OF
DEEDS

ArborOne, ACA
as agent/nominee

Loan No. 042 095 237966-24

PO Box 3699
Florence          , SC  29502

STATE OF SOUTH CAROLINA          )
                                 )          MORTGAGE
COUNTY OF  Horry                 )

        THIS INDENTURE, made this 19th   day of June          , 2015  by and between
Terry Wayne Strickland, Terry W Strickland, Terry Wayne Strickland, as Trustee for the
Terry Wayne Strickland Living Trust UTD April 2, 2010, as Amended and Restated on
December 21, 2011.

hereinafter called Undersigned, whether one or more, and _____
ArborOne, ACA                                      , as agent/nominee  ,
of  Florence              , SC  a federally chartered instrumentality organized,
chartered and existing pursuant to the laws of the United States of America, hereinafter called
Lender, WITNESSETH, that

        WHEREAS, Terry Wayne Strickland

hereinafter called Borrower, whether one or more, is indebted to Lender in the principal sum of
Six Hundred Forty Four Thousand Seven Hundred Ten and 00/100
                      Dollars ($ 644,710.00          ) as evidenced by a certain
note, dated  June 19, 2015          payable to the order of Lender, the final installment of
principal being due and payable 10/01/2025     , with interest from date of said note payable as
and at the rate(s) provided in said note, all of which and such other terms, conditions and
agreements as are contained in said note will more fully appear by reference thereto, which note is
made a part of this mortgage to the same extent as if it were set out in extenso herein.

This mortgage also secures (1) all existing indebtedness of Borrower (or of any one or more of the
parties designated herein as Borrower) to Lender (including but not limited to the above described
note) evidenced by promissory notes or any other instruments, and all renewals, reamortizations,
extensions, refinances, modifications or other rearrangements thereof, together with interest
thereon as provided therein, (2) all future advances that subsequently may be made to Borrower
(or to any one or more of the parties designated herein as Borrower or Undersigned with the written
consent of the remainder of said parties) to be evidenced by promissory notes or any other
instruments, and all renewals, reamortizations, extensions, refinances, modifications or other
rearrangements thereof, together with interest thereon as provided therein, said future advances, if
any, to be made solely at the option of Lender, and (3) all other indebtedness of Borrower (or any
one or more of the parties designated herein as Borrower) to Lender now due or to become due
(whether directly or indirectly) or hereafter contracted, and all renewals, reamortizations,
extensions, refinances, modifications or other rearrangements thereof, together with interest
thereon as provided for, THE MAXIMUM PRINCIPAL AMOUNT OF ALL EXISTING
INDEBTEDNESS, FUTURE ADVANCES, AND ALL OTHER INDEBTEDNESS OUTSTANDING AT

ANY ONE TIME NOT TO EXCEED **Five Million   and 00/100**

DOLLARS (**$ 5,000,000.00**      ), plus interest thereon, attorneys' fees, court costs, and any advances necessary for the protection of the security or title thereto, such as, but not limited to, advances for taxes and insurance premiums, all of which are secured by this mortgage. It is understood and agreed by all parties thereto that the execution by Borrower and the acceptance by Lender of any notes, renewal notes or other instruments, or the agreement by Lender to any reamortizations, extensions, refinances, modifications or other rearrangements as contemplated in this paragraph or elsewhere herein shall not be construed as payment of any indebtedness hereby secured (whether or not, among other changes in terms, the interest rate or rates remain the same and/or time for payment is thereby extended or lessened), and shall not discharge the lien of this mortgage which is to remain in full force and effect until the total indebtedness secured hereby has been paid in full. All notes or other instruments contemplated in this paragraph or elsewhere herein shall remain uncanceled and in possession of Lender, its successors and assigns, until the total indebtedness hereby secured is paid in full. Should the indebtedness secured hereby exceed the maximum above stated, Lender at its option shall have the sole right to determine the priority or order in which the various debts covered hereby shall be secured hereunder within said maximum.

NOW, KNOW ALL MEN, that Undersigned, in consideration of the debt as evidenced by above described note, and for better securing the payment thereof to Lender, according to the terms of said note, and the performance of the conditions and covenants herein contained and to secure any other indebtedness contemplated in the paragraph next above or elsewhere herein, and also in consideration of the sum of One Dollar to Undersigned in hand paid by Lender, receipt whereof is hereby acknowledged, has granted, bargained, sold and released, in fee simple, and by these presents does grant, bargain, sell and release, in fee simple, unto Lender, its successors and assigns, the following described lands, including but not limited to, all trees, timber, shrubbery, fixtures and improvements now and hereafter thereon:

**See attached Schedule "A"**

TOGETHER with all and singular the rights, members, hereditaments and appurtenances to the said premises belonging or in anywise incident or appertaining.

TO HAVE AND TO HOLD all and singular the said premises unto Lender, its successors and assigns in fee simple forever. Undersigned hereby binds himself, his heirs, executors, administrators, successors and assigns, to warrant and forever defend all and singular the said premises unto Lender, its successors and assigns, from and against Undersigned, his heirs, executors, administrators, successors and assigns, and all other persons whomsoever lawfully claiming or to claim the same or any part thereof.

PROVIDED ALWAYS, NEVERTHELESS, and it is the true intent and meaning of the parties to these presents, that if Borrower shall well and truly pay, or cause to be paid, unto Lender, its successors or assigns, the total indebtedness secured hereby, with interest thereon as aforesaid, and shall perform all terms, conditions and covenants according to the true intent of said note, any other instrument above referred to and this mortgage and any other instrument securing said note or other instrument referred to above, then this mortgage shall cease, determine and be utterly null and void; otherwise it shall remain in full force and effect.

FOR THE CONSIDERATION aforesaid, Undersigned covenants as follows:

1. Undersigned is lawfully seized of said property in fee simple and has a perfect right to convey same; there are no encumbrances or liens whatsoever on said property except this mortgage.

2. Undersigned will insure, and keep insured, as required by Lender from time to time, all buildings now and hereafter on said land against such risks, in such form, in at least such amounts, and in such company or companies, as shall be satisfactory to Lender. The loss, if any, under all such insurance policies to be payable to Lender as its interest may appear, and the Undersigned will deliver to Lender a policy or policies of insurance with mortgage clause satisfactory to Lender attached thereto, and will promptly pay when due all premiums for such insurance. In addition to other insurance coverages, if the property is located in a government mandated flood area where participation in a Federal Flood Insurance Program is required, Undersigned agrees that upon receipt of notification from Lender and within the time period established by Lender, Undersigned will obtain and maintain flood insurance in such amount as Lender requires on all buildings, improvements, fixtures and mobile home(s), now existing or hereafter erected, placed or maintained on or in the land described in this mortgage, together with all other personal property securing Undersigned's obligations to Lender and maintained in or on such buildings, improvements and mobile home(s), until the loans, future advances and all other indebtedness

secured by such property and this mortgage are fully paid. Lender may require Undersigned to obtain and maintain such flood insurance at the time the loan(s) secured hereby are made or at any time thereafter until the loans secured by such property are fully paid. Undersigned further agrees to pay Lender all reasonable fees and costs Lender incurs in determining whether any such property is located in an area having special flood hazards including determination fees (of initial and subsequent determination as well as fees for monitoring the flood hazard status of the property during the life of the loan), together with the cost of premiums and fees incurred with purchasing flood insurance for Undersigned, if Undersigned fails to do so within the time period required by Lender. Any such fees, premiums or costs shall, in Lender's sole discretion, be due and payable on demand or as otherwise provided for in the promissory note(s) secured hereby or this mortgage. At the option of Lender insurance funds may be used for reconstruction or repair of the destroyed or damaged insured buildings, and insurance funds not so used shall be applied on such part of the indebtedness secured hereby as Lender in its sole discretion may determine. Undersigned will pay, when due and payable, all taxes, assessments and other charges that may be levied or assessed against said property, and all judgments and all other amounts that may be or become a lien thereon.

3. If required as a condition of any loan secured hereunder, Undersigned shall pay to Lender on the day installments are due, until the note is paid in full or any escrow requirement is otherwise waived in writing by Lender, a sum to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this instrument as a lien or encumbrance on the property; and (b) premiums for any and all insurance required by Lender. Such amounts required hereunder shall be determined in accordance with the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X ("RESPA"). Upon payment in full of all sums secured by this instrument, or if any such escrow requirement is no longer required as a condition of any loan secured hereunder, Lender shall promptly refund to Undersigned any funds held by Lender under this escrow requirement.

4. Undersigned will keep in good order and condition, preserve and repair, rebuild and restore all terraces, buildings, groves, orchards, fences, fixtures, shrubbery and other improvements, of every kind and nature, now on said land and hereafter erected or placed thereon that may be destroyed or damaged by fire, windstorm, flood or otherwise, and will not permit the change, injury or removal thereof, will not commit or permit waste on said land, and will not, except with the written consent of Lender, cut, use or remove, or permit the cutting, use or removal of, any timber or trees on said land for sawmill, turpentine or other uses or purposes, except for firewood and other ordinary farm purposes. Undersigned will also preserve and keep in good order and condition all trees and timber now and hereafter growing upon the said property, and will at all times properly protect the trees and timber against loss or damage by fire, all to the satisfaction of Lender.

5. Undersigned covenants that he will not perform any act which might impair or tend to impair the continuation on the property herein described of all crop allotments and acreage allotments now established or hereafter established on any of the property herein described and hereby grants a lien on said allotments to Lender.

6. Time is of the essence in the performance of the above recited note, of this instrument and of any other instrument secured hereby. If Borrower and/or Undersigned fail to comply with any covenant, condition or agreement in this instrument or in the said note or in any reamortization, renewal, refinance, modification, extension or in any other instrument secured hereby, Lender may, at its option, exercise any one or more of the following rights, powers, privileges and remedies:

    (a) Perform any one or more of the covenants of Borrower and/or Undersigned in this instrument, in the said note, and in any other instrument secured hereby, and all amounts advanced by Lender in doing so shall be due and payable by Borrower and/or Undersigned to Lender immediately without notice, and shall be secured by this instrument, and shall bear interest from the date of advance by Lender at the highest rate provided in any note or other instrument secured hereby.

    (b) Declare all amounts secured by this instrument immediately due and payable without notice.

    (c) Proceed immediately to foreclose this mortgage, and pursue such other remedies as may be authorized by law.

7. As further security for the payment of the note herein described, all other indebtedness secured hereby, and for the performance of all the terms, conditions and covenants of said note, of any other instrument secured hereby and of this mortgage, upon and during default under this instrument or the said note or any other instrument secured hereby, Undersigned hereby transfers, assigns and sets over to Lender all of the crops sown or growing upon the said mortgaged premises and all of the rents, issues and profits of the said mortgaged premises, and Lender shall be entitled to have a receiver appointed to take charge of the said mortgaged premises, and the crops sown or growing thereon, together with the said rents, issues and profits arising therefrom and hereby assigned, and hold the same subject to the order and direction of the court.

8. That he hereby represents and warrants to Lender that there are no materials (hereinafter collectively called "Special Materials") presently located on or near the premises which, under federal, state or local law, statute, ordinance, regulation or standard or administrative or court order or decree or private agreement (hereinafter collectively called "Environmental Requirements"), require special handling in use, generation, collection, storage, treatment or disposal, or payment of costs associated with responding to the lawful directives of any court or agency of competent jurisdiction or for similar economic loss. Such Special Materials include those that violate any national or local contingency plan or the release or threatened release of which may violate or create liability under the Environmental Requirements. Such Special Materials also include (a) asbestos in any form, (b) urea formaldehyde foam insulation, (c) paint containing lead or (d) transformers or other equipment which contain dielectric fluid containing polychlorinated biphenyls (commonly referred to as "PCBs"). Undersigned further represents and warrants to

D01310SC (0208)                                                    Page 3 of 7

Lender that the premises are not now being used nor have they ever been used in the past for activities including the use, generation, collection, storage, treatment or disposal of any Special Materials, and in particular, without limiting the generality of the foregoing, the premises are not now being used nor have they ever been used in the past for a landfill, surface impoundment or other area for the treatment, storage or disposal of solid waste (including solid waste such as sludge). Undersigned will not place or permit to be placed any such Special Materials on or near the premises. Nothing herein shall be deemed to prohibit or restrict the use, collection, storage, treatment or disposal in a manner consistent with applicable Environmental Requirements, of insecticides, herbicides, or other pesticides, fertilizers or petroleum products (including gasoline, motor fuel, crankcase oil, heating oil) as part of the agricultural operations now or hereafter conducted by Undersigned on the premises in a good and husbandlike manner. Undersigned further represents and warrants to Lender that there are no wells or septic tanks or other underground tanks (whether currently in use or abandoned-in-place) on the premises serving any other property and that there are no wells or septic tanks on other property serving the premises. If at any time it is determined that there are Special Materials located on the premises which under any Environmental Requirement require special handling in use, generation, collection, storage, treatment or disposal, Undersigned shall, within 30 days after having obtained actual knowledge thereof, take or cause to be taken, at Undersigned's sole expense, such actions as may be necessary to comply with all Environmental Requirements. If Undersigned shall fail to take such action, Lender may make advances or payments towards performance or satisfaction of the same but shall be under no obligation so to do; and all sums so advanced or paid, including all sums advanced or paid in connection with any judicial or administrative investigation or proceeding relating thereto, including, without limitation to the extent permitted by applicable law, reasonable attorneys' fees, fines or other penalty payments, shall be at once repayable by Undersigned and all sums so advanced or paid shall become a part of the Indebtedness secured hereby. Failure of Undersigned to comply with all Environmental Requirements shall constitute and be a default under this mortgage. Undersigned hereby agrees to indemnify and hold Lender harmless to the extent permitted by applicable law for all loss, liability, damage, cost and expenses, including reasonable attorneys' fees, for failure of the premises to comply in all respects with the Environmental Requirements or a breach by Undersigned of any representation, warranty or agreement herein. THE COVENANTS, AGREEMENTS, REPRESENTATIONS, WARRANTIES AND INDEMNITIES OF UNDERSIGNED CONTAINED IN THIS PARAGRAPH SHALL SURVIVE THE OCCURRENCE OF ANY EVENT WHATSOEVER, INCLUDING BUT NOT LIMITED TO, THE PAYOFF OF THE NOTE(S) SECURED HEREBY, THE RELEASE OR FORECLOSURE OF THIS MORTGAGE, OR THE ACCEPTANCE BY THE LENDER OF A DEED IN LIEU OF FORECLOSURE.

9. In the event the indebtedness secured hereby, or any part thereof, is established by or in any action for foreclosure of this mortgage, Lender may also recover of Borrower and/or Undersigned, in addition to the said debt or so much thereof as shall be unpaid, a reasonable sum for attorneys of Lender for professional services rendered in such action, such fee to be incorporated in the judgment of foreclosure in such action.

10. Undersigned shall hold and enjoy the said premises until default in payment of any of the installments as provided in the above recited note or other instrument secured hereby, or a breach of any of the covenants or conditions of the above recited note or other instrument secured hereby, or this mortgage shall be made; however, any agent or employee of Lender or any person designated by Lender may enter upon said premises at any time for the purpose of inspecting same or for any other purpose desired by Lender.

11. All amounts that may hereafter be awarded for condemnation of, and waste and tortious injury to, any of the property hereby encumbered are hereby assigned and shall be payable unto Lender for application, after payment therefrom of attorneys' fees and expenses incurred by Undersigned and by Lender in connection therewith, on such part of the Indebtedness secured hereby as Lender may determine, with no duty on Lender to collect same.

12. In the event Lender becomes a party to any legal proceeding (excluding an action to foreclose this mortgage or to collect the debt hereby secured) involving this mortgage or the premises described herein (including but not limited to the title to the lands described above), Lender may also recover of Borrower and/or Undersigned all costs and expenses reasonably incurred by Lender, including reasonable attorneys' fees, which costs, expenses and attorneys' fees when paid by Lender shall become a part of the debt secured hereby and shall be immediately payable upon demand, and shall draw interest from the date of advance by Lender until paid at the highest rate provided in any note or other instrument secured hereby.

13. Undersigned agrees as a condition hereof that all obligations, assignments, releases of real property and/or personal liability, reamortizations, renewals, refinances, extensions, modifications or other rearrangements or any other agreement, in writing, made or entered into by Lender with any one or more of the parties herein designated as Borrower and/or Undersigned, with any party or parties obligated (primarily or otherwise) to pay any or all of the indebtedness secured hereby, or with any party or parties who have given security of any kind for any or all of the indebtedness secured hereby, are hereby authorized and consented to by all parties herein designated as Undersigned and shall extend to and be binding upon the heirs, executors, administrators, successors and assigns of all the parties herein designated as Undersigned.

14. Undersigned agrees as a condition hereof that if a conveyance, lease or other disposition should be made voluntarily by Undersigned (or by any one or more of the parties designated herein as Undersigned) of any title or interest in and to the real property described above, or any part thereof, without the written consent of the lawful holder of this mortgage, or if such title or interest of Undersigned (or of any one or more of the parties designated herein as Undersigned) is involuntarily conveyed or transferred as the result of foreclosure of a junior lien or is required under court order or decree as the result of litigation (conveyance or transfer of title or interest resulting from death of Undersigned, or any of the Undersigned, if more than one, excepted), without the written consent of the lawful holder of this mortgage, then and in either of said events, and at the option of said holder, and without notice to Borrower or Undersigned, all sums of money secured hereby shall become due and payable and in default immediately and concurrently with such conveyance, transfer, lease or other disposition, whether the same are so due and payable and in default by the specific terms hereof or not.

15. Lender shall have the right, exercisable at its discretion so long as this mortgage is in force and effect, to demand in writing the assignment of and transfer to Lender, its successors and assigns, and Undersigned hereby agrees to so assign and transfer, any and all rents, profits, royalties, income or other consideration to be paid or accruing to Undersigned from any oil, natural gas, mineral, timber, leasehold or other interest of any kind and nature whatsoever, derived from, connected with or affecting the within described real property but not otherwise subject to, conveyed and/or secured by this mortgage, with the right of, but no duty upon, Lender, its successors or assigns, to collect same.

16. Borrower and/or Undersigned will comply with all the terms and conditions of any instrument heretofore or hereafter executed by Borrower and/or Undersigned in connection with the loan(s) secured by this mortgage.

17. If Borrower or Undersigned (or any of them), their heirs, successors or assigns, or any assumer of the indebtedness hereby secured, files a petition in voluntary bankruptcy, for receivership, for corporation reorganization, or for other debtor relief of any character or kind, or is adjudged a bankrupt, then and in the event, and at the option of the Lender, its successors and assigns, the Lender, without notice to Borrower and/or Undersigned, shall have the right to declare all sums of money secured hereby immediately due and payable and in default whether the same are so due and payable and in default by the specific terms hereof or not.

18. A default under this instrument or under any other instrument heretofore or hereafter executed by Borrower and/or Undersigned to Lender shall at the option of Lender constitute a default under any one or more or all instruments executed by Borrower and/or Undersigned to Lender.

19. An event of default under this instrument will occur if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce or to make possible the production of an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. Upon default, the entire indebtedness secured hereby shall, at the option of the Lender, become immediately due and payable with interest thereon at the billing rate then in effect without notice, and this instrument may be foreclosed accordingly.

20. Undersigned (if the same as Borrower) agrees as a condition hereof to provide current financial statements, including a balance sheet and income statement, in a form acceptable to Lender, as may be requested by Lender of Borrower while the indebtedness secured hereby or any other indebtedness from Borrower to Lender is outstanding.

21. It is understood and agreed that all advances heretofore, now and hereafter made by Lender to Borrower, and all indebtedness now and hereafter owed by Borrower to Lender, and any other present or future indebtedness or liability of Borrower to Lender, whether as principal debtor, surety, guarantor, endorser or otherwise, will be secured by this instrument until it is satisfied of record. It is further understood and agreed that Lender, at the written request of Borrower or Undersigned, will satisfy this mortgage whenever: (1) Borrower owes no indebtedness to Lender, (2) Borrower has no liability to Lender, and (3) Lender has not agreed to make any further advances to Borrower.

22. All rights, powers, privileges, options and remedies conferred upon and given to Lender are cumulative of all other remedies and rights allowed by law, and may be pursued concurrently, and shall extend to and may be exercised and enjoyed by the successors and assigns of Lender, and by any agent, officer, attorney or representative of Lender, its successors or assigns. All obligations of, and assignments by, Undersigned herein and hereunder shall extend to and be binding upon the heirs, executors, administrators, successors and assigns of Undersigned.

23. The laws of South Carolina provide that in certain real estate foreclosure proceedings a defendant against whom a personal judgment is taken or asked may within thirty days after the sale of the mortgaged property apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. UNDERSIGNED, EXCEPT TO THE EXTENT PROHIBITED BY LAW, HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE MORTGAGED PROPERTY.

THIS MORTGAGE IS EXECUTED BY THE MORTGAGOR IN FAVOR OF, AND THE TERM "MORTGAGEE" AS USED HEREIN SHALL INCLUDE, ArborOne, ACA, FOR ITSELF AND AS AGENT/NOMINEE FOR ANY PARTY PURSUANT TO A MASTER AGREEMENT AMONG IT AND ITS WHOLLY-OWNED SUBSIDIARIES ArborOne, FLCA AND ArborOne, PCA, AS THEIR INTERESTS MAY APPEAR.

IN WITNESS WHEREOF, Undersigned has hereunto set his hand and seal (and if Undersigned is or includes a corporation, it has caused this instrument to be executed, sealed by its corporate seal and delivered by its duly authorized officers), this the day and year first above written.

Signed, Sealed and Delivered in the presence of:

_____
WITNESS

_____
WITNESS


_____ (SEAL)
Terry Wayne Strickland

_____ (SEAL)
Terry W Strickland

_____ (SEAL)
Terry Wayne Strickland, as Trustee for the Terry Wayne Strickland Living Trust UTD
April 2, 2010, as Amended and Restated on December 21, 2011

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)


D01310SC (0208)                              Page 6 of 7

IT IS NOT NECESSARY TO RECORD A WRITTEN ASSIGNMENT OF A MORTGAGE
BETWEEN FARM CREDIT INSTITUTIONS IN THE RECORDING OFFICE IN THE COUNTY
WHERE THE REAL PROPERTY IS LOCATED TO PERFECT A VALID ASSIGNMENT AND
SECURITY INTEREST THEREIN.

STATE OF SOUTH CAROLINA         )
                                      )

COUNTY OF    HORRY              )

       Personally appeared before me
                     , and made oath that (s)he saw the within-named Terry Wayne Strickland

a/k/a Terry W. Strickland and Terry Wayne Strickland, as Trustee

sign, seal, and as (his/her/their) act and deed deliver the within mortgage, and that (s)he, with

witnessed the execution hereof.

Sworn to and subscribed before me
this the  *19*  day of  *June* ,  *2015*

_____ (L.S.)
Notary Public for South Carolina
My Commission Expires: _2·5·23_

STATE OF SOUTH CAROLINA      )
                                     )

COUNTY OF               )

       Personally appeared before me
                   , and made oath that (s)he saw the within-named
                            , a corporation, by
                        , as its
and                                  , as its
              , for and as the act and deed of the said corporation, sign, seal, and
deliver the within mortgage, and that (s)he, with
               , witnessed the execution thereof.

SWORN to and subscribed before me
this      day of

_____ (L.S.)
Notary Public for South Carolina
My Commission Expires: _____

STATE OF SOUTH CAROLINA
COUNTY OF

       I hereby certify that the within mortgage was filed and/or lodged for record in my office at
___ M. on the _____ day of _____, _____, and immediately entered on the
proper indexes and duly recorded in Real Estate Mortgage Book _____, at Page(s) _____.

     Clerk of Court of Common Pleas and General Sessions, Register of Mesne Conveyance.

## SCHEDULE "A"

((THIS SCHEDULE A IS ATTACHED TO AND MADE PART OF THE SECURITY INSTRUMENT
BEARING ACA LOAN # ))    42-95-237966-24

PARCEL 1:    TMS #: 015-00-01-011
ALL that certain piece, parcel or tract of land, together with improvements thereon, lying on the
Eastern side of South Carolina Highway # 33, in the Green Sea Township, and containing 13.2 acres,
more or less, the same being a portion of the old D. C. Fussell tract and being more particularly
described as follows:

Beginning at a stake corner on the Eastern side of South Carolina Highway # 33 and in the corner of
George L. Hill land line; thence, turning and running N 02 degrees 0 minutes West along with S. C.
Highway # 33 for approximately 803.9 feet to a stake corner; thence, North 8 degrees 36 minutes
East for 231.2 feet to a stake corner in V. L. Turbeville line; thence, South 82 degrees 11 minutes
East for 359.1 feet along with V. L. Turbeville line to a stake corner; thence, North 25 degrees 23
minutes East for 89.0 feet to a stake corner, thence, South 67 degrees 30 minutes East for 133.5 feet
to a stake corner in Odell Hill line; thence, along with Odell Hill line South 02 degrees 0 minutes East
for 996.6 feet to a stake corner in the George L. Hill line; thence, North 87 degrees East for 560.4 feet
along with George L. Hill line to the beginning corner.

Being bound as follows: North by land of V, L, Turvbeville, East by land of Odell Hill, South by other
land of George L. Hill, and West by South Carolina Highway # 33 and E. L. Buffkin Estate.

For further reference, see Survey Plat dated October, 1963 and surveyed by Robert D. Inman, R.L.S.
# L851 (NC).

LESS AND EXCEPTING:
Tract 1: All and Singular, all that certain piece, parcel or lot of land lying and being in Green
Sea Township, State and County aforesaid, containing 0.09 acres according to a plat of
survey prepared for David N. Collins and Debbie M. Collins by Jack F. Davis, RLS, dated
July 20, 1999, recorded September 8, 1999 in Plat Book 165 at page 80 in the office of the
ROD for Horry County.  Said plat being incorporated herein by reference and made a part
and parcel hereof.  This being the identical property conveyed by George L. Hill to Terry W.
Strickland by Deed recorded September 22, 1999 in Deed Book 2190 at page 58 in the
office of the ROD for Horry County, South Carolina.  TMS #: 015-00-01-094

Tract 2: All and Singular, all that certain piece, parcel or lot of land lying and being in Green
Sea Township, State and County aforesaid, containing 1.31 acres according to a plat of
survey prepared for David N. Collins and Debbie M. Collins by Jack F. Davis, RLS, dated
July 20, 1999, recorded September 8, 1999 in Plat Book 165 at page 80 in the office of the
ROD for Horry County.  Said plat being incorporated herein by reference and made a part
and parcel hereof.  This being the identical property conveyed by George L. Hill to David N.
Collins and Debbie M. Collins by Deed recorded September 22, 1999 in Deed Book 2190 at
page 64 in the office of the ROD for Horry County, South Carolina.  TMS #: 015-00-01-108

Tract 3: All and Singular, all that certain piece, parcel, or lot of land lying and being in Green
Sea Township, State and County aforesaid, containing 1.94 acres according to a plat of
survey prepared for George L. Hill by Jack F. Davis, RLS, dated December 10, 1999,
recorded February 24, 2000 in Plat Book 168 at page 33 in the office of the ROD for Horry
County.  Said plat being incorporated herein by reference and made a part and parcel
hereof.  This being the identical property conveyed by George L. Hill to Ginny H. Livingston
and Davis Henry Livingston, Jr. by Deed recorded March 10, 2000 in Deed Book 2241 at
page 760 in the office of the ROD for Horry County, South Carolina.  TMS #: 015-00-01-109

Tract 4: ALL AND SINGULAR, all that certain piece, parcel or lot of land lying and being in
Green Sea Township, State and County aforesaid, containing 2.02 acres, as more fully
shown on that certain plat of survey prepared for Debbie Jean Collins and David Nathan
Collins by Jack F. Davis, R.L.S., dated September 2, 2009, recorded October 2, 2009 in Plat

D36202SA




Book 245 at page 244 in the office of the ROD for Horry County, South Carolina. Said plat is
incorporated herein by reference and made a part and parcel of this description. owned by
David N. Collins and Debbie M. Collins as more fully shown on the hereinabove referenced
plat.  This being the identical property conveyed by George L. Hill to David N. Collins and
Debbie M. Collins by deed recorded October 9, 2009 in Deed Book 3424 at page 3380 in the
office of the ROD for Horry County, South Carolina.  This property is to be combined with
TMS Number: 015-00-01-108

Tract 5:  All and Singular, all that certain piece, parcel or lot of land, lying and being in Green
Sea Township, County and State aforesaid, containing 3.25 acres, more or less, as shown
on  that certain map of survey prepared by Carolina Land Surveyors, LLC, dated October
28, 2005 and recorded in Plat Book 214 at page 223 in the Office of the ROD for Horry
County.   Said plat being incorporated herein by reference and made a part and parcel
hereof.  Said land is bounded on the West by Fair Bluff Highway; on the South by remaining
portion of the lot herein; on the East by Dorris and Odel Hill; and on the North by a remaining
portion of land owned by George L. Hill and Ginny H. and Davis Henry Livingston, Jr.  This
being the identical property conveyed by George L. Hill to Jeffrey S. Reynolds and Kim E.
Reynolds by Deed recorded June 22, 2006 in Deed Book 3117 at page 488 in the office of
the ROD for Horry County, South Carolina.  TMS #: 015-0-01-129

PARCEL 2:   TMS #: 015-00-01-154
ALL AND SINGULAR, all that certain piece, parcel or tract of land lying and being in Green Sea
Township, State and County aforesaid, being designated as Tract B, containing 8.33 acres, as more
fully shown on that certain plat of survey prepared for The Estate of G. L. Hill by Jack F. Davis, R.L.S.,
dated October 19, 2011, recorded May 15, 2012 in Plat Book 254 at page 263 in the office of the
ROD for Horry County, South Carolina.  Said plat being incorporated herein by reference and made a
part and parcel of this description.

Together with the right of ingress, egress and other customary usages to that certain 30' Private
Shared Driveway as more fully shown on the hereinabove referenced plat of survey.

Parcels 1 & 2 derivation: This being the identical property conveyed by Ginny Hill Oxendine to Terry
Wayne Strickland by deed dated April 8, 2014, recorded April 8, 2014 in Deed Book 3725 at page
2578 in the office of the ROD for Horry County, South Carolina.

PARCEL 3:   TMS #: 015-00-01-128
Tract 1:
All and Singular, all that certain piece, parcel or tract of land situate, lying and being in Green Sea
Township, County and State aforesaid  and being more particularly described 11.79 acres, as shown
on a plat of survey made by Jack F. Davis, RLS, dated September 24, 2005 and  recorded October
18, 2005 in Plat Book  208 at page 141. in the Office of the ROD for Horry County. Said plat is
incorporated herein by reference  and made a part and parcel hereof.

Tract 2:
All and Singular, all that certain piece, parcel or lot of land lying and being in Green Sea Township,
County and State aforesaid, and known as the home tract , bound and described as follows:

Commencing at a corner on the South side of a county road, this being the common corner of this lot
and property of G.L. Hill, and running with the G.L Hill line a South direction 105 feet to a corner;
thence a Westward direction with the G.L. Hill line 181 feet to a corner; thence with the G.L. Hill line a
Northward direction 105 feet to a corner on county road; thence with said road an Eastward direction
181 feet to the beginning corner.

LESS AND EXCEPTING:
ALL AND SINGULAR, all that certain piece, parcel or lot of land lying and being in Green
Sea Township, State and County aforesaid being 1.00 acre as more fully shown upon a plat
of Lot Reconfiguration Survey for Everette Guy Long and Margie Dianne Long  by James E.
Hayes, Jr., RLS of Affiliated Surveyors, dated January 6, 2006, recorded February 10, 2006
in Plat Book 211 at page 188 in the office of the ROD for Horry County, South Carolina. Said
plat being incorporated herein by reference and made a part and parcel of this description.

This being the identical property conveyed by Horry County State Bank to Terry Wayne Strickland by

deed dated May 6, 2014, recorded May 6, 2014 in Deed Book 3731 at page 2584 in the office of the
ROD for Horry County, South Carolina.

PARCEL 4:   TMS# 015-00-01-001
Tract 1:
All that certain piece, parcel or tract of land, together with improvements thereon, situate, lying and
being in Green Sea Township, State and County aforesaid, on the Eastern side of the old Play Card
Road and containing sixteen (16) acres, more or less, and being more particularly described as
follows:

Commencing at a stake corner on the Eastern edge of the old Play Card Road at the Southwestern
corner of the Elray Buffkin tract and running in a northeasterly direction and in a straight line and
along the edge of the Elray Buffkin tract to a stake corner in a ditch; thence turning and running in a
easterly direction along said ditch to a stake corner in the turn of the said ditch; thence turning and
running in a northeasterly direction to a stake corner in the mouth of the said ditch at or near a little
branch; thence turning and running in easterly direction to a stake corner in the run of the said branch
along the Vollie Turbeville land to a stake corner in the run of said branch at or near the mouth of
another ditch; thence turning and running in a southeasterly direction along the tract this day
conveyed to Vollie Turbeville to a stake corner  near the mouth of a ditch; thence turning and running
in a southerly direction along said ditch and along the edge of the tract this day conveyed to Vollie
Turbeville to a stake corner in the turn of said ditch; thence turning and running in a westerly direction
along the said ditch to a stake corner in the turn of the said  ditch; thence turning in a southerly
direction and following the said ditch to a stake corner ( the same being the southeastern corner of the
old Giles Strickland tract); thence turning and running in a westerly direction and following the said
ditch to  a stake corner on the eastern side of the old Play Card Road ( the same being  the
Southwestern corner of the old Giles Strickland tract); thence turning and running in a northerly
direction along the Eastern edge of the old Play Card Road to the beginning corner. Bounded on the
North by the tract this day conveyed to Vollie Turbeville and the tract this day conveyed to Joseph B.
Turbeville and a portion of the tract this day conveyed to Sally T. Strickland; on the South by a portion
of the tract this day conveyed to Sally T. Strickland; on the West by the old Play Card Road.

Tract 2:
All that certain piece, parcel or tract of land together with improvements thereon situate, lying and
being on the East side of the old Play Card Road and on the South side of Crooked Run Branch in
Green Sea Township, containing sixteen (16) acres, more or less, and being a portion of the old B.A.
Anderson tract and being more particularly described as follows:

Commencing at  an old stake corner at the northwestern corner of the tract herein conveyed and
being a corner common to this property and Vollie Turbeville's property and running from said corner
in a Southeasterly direction along the run of Crooked Run Branch to a Sweet Gum corner in the run of
said branch, being the southeastern corner of this tract and the Northwestern corner of the tract
conveyed to Essie T. Hill; thence about eighty- four (84 ft.) feet to a pine corner ( the same being a
corner of the tract conveyed to Essie T. Hill); thence turning and running in a southerly direction and in
a straight line and following the western boundary line of the tract conveyed to Essie T. Hill to a ditch
on the southern side of the old community road; thence turning and running in an easterly direction
and following said ditch along the southern side of said community road to a point on the eastern line
of the Old Giles Strickland tract at or near the southern edge of the community road; thence turning
and running in a northerly direction and in a straight line with a ditch and with an eastern boundary of
the old Giles Strickland tract to a corner in the bend of a ditch; thence turning and running in a
Easterly direction and along said ditch to a stake corner in the turn of said ditch; thence turning and
running in a Northerly direction and along said ditch to a stake corner in the run of the little branch;
thence turning and running in a westerly direction along the run of said branch to a southeastern
corner of the Vollie Turbeville property in said branch; thence turning and running in a northeasterly
direction along the eastern boundary of the Vollie Turbeville property to the beginning corner.
Bounded on the North by Crooked Run Branch; on the East by the tract this day conveyed to Joseph
B. Turbeville; on the West by a portion of the tract conveyed to James French Turbeville and the
property of Vollie Turbeville.

Tract 3:
All and singular, one certain tract or parcel of land containing fifty (50) acres, more or less, in Green
Sea Township on the east side of the Old Play Card Road, bound as follows; commencing at a stake
on corner A.G. Strickland line; thence nearly East course with said Strickland line to the run of

Crooked Run Branch; thence with said Branch to the mouth of Little Crooked Run Branch; thence nearly West course with run of said Branch to an agreed corner of E. K. Wilson's line to the beginning corner.

Tract 4:
All that certain tract of land lying and being in Green Sea Township, Horry County, South Carolina, containing twenty-one (21) acres, more or less, and on the East side of the Play Card and Conway County Road. Beginning on George W. Buffkin corner thence said road Northward 175 yards to a stake corner; thence Southeast 608 yards to the run of Crooked Run Branch; thence up said Branch to G.L. Turbeville corner 146 yards; thence Southwestwerly to a corner on G.L. Turbeville 183 yards; thence straight line Southwesterly 486 yards; thence to line Southwesterly 486 yards; thence to the beginning corner and containing 21 acres, more or less, known as the William Strickland land conveyed to Randle Fully.

PARCEL 5:    015-00-01-007
ALL AND SINGULAR all that certain piece, parcel or tract of land situate, lying and being in Green Sea Township, Horry County, South Carolina, in School District No. 2, about One (1) mile south of the North Carolina State line on the West side of the Green Sea-Fair Bluff Highway, containing 23.15 acres, more or less, and being bounded now or formerly as follows:  On the Northeast by Flossie Strickland; on the Southeast by V. Carlisle Buffkin and Eldred Buffkin; and on the West by Carrietta Strickland and W.P. Strickland.

The above described land is more particularly shown on a map or survey by J.F. Thomas, R.L.S., dated August 23, 1973 and recorded in Plat Book 56 at page 166, in the office of the Clerk of Court for Horry County, reference to which is craved as forming a part and parcel hereof.

PARCEL 6:    TMS #: 010-00-01-111
ALL AND SINGULAR, all that certain piece, parcel or tract of land lying and being in Green Sea Township, State and County aforesaid, containing 13.55 acres, as more fully shown on that certain plat of survey prepared for Eddie Lascoe Strickland and Allyson S. Strickland by Lower Carolina Surveying, dated November 15, 2010, recorded March 9, 2011 in Plat Book 251 at page 93 in the office of the ROD for Horry County, South Carolina.  Said plat being incorporated herein by reference and made a part and parcel of this description.

PARCEL 7:    TMS #: 015-00-01-094
Tract 1:
All and Singular, all that certain parcel or tract of land, together with the improvements thereon, situate, lying and being in Green Sea Township, Horry County, South Carolina, containing 53.5 acres, more or less, lying approximately 6 miles North of Green Sea, South Carolina, on both sides of the highway leading from Green Sea South Carolina to Fair Bluff, North Carolina in High School District Number 3, being more particularly bounded and described as follows:

North by lands of V.L. Turbeville and Flossie Strickland; East by lands of V.L. Turbeville; South by lands of V.A. Buffkin; West by lands of V.A. Buffkin and Robert Buffkin.

For a more accurate and complete description of this tract of land reference is made to a map thereof made for Elery Buffkin dated January 28, 1935, by W.J. Baldwin, Surveyor, and recorded in the office of the RMC for Horry County in Plat Book 30 at page 70.

LESS AND EXCEPTING:
Tract 1: All and Singular, all that certain piece, parcel or lot of land lying and being in Green Sea Township, State and County aforesaid and containing 1.94 acres, more or less, as more fully shown on that certain plat of survey prepared for James E. Clardy by Soles & Walker, P.A., R.L.S., dated February 20, 1991, recorded in Deed Book 1452 at page 352 in the office of the ROD for Horry County, South Carolina.  Said plat being incorporated herein by reference and made a part and parcel hereof.  This being the identical property excluded from that certain deed from James E. Clardy to Terry Wayne Strickland, dated February 21, 1991, recorded February 22, 1991 in Deed Book 1452 at page 349 in the office of the ROD for Horry County, South Carolina.

Tract 2:  All my right, title and interest to that certain piece, parcel or tract of land lying, situate and being in Green Sea Township and more particularly shown on a plat by Soles &

Walker, P.A., R.L.S., dated March 6, 1991 and by reference thereto is incorporated as a part and parcel of this description.

This parcel is triangular in shape and is more particularly described as follows: Beginning at an iron in the center of the soil road and running North 82 degrees 21 minutes, 36 seconds East 133.3 feet to a nail in the center line of S.C. Highway 33; thence, North 1 degree 38 minutes, 24 seconds West, approximately 190 feet of the within tract line and the line designated "old line" on the aforesaid plat; thence, in a Southerly direction to the beginning point.

This is the agreed line between the grantor herein and the grantee, Landis Buffkin, as is shown on the aforesaid plat.

This being the identical property conveyed by Terry Wayne Strickland to Landis Buffkin and Joyce Buffkin by deed dated March 21, 1991, recorded March 22, 1991 in Deed Book 1458 at page 80 in the office of the ROD for Horry County, South Carolina.

Tract 3:
All and Singular, all that certain piece, parcel, or lot of land lying and being in Green Sea Township, State and County aforesaid, containing 0.06 acres according to a plat of survey prepared for David N. Collins and Debbie M. Collins by Jack F. Davis, RLS, dated July 20, 1999, recorded September 8, 1999 in Plat Book 165 at page 80 in the office of the ROD for Horry County. Said plat being incorporated herein by reference and made a part and parcel hereof.   This being the identical property conveyed by Terry Wayne Strickland to David N. Collins and Debbie M. Collins by deed recorded September 22, 1999 in Deed Book 2190 at page 68.

Tract 4:
All and Singular, all that certain piece, parcel or lot of land lying and being in Green Sea Township, State and County aforesaid, containing 0.01 acres according to a plat of survey prepared for David N. Collins and Debbie M. Collins by Jack F. Davis, RLS, dated July 20, 1999, recorded September 8, 1999 in Plat Book 165 at page 80 in the office of the ROD for Horry County. Said plat being incorporated herein by reference and made a part and parcel hereof.   This being the identical property conveyed by Terry Wayne Strickland to George L. Hill by deed recorded September 22, 1999 in Deed Book 2190 at page 61 in the office of the ROD for Horry County, South Carolina.

This being a portion of the property conveyed by James E. Clardy to Terry Wayne Strickland by deed dated February 21, 1991, recorded February 22, 1991 in Deed Book 1452 at page 349 in the office of the ROD for Horry County, South Carolina.

TRACT 2:
All and Singular, all that certain piece, parcel or lot of land lying and being in Green Sea Township, State and County aforesaid, containing 0.09 acres according to a plat of survey prepared for David N. Collins and Debbie M. Collins by Jack F. Davis, RLS, dated July 20, 1999, recorded September 8, 1999 in Plat Book 165 at page 80 in the office of the ROD for Horry County.   Said plat being incorporated herein by reference and made a part and parcel hereof.

This being the identical property conveyed by G.L. Hill to Terry W. Strickland by deed dated September 10, 1999, recorded September 22, 1999 in Deed Book 2190 at page 58 in the office of the ROD for Horry County, South Carolina.

TRACT 3:
ALL AND SINGULAR, that certain piece, parcel or tract of land lying, being and situate in Green Sea Township, containing 1.21 acres, more or less and being more particularly designated as Tract 2 on a plat by Soles & Walker, P.A., RLS, dated March 6, 1991 and by reference thereto is incorporated as a parcel of this description.

The property is more particularly bounded as follows:  on the North by other lands of Vollie L. Turbeville, Landis Buffkin, Joyce Buffkin and Virginia T. Strickland; on the East by other lands of Landis and Joyce Buffkin; on the South by lands of G.L. Hill in part and South Carolina Highway 33 in part; on the West by the center line of South Carolina Highway 33.

**PARCEL 8:    TMS #: 010-00-01-034**
All and Singular, all that singular all the certain piece, parcel or tract of land situate, lying and being in Green Sea Township, County and State aforesaid, containing thirty (30) acres, more or less, and being more particularly described as follows:

Commencing at a stake corner on an old neighborhood road leading from Gapway Swamp to the State line road; thence running along said road a Southern direction 40 yards to an iron stake, thence a Western direction 48 yards to a stump corner; thence 35 degrees 45 Min. Southeast 94 feet; thence 11 deg. 40 min. Southeast 460 ft. to a corner; thence 18 deg. Southeast 100 ft. to a gum, thence 88 deg. 15 min. Southeast 1104 ft. to a stake; thence 20 deg. Northeast 297 ft. to a stump; thence 66 deg. 10 min. Southeast 913 feet to a stake corner on the State line; thence running the State line 43 deg. Northwest 733 ft. to a point on line, bearing No. 36; thence a straight line a Western direction back to beginning corner.

Bounded on the North by land of C. A. Buffkin, and on the East by the state line; on the South by N. H. Buffkin, and on the West by lands of C. A. Buffkin.

For a more complete description reference is craved to map of S. D. Cox, Jr. dated October 25th, 1939, being a survey of Horry County.

> Less and Excepting:
> 2/10 of an acre, more or less, deeded to C.A. Buffkin by Gertured B. Strickland, which is excepted from the operation of this deed, per deed book 1848 at page 866 in the office of the ROD for Horry County, South Carolina.

**PARCEL 9:    TMS #: 010-00-01-050**
All and singular, all that certain piece, parcel or lot or tract of land situate, lying and being in Green Sea Township, Horry County, South Carolina and containing 38.1 acres, more or less and being more particularly bounded and described as follows:

Lying on the Southern side of the State Line Road leading from Norton to Spring Branch beginning in the center of the road and ditch; thence North 31 degrees 30 minutes East with said ditch 1 chain and 12 links to the curve of said ditch, thence South 2 degrees 28 minutes West to the center of said ditch 12 chains 84 links to a stake, thence South 86 degrees 30 minutes East 16 chains 71 links to a stump; thence North 19 degrees East 18 chains 81 links to a stake at the Northern edge of said road; thence with the Northern edge of said road North 62 degrees West 6 chains 80 links to the center of a small ditch; thence with the center of the said ditch North 7 degrees 20 minutes East 9 chains 5 links to a stake; thence South 70 degrees 5 minutes West 15 chains 26 links to a stake at the edge of the road; thence North 3 degrees 14 minutes East with the edge of said road 10 chains 91 links to the center of the State Line Road; thence with the center of State Line Road 63 degrees 27 minutes West 3 chains to the beginning corner.

For a more detailed description reference is craved to a certain map or blue print made by T. P. Hinson for J. Hibert Strickland and dated February, 1949, recorded in Plat Book 8 at page 7A. This tract being designated as Tract No. 1 on said map or blue print.

**PARCEL 10:    TMS #: 010-00-01-100**
All and singular all that a certain piece, parcel or tract of land situate, lying and being in Green Sea Township, County and State aforesaid, containg Forty-seven and Forty-five one hundredths (47.45) acres, more or less, and being more particularly described as follows:

Beginning at a Stake N on the East side of the Old Tram Road, being on the South side of the C. A. Buffkin tract of land, thence 71 deg. 40 minutes Norheast 1877 ft. to gum corner O; thence 14 deg. 35 minutes Northwest 563 ft. to a gum; thence 11 deg. 40 minutes Northwest 460 ft. thence 35 deg. 45 min. Northwest 94 ft. thence 89 deg. 35 minutes Northwest 409 feet; thence 89 deg. 50 min. Northwest 627 feet to a stake N; thence 13 deg. 20 minutes Southwest parallel with the old tram road 1820 ft. back to beginning corner.

Bounded on the North by other lands of C. A. Buffkin; on the East by lands of N. H. Buffkin and lands of this day conveyed to Gertrude Buffkin Strickland by C. A. Buffkin; on the South by lands of J. H. Strickland, and on the west by other lands of C.A. Buffkin.

This being a portion of a 100 acre tract of land conveyed to C. A. Buffkin by Jackson Buffkin and recorded in Book Z-6, page 291, records of Horry County and designated as tract on a map of S. D. Cox, Jr., dated October 25th, 1939 in a survey of lands of C. A. Buffkin which map is incorporated herein and made a part hereof.

Parcels 4, 5, 6, 7-Tract 3 only, 8, 9 & 10 Derivation: This being a portion of that property conveyed by Terry Wayne Strickland to Terry Wayne Strickland, as Trustee for the Terry Wayne Strickland Living Trust UTD April 2, 2010 as Amended and Restated on December 21, 2011 by Quit Claim Deed dated December 21, 2011, recorded February 1, 2012 in Deed Book 3565 at page 1471 in the office of the ROD for Horry County, South Carolina.

# EXHIBIT 9

Instrument#: 2016000064917, MTG BK:
6780 PG: 1818 DOCTYPE: 002 06/07/2016
at 01:39:04 PM, 1 OF 16
MARION D. FOXWORTH III, HORRY
COUNTY, SC REGISTRAR OF DEEDS

ArborOne, ACA
as agent/nominee                                    Loan No. 042 096 292185-01

PO Box 3690
Florence                         , SC  29502

STATE OF SOUTH CAROLINA            )
                                   )            MORTGAGE
COUNTY OF  Horry                   )

THIS INDENTURE, made this 7th    day of June        , 2016  by and between
Terry Wayne Strickland, Terry W Strickland, Terry Wayne Strickland as Trustee for the Terry
Wayne Strickland Living Trust UTD April 2, 2010, as Amended and Restated on December
21, 2011.

hereinafter called Undersigned, whether one or more, and
ArborOne, ACA                                              , as agent/nominee
of  Florence                       , SC  a  federally  chartered  instrumentality  organized,
chartered and existing pursuant to the laws of the United States of America, hereinafter called
Lender, WITNESSETH, that

WHEREAS, Strickland Farms of Green Sea, Inc, Terry Wayne Strickland, Charlene E
Strickland and William Scott Strickland

hereinafter called Borrower, whether one or more, is indebted to Lender in the principal sum of
Three Hundred Fifteen  Thousand Five Hundred Ninety  and 00/100
                Dollars ($ 315,590.00        ) as evidenced by a certain
note, dated  June 07, 2016              payable to the order of Lender, the final installment of
principal being due and payable 12/01/2035     , with interest from date of said note payable as
and at the rate(s) provided in said note, all of which and such other terms, conditions and
agreements as are contained in said note will more fully appear by reference thereto, which note is
made a part of this mortgage to the same extent as if it were set out in extenso herein.

This mortgage also secures (1) all existing indebtedness of Borrower (or of any one or more of the
parties designated herein as Borrower) to Lender (including but not limited to the above described
note) evidenced by promissory notes or any other instruments, and all renewals, together with interest
thereon as provided therein, (2) all future advances that subsequently may be made to Borrower
(or to any one or more of the parties designated herein as Borrower or Undersigned with the written
consent of the remainder of said parties) to be evidenced by promissory notes or any other
instruments, and all renewals, reamortizations, extensions, refinances, modifications or other
rearrangements thereof, together with interest thereon as provided therein, said future advances, if
any, to be made solely at the option of Lender; and (3) all other indebtedness of Borrower (or any
one or more of the parties designated herein as Borrower) to Lender now due or to become due
(whether directly or indirectly) or hereafter contracted, and all renewals, reamortizations,
extensions, refinances, modifications or other rearrangements thereof, together with interest
thereon as provided for, THE MAXIMUM PRINCIPAL AMOUNT OF ALL EXISTING
INDEBTEDNESS, FUTURE ADVANCES, AND ALL OTHER INDEBTEDNESS OUTSTANDING AT

ANY ONE TIME NOT TO EXCEED **Five Million  and 00/100** _____

DOLLARS ($ **5,000,000.00**      ), plus interest thereon, attorneys' fees, court costs, and any advances necessary for the protection of the security or title thereto, such as, but not limited to, advances for taxes and insurance premiums, all of which are secured by this mortgage. It is understood and agreed by all parties thereto that the execution by Borrower and the acceptance by Lender of any notes, renewal notes or other instruments, or the agreement by Lender to any reamortizations, extensions, refinances, modifications or other rearrangements as contemplated in this paragraph or elsewhere herein shall not be construed as payment of any indebtedness hereby secured (whether or not, among other changes in terms, the interest rate or rates remain the same and/or time for payment is hereby extended or lessened), and shall not discharge the lien of this mortgage which is to remain in full force and effect until the total indebtedness secured hereby has been paid in full. All notes or other instruments contemplated in this paragraph or elsewhere herein shall remain uncanceled and in possession of Lender, its successors and assigns, until the total indebtedness hereby secured is paid in full. Should the indebtedness secured hereby exceed the maximum above stated, Lender at its option shall have the sole right to determine the priority or order in which the various debts covered hereby shall be secured hereunder within said maximum.

NOW, KNOW ALL MEN, that Undersigned, in consideration of the debt as evidenced by above described note, and for better securing the payment thereof to Lender, according to the terms of said note, and the performance of the conditions and covenants herein contained and to secure any other indebtedness contemplated in the paragraph next above or elsewhere herein, and also in consideration of the sum of One Dollar to Undersigned in hand paid by Lender, receipt whereof is hereby acknowledged, has granted, bargained, sold and released, in fee simple, and by these presents does grant, bargain, sell and release, in fee simple, unto Lender, its successors and assigns, the following described lands, including but not limited to, all trees, timber, shrubbery, fixtures and improvements now and hereafter thereon:

See attached Schedule "A"

TOGETHER with all and singular the rights, members, hereditaments and appurtenances to the said premises belonging or in anywise incident or appertaining.

TO HAVE AND TO HOLD all and singular the said premises unto Lender, its successors and assigns in fee simple forever. Undersigned hereby binds himself, his heirs, executors, administrators, successors and assigns, to warrant and forever defend all and singular the said premises unto Lender, its successors and assigns, from and against Undersigned, his heirs, executors, administrators, successors and assigns, and all other persons whomsoever lawfully claiming or to claim the same or any part thereof.

PROVIDED ALWAYS, NEVERTHELESS, and it is the true intent and meaning of the parties to these presents, that if Borrower shall well and truly pay, or cause to be paid, unto Lender, its successors or assigns, the total indebtedness secured hereby, with interest thereon as aforesaid, and shall perform all terms, conditions and covenants according to the true intent of said note, any other instrument above referred to and this mortgage and any other instrument securing said note or other instrument referred to above, then this mortgage shall cease, determine and be utterly null and void; otherwise it shall remain in full force and effect.

FOR THE CONSIDERATION aforesaid, Undersigned covenants as follows:

1. Undersigned is lawfully seized of said property in fee simple and has a perfect right to convey same; there are no encumbrances or liens whatsoever on said property except this mortgage.

2. Undersigned will insure, and keep insured, as required by Lender from time to time, all buildings now and hereafter on said land against such risks, in such form, in at least such amounts, and in such company or companies, as shall be satisfactory to Lender. The loss, if any, under all such insurance policies to be payable to Lender as its interest may appear, and the Undersigned will deliver to Lender a policy or policies of insurance with mortgagee clause satisfactory to Lender attached thereto, and will promptly pay when due all premiums for such insurance. In addition to other insurance coverages, if the property is located in a government mandated flood area where participation in a Federal Flood Insurance Program is required, Undersigned agrees that upon receipt of notification from Lender and within the time period established by Lender, Undersigned will obtain and maintain flood insurance in such amount as Lender requires on all buildings, improvements, fixtures and mobile home(s), now existing or hereafter erected, placed or maintained on or in the land described in this mortgage, together with all other personal property securing Undersigned's obligations to Lender and maintained in or on such buildings, improvements and mobile home(s), until the loans, future advances and all other indebtedness

secured by such property and this mortgage are fully paid, Lender may require Undersigned to obtain and maintain such flood insurance at the time the loan(s) secured hereby are made or at any time thereafter until the loans secured by such property are fully paid. Undersigned further agrees to pay Lender all reasonable fees and costs Lender incurs in determining whether any such property is located in an area having special flood hazards including determination fees (of initial and subsequent determination as well as fees for monitoring the flood hazard status of the property during the life of the loan), together with the cost of premiums and fees incurred with purchasing flood insurance for Undersigned, if Undersigned fails to do so within the time period required by Lender. Any such fees, premiums or costs shall, in Lender's sole discretion, be due and payable on demand or as otherwise provided for in the promissory note(s) secured hereby or this mortgage. At the option of Lender insurance funds may be used for reconstruction or repair of the destroyed or damaged insured buildings, and insurance funds not so used shall be applied on such part of the indebtedness secured hereby as Lender in its sole discretion may determine. Undersigned will pay, when due and payable, all taxes, assessments and other charges that may be levied or assessed against said property, and all judgments and all other amounts that may be or become a lien thereon.

3. If required as a condition of any loan secured hereunder, Undersigned shall pay to Lender on the day installments are due, until the note is paid in full or any escrow requirement is otherwise waived in writing by Lender, a sum to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this instrument as a lien or encumbrance on the property; and (b) premiums for any and all insurance required by Lender. Such amounts required hereunder shall be determined in accordance with the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X ("RESPA"). Upon payment in full of all sums secured by this instrument, or if any such escrow requirement is no longer required as a condition of any loan secured hereunder, Lender shall promptly refund to Undersigned any funds held by Lender under this escrow requirement.

4. Undersigned will keep in good order and condition, preserve and repair, rebuild and restore all terraces, buildings, groves, orchards, fences, fixtures, shrubbery and other improvements, of every kind and nature, now on said land and hereafter erected or placed thereon that may be destroyed or damaged by fire, windstorm, flood or otherwise, and will not permit the change, injury or removal thereof, will not commit or permit waste on said land, and will not, except with the written consent of Lender, cut, use or remove, or permit the cutting, use or removal of, any timber or trees on said land for sawmill, turpentine or other uses or purposes, except for firewood and other ordinary farm purposes. Undersigned will also preserve and keep in good order and condition all trees and timber now and hereafter growing upon the said property, and will at all times properly protect the trees and timber against loss or damage by fire, all to the satisfaction of Lender.

5. Undersigned covenants that he will not perform any act which might impair or tend to impair the continuation on the property herein described of all crop allotments and acreage allotments now established or hereafter established on any of the property herein described and hereby grants a lien on said allotments to Lender.

6. Time is of the essence in the performance of the above recited note, of this instrument and of any other instrument secured hereby. If Borrower and/or Undersigned fail to comply with any covenant, condition or agreement in this instrument or in the said note or in any reamortization, renewal, refinance, modification, extension or in any other instrument secured hereby, Lender may, at its option, exercise any one or more of the following rights, powers, privileges and remedies:

    (a) Perform any one or more of the covenants of Borrower and/or Undersigned in this instrument, in the said note, and in any other instrument secured hereby, and all amounts advanced by Lender in doing so shall be due and payable by Borrower and/or Undersigned to Lender immediately without notice, and shall be secured by this instrument, and shall bear interest from the date of advance by Lender at the highest rate provided in any note or other instrument secured hereby.

    (b) Declare all amounts secured by this instrument immediately due and payable without notice.

    (c) Proceed immediately to foreclose this mortgage, and pursue such other remedies as may be authorized by law.

7. As further security for the payment of the note herein described, all other indebtedness secured hereby, and for the performance of all the terms, conditions and covenants of said note, of any other instrument secured hereby and of this mortgage, upon and during default under this instrument or the said note or any other instrument secured hereby, Undersigned hereby transfers, assigns and sets over to Lender all of the crops now and hereafter sown or growing upon the said mortgaged premises and all of the rents, issues and profits of the said mortgaged premises, and Lender shall seek to have a receiver appointed to take charge of the said mortgaged premises and the crops now and hereafter sown or growing thereon, together with the said rents, issues and profits arising therefrom and hereby assigned, and hold the same subject to the order and direction of the court.

8. That he hereby represents and warrants, to Lender that there are no materials (hereinafter collectively called "Special Materials") presently located on or near the premises which, under federal, state or local law, statute, ordinance, regulation or standard or administrative or court order or decree or private agreement (hereinafter collectively called "Environmental Requirements"), require special handling in use, generation, collection, storage, treatment or disposal, or payment of costs associated with responding to the lawful directives of any court or agency of competent jurisdiction or for similar economic loss. Such Special Materials include those that violate any national or local contingency plan or the release or threatened release of which may violate or create liability under the Environmental Requirements. Such Special Materials also include (a) asbestos in any form, (b) urea formaldehyde foam insulation, (c) paint containing lead or (d) transformers or other equipment which contain dielectric fluid containing polychlorinated biphenyls (commonly referred to as "PCBs"). Undersigned further represents and warrants to

Lender that the premises are not now being used nor have they ever been used in the past for activities including the use, generation, collection, storage, treatment or disposal of any Special Materials, and in particular, without limiting the generality of the foregoing, the premises are not now being used nor have they ever been used in the past for a landfill, surface impoundment or other area for the treatment, storage or disposal of solid waste (including solid waste such as sludge). Undersigned will not place or permit to be placed any such Special Materials on or near the premises. Nothing herein shall be deemed to prohibit or restrict the use, collection, storage, treatment or disposal in a manner consistent with applicable Environmental Requirements, of insecticides, herbicides, or other pesticides, fertilizers or petroleum products (including gasoline, motor fuel, crankcase oil, heating oil) as part of the agricultural operations now or hereafter conducted by Undersigned on the premises in a good and husbandlike manner. Undersigned further represents and warrants to Lender that there are no wells or septic tanks or other underground tanks (whether currently in use or abandoned-in-place) on the premises serving any other property and that there are no wells or septic tanks on other property serving the premises. If at any time it is determined that there are Special Materials located on the premises which under any Environmental Requirement require special handling in use, generation, collection, storage, treatment or disposal, Undersigned shall, within 30 days after having obtained actual knowledge thereof, take or cause to be taken, at Undersigned's sole expense, such actions as may be necessary to comply with all Environmental Requirements. If Undersigned shall fail to take such action, Lender may make advances or payments towards performance or satisfaction of the same but shall be under no obligation so to do; and all sums so advanced or paid, including all sums advanced or paid in connection with any judicial or administrative investigation or proceeding relating thereto, including, without limitation to the extent permitted by applicable law, reasonable attorneys' fees, fines or other penalty payments, shall be at once repayable by Undersigned and all sums so advanced or paid shall become a part of the indebtedness secured hereby. Failure of Undersigned to comply with all Environmental Requirements shall constitute and be a default under this mortgage. Undersigned hereby agrees to indemnify and hold Lender harmless to the extent permitted by applicable law for all loss, liability, damage, cost and expenses, including reasonable attorneys' fees, for failure of the premises to comply in all respects with the Environmental Requirements or a breach by Undersigned of any representation, warranty or agreement herein. THE COVENANTS, AGREEMENTS, REPRESENTATIONS, WARRANTIES AND INDEMNITIES OF UNDERSIGNED CONTAINED IN THIS PARAGRAPH SHALL SURVIVE THE OCCURRENCE OF ANY EVENT WHATSOEVER, INCLUDING BUT NOT LIMITED TO, THE PAYOFF OF THE NOTE(S) SECURED HEREBY, THE RELEASE OR FORECLOSURE OF THIS MORTGAGE, OR THE ACCEPTANCE BY THE LENDER OF A DEED IN LIEU OF FORECLOSURE.

9. In the event the indebtedness secured hereby, or any part thereof, is established by or in any action for foreclosure of this mortgage, Lender may also recover of Borrower and/or Undersigned, in addition to the said debt or so much thereof as shall be unpaid, a reasonable sum for attorneys of Lender for professional services rendered in such action, such fee to be incorporated in the judgment of foreclosure in such action.

10. Undersigned shall hold and enjoy the said premises until default in payment of any of the installments as provided in the above recited note or other instrument secured hereby, or a breach of any of the covenants or conditions of the above recited note or other instrument secured hereby, or this mortgage shall be made; however, any agent or employee of Lender or any person designated by Lender may enter upon said premises at any time for the purpose of inspecting same or for any other purpose desired by Lender.

11. All amounts that may hereafter be awarded for condemnation of, and waste and tortious injury to, any of the property hereby encumbered are hereby assigned and shall be payable unto Lender for application, after payment therefrom of attorneys' fees and expenses incurred by Undersigned and by Lender in connection therewith, on such part of the indebtedness secured hereby as Lender may determine, with no duty on Lender to collect same.

12. In the event Lender becomes a party to any legal proceeding (excluding an action to foreclose this mortgage or to collect the debt hereby secured) involving this mortgage or the premises described herein (including but not limited to the title to the lands described above), Lender may also recover of Borrower and/or Undersigned all costs and expenses reasonably incurred by Lender, including reasonable attorneys' fees, which costs, expenses and attorneys' fees when paid by Lender shall become a part of the debt secured hereby and shall be immediately payable upon demand, and shall draw interest from the date of advance by Lender until paid at the highest rate provided in any note or other instrument secured hereby.

13. Undersigned agrees as a condition hereof that all obligations, assignments, releases of real property and/or personal liability, reamortizations, renewals, refinances, extensions, modifications or other rearrangements or any other agreement, in writing, made or entered into by Lender with any one or more of the parties herein designated as Borrower and/or Undersigned, with any party or parties obligated (primarily or otherwise) to pay any or all of the indebtedness secured hereby, or with any party or parties who have given security of any kind for any or all of the indebtedness secured hereby, are hereby authorized and consented to by all parties herein designated as Undersigned and shall extend to and be binding upon the heirs, executors, administrators, successors and assigns of all the parties herein designated as Undersigned.

14. Undersigned agrees as a condition hereof that if a conveyance, lease or other disposition should be made voluntarily by Undersigned (or by any one or more of the parties designated herein as Undersigned) of any title or interest in and to the real property described above, or any part thereof, without the written consent of the lawful holder of this mortgage, or if such title or interest of Undersigned (or of any one or more of the parties designated herein as Undersigned) is involuntarily conveyed or transferred as the result of foreclosure of a junior lien or is required under court order or decree as the result of litigation (conveyance or transfer of title or interest resulting from death of Undersigned, or any of the Undersigned, if more than one, excepted), without the written consent of the lawful holder of this mortgage, then and in either of said events, and at the option of said holder, and without notice to Borrower or Undersigned, all sums of money secured hereby shall become due and payable and in default immediately and concurrently with such conveyance, transfer, lease or other disposition, whether the same are so due and payable and in default by the specific terms hereof or not.

15. Lender shall have the right, exercisable at its discretion so long as this mortgage is in force and effect, to demand in writing the assignment of and transfer to Lender, its successors and assigns, and Undersigned hereby agrees to so assign and transfer, any and all rents, profits, royalties, income or other consideration to be paid or accruing to Undersigned from any oil, natural gas, mineral, timber, leasehold or other interest of any kind and nature whatsoever, derived from, connected with or affecting the within described real property but not otherwise subject to, conveyed and/or secured by this mortgage, with the right of, but no duty upon, Lender, its successors or assigns, to collect same.

16. Borrower and/or Undersigned will comply with all the terms and conditions of any instrument heretofore or hereafter executed by Borrower and/or Undersigned in connection with the loan(s) secured by this mortgage.

17. If Borrower or Undersigned (or any of them), their heirs, successors or assigns, or any assumer of the indebtedness hereby secured, files a petition in voluntary bankruptcy, for receivership, for corporation reorganization, or for other debtor relief of any character or kind, or is adjudged a bankrupt, then and in the event, and at the option of the Lender, its successors and assigns, the Lender, without notice to Borrower and/or Undersigned, shall have the right to declare all sums of money secured hereby immediately due and payable and in default whether the same are so due and payable and in default by the specific terms hereof or not.

18. A default under this instrument or under any other instrument heretofore or hereafter executed by Borrower and/or Undersigned to Lender shall at the option of Lender constitute a default under any one or more or all instruments executed by Borrower and/or Undersigned to Lender.

19. An event of default under this instrument will occur if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce or to make possible the production of an agricultural commodity, as further explained in 7 CFR, Part 1940, Subpart G, Exhibit M. Upon default, the entire indebtedness secured hereby shall, at the option of the Lender, become immediately due and payable with interest thereon at the billing rate then in effect without notice, and this instrument may be foreclosed accordingly.

20. Undersigned (if the same as Borrower) agrees as a condition hereof to provide current financial statements, including a balance sheet and income statement, in a form acceptable to Lender, as may be requested by Lender of Borrower while the indebtedness secured hereby or any other indebtedness from Borrower to Lender is outstanding.

21. It is understood and agreed that all advances heretofore, now and hereafter made by Lender to Borrower, and all indebtedness now and hereafter owed by Borrower to Lender, and any other present or future indebtedness or liability of Borrower to Lender, whether as principal debtor, surety, guarantor, endorser or otherwise, will be secured by this instrument until it is satisfied of record. It is further understood and agreed that Lender, at the written request of Borrower or Undersigned, will satisfy this mortgage whenever: (1) Borrower owes no indebtedness to Lender, (2) Borrower has no liability to Lender, and (3) Lender has not agreed to make any further advances to Borrower.

22. All rights, powers, privileges, options and remedies conferred upon and given to Lender are cumulative of all other remedies and rights allowed by law, and may be pursued concurrently, and shall extend to and may be exercised and enjoyed by the successors and assigns of Lender, and by any agent, officer, attorney or representative of Lender, its successors or assigns. All obligations of, and assignments by, Undersigned herein and hereunder shall extend to and be binding upon the heirs, executors, administrators, successors and assigns of Undersigned.

23. The laws of South Carolina provide that in certain real estate foreclosure proceedings a defendant against whom a personal judgment is taken or asked may within thirty days after the sale of the mortgaged property apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. UNDERSIGNED, EXCEPT TO THE EXTENT PROHIBITED BY LAW, HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE MORTGAGED PROPERTY. This waiver shall not apply so long as the property is used as a dwelling place as described in §12-37-260 of the South Carolina Code of Laws.

HOMESTEAD WAIVER. THE UNDERSIGNED WAIVES ALL RIGHTS OF HOMESTEAD EXEMPTION IN THE PROPERTY TO THE EXTENT ALLOWED BY APPLICABLE LAW.

THIS MORTGAGE IS EXECUTED BY THE MORTGAGOR IN FAVOR OF, AND THE TERM "MORTGAGEE" AS USED HEREIN SHALL INCLUDE, ArborOne, ACA, FOR ITSELF AND AS AGENT/NOMINEE FOR ANY PARTY PURSUANT TO A MASTER AGREEMENT AMONG IT AND ITS WHOLLY-OWNED SUBSIDIARIES ArborOne, FLCA AND ArborOne, PCA, AS THEIR INTERESTS MAY APPEAR.

IN WITNESS WHEREOF, Undersigned has hereunto set his hand and seal (and if Undersigned is or includes a corporation, it has caused this instrument to be executed, sealed by its corporate seal and delivered by its duly authorized officers), this the day and year first above written.

Signed, Sealed and Delivered in the presence of:

_____
WITNESS

_____
WITNESS

_____ (SEAL)
Terry Wayne Strickland, Borrower/ Mortgagor

_____ (SEAL)
aka Terry W Strickland

_____ (SEAL)
aka Terry Wayne Strickland as Trustee for the Terry Wayne Strickland Living Trust
UTD April 2, 2010, as Amended and Restated on December 21,2011

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

D01310SC (0208)                    Page 6 of 7

IT IS NOT NECESSARY TO RECORD A WRITTEN ASSIGNMENT OF A MORTGAGE BETWEEN FARM CREDIT INSTITUTIONS IN THE RECORDING OFFICE IN THE COUNTY WHERE THE REAL PROPERTY IS LOCATED TO PERFECT A VALID ASSIGNMENT AND SECURITY INTEREST THEREIN.

STATE OF SOUTH CAROLINA       )
                          )
COUNTY OF                   )

Personally appeared before me  Kathy J. Ward             and made oath that (s)he is not a party to or beneficiary of the transaction, signed the record as a subscribing witness, and saw the within named Terry Wayne Strickland, Terry Wayne Strickland, as Trustee* sign, seal, and as his/her/their act and deed deliver the within mortgage, and that (s)he, with
witnessed the execution thereof.

*for the Terry Wayne Strickland
Living Trust UTD April 2, 2010, as
Amended and Restated on December 21, 2011     *Kathy J. Ward*

Sworn to and subscribed before me
This 7th     day of June     2016
_____ (L.S.)
Notary Public for South Carolina
My Commission Expires: 2.5.23
Notary's Printed Name:   B. Kemp Floyd, Jr.

STATE OF SOUTH CAROLINA       )
                          )
COUNTY OF                   )

Personally appeared before me                  and made oath that (s)he is not a party to or beneficiary of the transaction, signed the record as a subscribing witness, and saw the within named                a corporation by             , as its       and,
           , as its         for and as the act and
of deed of said corporation, sign, seal, and deliver the within mortgage, and that (s)he, with
witnessed the execution thereof.

Sworn to and subscribed before me
This       day of      
_____ (L.S.)
Notary Public for South Carolina
My Commission Expires:
Notary's Printed Name: _____

STATE OF SOUTH CAROLINA
COUNTY OF

I hereby certify that the within mortgage was filed and/or lodged for record in my office at ___ M. on the _____ day of _____, _____, and immediately entered on the proper indexes and duly recorded in Real Estate Mortgage Book _____, at Page(s) _____.

Clerk of Court of Common Pleas and General Sessions, Register of Mesne Conveyance.

File Number: 201606-STRICKLAND FA

## EXHIBIT "A"

## PROPERTY DESCRIPTION

PARCEL 1:    TMS #: 015-00-01-011
ALL that certain piece, parcel or tract of land, together with improvements thereon, lying on the Eastern side of South Carolina Highway # 33, in the Green Sea Township, and containing 13.2 acres, more or less, the same being a portion of the old D. C. Fussell tract and being more particularly described as follows:

Beginning at a stake corner on the Eastern side of South Carolina Highway # 33 and in the corner of George L. Hill land line; thence, turning and running N 02 degrees 0 minutes West along with S. C. Highway # 33 for approximately 803.9 feet to a stake corner; thence, North 8 degrees 36 minutes East for 231.2 feet to a stake corner in V. L. Turbeville line; thence, South 82 degrees 11 minutes East for 359.1 feet along with V. L. Turbeville line to a stake corner; thence, North 25 degrees 23 minutes East for 89.0 feet to a stake corner, thence, South 67 degrees 30 minutes East for 133.5 feet to a stake corner in Odell Hill line; thence, along with Odell Hill line South 02 degrees 0 minutes East for 996.6 feet to a stake corner in the George L. Hill line; thence, North 87 degrees East for 560.4 feet along with George L. Hill line to the beginning corner.

Being bound as follows: North by land of V. L. Turvbeville, East by land of Odell Hill, South by other land of George L. Hill, and West by South Carolina Highway # 33 and E. L. Buffkin Estate.

For further reference, see Survey Plat dated October, 1963 and surveyed by Robert D. Inman, R.L.S. # L851 (NC).

LESS AND EXCEPTING:
Tract 1: All and Singular, all that certain piece, parcel or lot of land lying and being in Green Sea Township, State and County aforesaid, containing 0.09 acres according to a plat of survey prepared for David N. Collins and Debbie M. Collins by Jack F. Davis, RLS, dated July 20, 1999, recorded September 8, 1999 in Plat Book 165 at page 80 in the office of the ROD for Horry County. Said plat being incorporated herein by reference and made a part and parcel hereof. This being the identical property conveyed by George L. Hill to Terry W. Strickland by Deed recorded September 22, 1999 in Deed Book 2190 at page 58 in the office of the ROD for Horry County, South Carolina. TMS #: 015-00-01-094

Tract 2: All and Singular, all that certain piece, parcel or lot of land lying and being in Green Sea Township, State and County aforesaid, containing 1.31 acres according to a plat of survey prepared for David N. Collins and Debbie M. Collins by Jack F. Davis, RLS, dated July 20, 1999, recorded September 8, 1999 in Plat Book 165 at page 80 in the office of the ROD for Horry County. Said plat being incorporated herein by reference and made a part and parcel hereof. This being the identical property conveyed by George L. Hill to David N. Collins and Debbie M. Collins by Deed recorded September 22, 1999 in

Deed Book 2190 at page 64 in the office of the ROD for Horry County, South Carolina. TMS #: 015-00-01-108

Tract 3: All and Singular, all that certain piece, parcel, or lot of land lying and being in Green Sea Township, State and County aforesaid, containing 1.94 acres according to a plat of survey prepared for George L. Hill by Jack F. Davis, RLS, dated December 10, 1999, recorded February 24, 2000 in Plat Book 168 at page 33 in the office of the ROD for Horry County. Said plat being incorporated herein by reference and made a part and parcel hereof. This being the identical property conveyed by George L. Hill to Ginny H. Livingston and Davis Henry Livingston, Jr. by Deed recorded March 10, 2000 in Deed Book 2241 at page 750 in the office of the ROD for Horry County, South Carolina. TMS #: 015-00-01-109

Tract 4: ALL AND SINGULAR, all that certain piece, parcel or lot of land lying and being in Green Sea Township, State and County aforesaid, containing 2.02 acres, as more fully shown on that certain plat of survey prepared for Debbie Jean Collins and David Nathan Collins by Jack F. Davis, R.L.S., dated September 2, 2009, recorded October 2, 2009 in Plat Book 245 at page 244 in the office of the ROD for Horry County, South Carolina. Said plat is incorporated herein by reference and made a part and parcel of this description, owned by David N. Collins and Debbie M. Collins as more fully shown on the hereinabove referenced plat. This being the identical property conveyed by George L. Hill to David N. Collins and Debbie M. Collins by deed recorded October 9, 2009 in Deed Book 3424 at page 3380 in the office of the ROD for Horry County, South Carolina. This property is to be combined with TMS Number: 015-00-01-108

Tract 5: All and Singular, all that certain piece, parcel or lot of land, lying and being in Green Sea Township, County and State aforesaid, containing 3.25 acres, more or less, as shown on that certain map of survey prepared by Carolina Land Surveyors, LLC, dated October 28, 2005 and recorded in Plat Book 214 at page 223 in the Office of the ROD for Horry County. Said plat being incorporated herein by reference and made a part and parcel hereof. Said land is bounded on the West by Fair Bluff Highway; on the South by remaining portion of the lot herein; on the East by Dorris and Odel Hill; and on the North by a remaining portion of land owned by George L. Hill and Ginny H. and Davis Henry Livingston, Jr. This being the identical property conveyed by George L. Hill to Jeffrey S. Reynolds and Kim E. Reynolds by Deed recorded June 22, 2006 in Deed Book 3117 at page 488 in the office of the ROD for Horry County, South Carolina. TMS #: 015-0-01-129

PARCEL 2:    TMS #: 015-00-01-154
ALL AND SINGULAR, all that certain piece, parcel or tract of land lying and being in Green Sea Township, State and County aforesaid, being designated as Tract B, containing 8.33 acres, as more fully shown on that certain plat of survey prepared for The Estate of G. L. Hill by Jack F. Davis, R.L.S., dated October 19, 2011, recorded May 15, 2012 in Plat Book 254 at page 263 in the office of the ROD for Horry County, South Carolina. Said plat being incorporated herein by reference and made a part and parcel of this description.

Together with the right of ingress, egress and other customary usages to that certain 30' Private Shared Driveway as more fully shown on the hereinabove referenced plat of survey.

Parcels 1 & 2 derivation: This being the identical property conveyed by Ginny Hill Oxendine to Terry Wayne Strickland by deed dated April 8, 2014, recorded April 8, 2014 in Deed Book 3725 at page 2578 in the office of the ROD for Horry County, South Carolina.

PARCEL 3:    TMS #: 015-00-01-128

Tract 1:

All and Singular, all that certain piece, parcel or tract of land situate, lying and being in Green Sea Township, County and State aforesaid and being more particularly described 11.79 acres, as shown on a plat of survey made by Jack F. Davis, RLS, dated September 24, 2005 and recorded October 18, 2005 in Plat Book 208 at page 141 in the Office of the ROD for Horry County. Said plat is incorporated herein by reference and made a part and parcel hereof.

Tract 2:

All and Singular, all that certain piece, parcel or lot of land lying and being in Green Sea Township, County and State aforesaid, and known as the home tract , bound and described as follows:

Commencing at a corner on the South side of a county road, this being the common corner of this lot and property of G.L. Hill, and running with the G.L Hill line a South direction 105 feet to a corner; thence a Westward direction with the G.L. Hill line 181 feet to a corner; thence with the G.L. Hill line a Northward direction 105 feet to a corner on county road; thence with said road an Eastward direction 181 feet to the beginning corner.

LESS AND EXCEPTING:

ALL AND SINGULAR, all that certain piece, parcel or lot of land lying and being in Green Sea Township, State and County aforesaid being 1.00 acre as more fully shown upon a plat of Lot Reconfiguration Survey for Everette Guy Long and Margie Dianne Long by James E. Hayes, Jr., RLS of Affiliated Surveyors, dated January 6, 2006, recorded February 10, 2006 in Plat Book 211 at page 188 in the office of the ROD for Horry County, South Carolina. Said plat being incorporated herein by reference and made a part and parcel of this description.

This being the identical property conveyed by Horry County State Bank to Terry Wayne Strickland by deed dated May 6, 2014, recorded May 6, 2014 in Deed Book 3731 at page 2584 in the office of the ROD for Horry County, South Carolina.

PARCEL 4:    TMS# 015-00-01-001

Tract 1:

All that certain piece, parcel or tract of land, together with improvements thereon, situate, lying and being in Green Sea Township, State and County aforesaid, on the Eastern side of the old Play Card Road and containing sixteen (16) acres, more or less, and being more particularly described as follows:

Commencing at a stake corner on the Eastern edge of the old Play Card Road at the Southwestern corner of the Elray Buffkin tract and running in a northeasterly direction and in a straight line and along the edge of the Elray Buffkin tract to a stake corner in a ditch; thence turning and running in a easterly direction along said ditch to a stake corner in the turn of the said ditch; thence turning and running in a northeasterly direction to a stake

corner in the mouth of the said ditch at or near a little branch; thence turning and running in easterly direction to a stake corner in the run of the said branch along the Vollie Turbeville land to a stake corner in the run of said branch at or near the mouth of another ditch; thence turning and running in a southeasterly direction along the tract this day conveyed to Vollie Turbeville to a stake corner near the mouth of a ditch; thence turning and running in a southernly direction along said ditch and along the edge of the tract this day conveyed to Vollie Turbeville to a stake corner in the turn of said ditch; thence turning and running in a westerly direction along the said ditch to a stake corner in the turn of the said ditch; thence turning in a southerly direction and following the said ditch to a stake corner ( the same being the southeastern corner of the old Giles Strickland tract); thence turning and running in a westerly direction and following the said ditch to a stake corner on the eastern side of the old Play Card Road ( the same being the Southwestern corner of the old Giles Strickland tract); thence turning and running in a northerly direction along the Eastern edge of the old Play Card Road to the beginning corner. Bounded on the North by the tract this day conveyed to Vollie Turbeville and the tract this day conveyed to Joseph B. Turbeville and a portion of the tract this day conveyed to Sally T. Strickland; on the South by a portion of the tract this day conveyed to Sally T. Strickland; on the West by the old Play Card Road.

Tract 2:
All that certain piece, parcel or tract of land together with improvements thereon situate, lying and being on the East side of the old Play Card Road and on the South side of Crooked Run Branch in Green Sea Township, containing sixteen (16) acres, more or less, and being a portion of the old B.A. Anderson tract and being more particularly described as follows:

Commencing at  an old stake corner at the northwestern corner of the tract herein conveyed and being a corner common to this property and Vollie Turbeville's property and running from said corner in a Southeasterly direction along the run of Crooked Run Branch to a Sweet Gum corner in the run of said branch, being the southeastern corner of this tract and the Northwestern corner of the tract conveyed to Essie T. Hill; thence about eighty- four (84 ft.) feet to a pine corner ( the same being a corner of the tract conveyed to Essie T. Hill); thence turning and running in a southerly direction and in a straight line and following the western boundary line of the tract conveyed to Essie T. Hill to a ditch on the southern side of the old community road; thence turning and running in an easterly direction and following said ditch along the southern side of said community road to a point on the eastern line of the Old Giles Strickland tract at or near the southern edge of the community road; thence turning and running in a northerly direction and in a straight line with a ditch and with an eastern boundary of the old Giles Strickland tract to a corner in the bend of a ditch; thence turning and running in a Easterly direction and along said ditch to a stake corner in the turn of said ditch; thence turning and running in a Northerly direction and along said ditch to a stake corner in the run of the little branch; thence turning and running in a westerly direction along the run of said branch to a southeastern corner of the Vollie Turbeville property in said branch; thence turning and running in a northeasterly direction along the eastern boundary of the Vollie Turbeville property to the beginning corner. Bounded on the North by Crooked Run Branch; on the East by the tract this day conveyed to Joseph B. Turbeville; on the West by a portion of the tract conveyed to James French Turbeville and the property of Vollie Turbeville.

Tract 3:

All and singular, one certain tract or parcel of land containing fifty (50) acres, more or less, in Green Sea Township on the east side of the Old Play Card Road, bound as follows; commencing at a stake on corner A.G. Strickland line; thence nearly East course with said Strickland line to the run of Crooked Run Branch; thence with said Branch to the mouth of Little Crooked Run Branch; thence nearly West course with run of said Branch to an agreed corner of E. K. Wilson's line to the beginning corner.

Tract 4:
All that certain tract of land lying and being in Green Sea Township, Horry County, South Carolina, containing twenty-one (21) acres, more or less, and on the East side of the Play Card and Conway County Road. Beginning on George W. Buffkin corner thence said road Northward 175 yards to a stake corner; thence Southeast 608 yards to the run of Crooked Run Branch; thence up said Branch to G.L. Turbeville corner 146 yards; thence Southwestwerly to  a corner on G.L. Turbeville  183 yards;  thence  straight  line Southwesterly 486 yards; thence to line Southwesterly 486 yards; thence to the beginning corner and containing 21 acres, more or less, known as the William Strickland land conveyed to Randle Fully.

PARCEL 5:    015-00-01-007
ALL AND SINGULAR all that certain piece, parcel or tract of land situate, lying and being in Green Sea Township, Horry County, South Carolina, in School District No. 2, about One (1) mile south of the North Carolina State line on the West side of the Green Sea-Fair Bluff Highway, containing 23.15 acres, more or less, and being bounded now or formerly as follows:  On the Northeast by Flossie Strickland; on the Southeast by V. Carlisle Buffkin and Eldred Buffkin; and on the West by Carrietta Strickland and W.P. Strickland.

The above described land is more particularly shown on a map or survey by J.F. Thomas, R.L.S., dated August 23, 1973 and recorded in Plat Book 56 at page 168, in the office of the Clerk of Court for Horry County, reference to which is craved as forming a part and parcel hereof.

PARCEL 6:    TMS #: 010-00-01-111
ALL AND SINGULAR, all that certain piece, parcel or tract of land lying and being in Green Sea Township, State and County aforesaid, containing 13.55 acres, as more fully shown on that certain plat of survey prepared for Eddie Lascoe Strickland and Allyson S. Strickland by Lower Carolina Surveying, dated November 15, 2010, recorded March 9, 2011 in Plat Book 251 at page 93 in the office of the ROD for Horry County, South Carolina. Said plat being incorporated herein by reference and made a part and parcel of this description.

PARCEL 7:    TMS #: 015-00-01-094
Tract 1:
All and Singular, all that certain parcel or tract of land, together with the improvements thereon, situate, lying and being in Green Sea Township, Horry County, South Carolina, containing 53.5 acres, more or less, lying approximately 6 miles North of Green Sea, South Carolina, on both sides of the highway leading from Green Sea South Carolina to Fair Bluff, North Carolina in High School District Number 3, being more particularly bounded and described as follows:

North by lands of V.L. Turbeville and Flossie Strickland; East by lands of V.L. Turbeville; South by lands of V.A. Buffkin; West by lands of V.A. Buffkin and Robert Buffkin.

For a more accurate and complete description of this tract of land reference is made to a map thereof made for Elery Buffkin dated January 28, 1935, by W.J. Baldwin, Surveyor, and recorded in the office of the RMC for Horry County in Plat Book 30 at page 70.

LESS AND EXCEPTING:
Tract 1: All and Singular, all that certain piece, parcel or lot of land lying and being in Green Sea Township, State and County aforesaid and containing 1.94 acres, more or less, as more fully shown on that certain plat of survey prepared for James E. Clardy by Soles & Walker, P.A., R.L.S., dated February 20, 1991, recorded in Deed Book 1452 at page 352 in the office of the ROD for Horry County, South Carolina.  Said plat being incorporated herein by reference and made a part and parcel hereof.  This being the identical property excluded from that certain deed from James E. Clardy to Terry Wayne Strickland, dated February 21, 1991, recorded February 22, 1991 in Deed Book 1452 at page 349 in the office of the ROD for Horry County, South Carolina.

Tract 2:  All my right, title and interest to that certain piece, parcel or tract of land lying, situate and being in Green Sea Township and more particularly shown on a plat by Soles & Walker, P.A., R.L.S., dated March 6, 1991 and by reference thereto is incorporated as a part and parcel of this description.

This parcel is triangular in shape and is more particularly described as follows:  Beginning at an iron in the center of the soil road and running North 82 degrees 21 minutes, 36 seconds East 133.3 feet to a nail in the center line of S.C. Highway 33; thence, North 1 degree 38 minutes, 24 seconds West, approximately 190 feet of the within tract line and the line designated "old line" on the aforesaid plat; thence, in a Southerly direction to the beginning point.

This is the agreed line between the grantor herein and the grantee, Landis Buffkin, as is shown on the aforesaid plat.
This being the identical property conveyed by Terry Wayne Strickland to Landis Buffkin and Joyce Buffkin by deed dated March 21, 1991, recorded March 22, 1991 in Deed Book 1458 at page 80 in the office of the ROD for Horry County, South Carolina.

Tract 3:
All and Singular, all that certain piece, parcel, or lot of land lying and being in Green Sea Township, State and County aforesaid, containing 0.06 acres according to a plat of survey prepared for David N. Collins and Debbie M. Collins by Jack F. Davis, RLS, dated July 20, 1999, recorded September 8, 1999 in Plat Book 165 at page 80 in the office of the ROD for Horry County.  Said plat being incorporated herein by reference and made a part and parcel hereof.   This being the identical property conveyed by Terry Wayne Strickland to David N. Collins and Debbie M. Collins by deed recorded September 22, 1999 in Deed Book 2190 at page 68.

Tract 4:
All and Singular, all that certain piece, parcel or lot of land lying and being in Green Sea Township, State and County aforesaid, containing 0.01 acres according to a plat of survey prepared for David N. Collins and Debbie M. Collins by Jack F. Davis, RLS, dated July 20, 1999, recorded September 8, 1999 in Plat Book 165 at page 80 in the office of

the ROD for Horry County.  Said plat being incorporated herein by reference and made a part and parcel hereof.    This being the identical property conveyed by Terry Wayne Strickland to George L. Hill by deed recorded September 22, 1999 in Deed Book 2190 at page 61 in the office of the ROD for Horry County, South Carolina.

This being a portion of the property conveyed by James E. Clardy to Terry Wayne Strickland by deed dated February 21, 1991, recorded February 22, 1991 in Deed Book 1452 at page 349 in the office of the ROD for Horry County, South Carolina.

TRACT 2:
All and Singular, all that certain piece, parcel or lot of land lying and being in Green Sea Township, State and County aforesaid, containing 0.09 acres according to a plat of survey prepared for David N. Collins and Debbie M. Collins by Jack F. Davis, RLS, dated July 20, 1999, recorded September 8, 1999 in Plat Book 165 at page 80 in the office of the ROD for Horry County.  Said plat being incorporated herein by reference and made a part and parcel hereof.

This being the identical property conveyed by G.L. Hill to Terry W. Strickland by deed dated September 10, 1999, recorded September 22, 1999 in Deed Book 2190 at page 58 in the office of the ROD for Horry County, South Carolina.

TRACT 3:
ALL AND SINGULAR, that certain piece, parcel or tract of land lying, being and situate in Green Sea Township, containing 1.21 acres, more or less and being more particularly designated as Tract 2 on a plat by Soles & Walker, P.A., RLS, dated March 6, 1991 and by reference thereto is incorporated as a parcel of this description.
The property is more particularly bounded as follows:  on the North by other lands of Vollie L. Turbeville, Landis Buffkin, Joyce Buffkin and Virginia T. Strickland; on the East by other lands of Landis and Joyce Buffkin; on the South by lands of G.L. Hill in part and South Carolina Highway 33 in part; on the West by the center line of South Carolina Highway 33.

PARCEL 8:    TMS #: 010-00-01-034
All and Singular, all that singular all the certain piece, parcel or tract of land situate, lying and being in Green Sea Township, County and State aforesaid, containing thirty (30) acres, more or less, and being more particularly described as follows:

Commencing at a stake corner on an old neighborhood road leading from Gapway Swamp to the State line road; thence running along said road a Southern direction 40 yards to an iron stake, thence a Western direction 48 yards to a stump corner; thence 35 degrees 45 Min. Southeast 94 feet; thence 11 deg. 40 min. Southeast 460 ft. to a corner; thence 18 deg. Southeast 100 ft. to a gum, thence 88 deg. 15 min. Southeast 1104 ft. to a stake; thence 20 deg. Northeast 297 ft. to a stump; thence 66 deg. 10 min. Southeast 913 feet to a stake corner on the State line; thence running the State line 43 deg. Northwest 733 ft. to a point on line, bearing No. 36; thence a straight line a Western direction back to beginning corner.

Bounded on the North by land of C. A. Buffkin, and on the East by the state line; on the South by N. H. Buffkin, and on the West by lands of C. A. Buffkin.

For a more complete description reference is craved to map of S. D. Cox, Jr. dated October 25th, 1939, being a survey of Horry County.

Less and Excepting:
2/10 of an acre, more or less, deeded to C.A. Buffkin by Gertured B. Strickland, which is excepted from the operation of this deed, per deed book 1848 at page 866 in the office of the ROD for Horry County, South Carolina.

PARCEL 9:    TMS #: 010-00-01-050
All and singular, all that certain piece, parcel or lot or tract of land situate, lying and being in Green Sea Township, Horry County, South Carolina and containing 38.1 acres, more or less and being more particularly bounded and described as follows:

Lying on the Southern side of the State Line Road leading from Norton to Spring Branch beginning in the center of the road and ditch; thence North 31 degrees 30 minutes East with said ditch 1 chain and 12 links to the curve of said ditch, thence South 2 degrees 28 minutes West to the center of said ditch 12 chains 84 links to a stake, thence South 86 degrees 30 minutes East 16 chains 71 links to a stump; thence North 19 degrees East 18 chains 81 links to a stake at the Northern edge of said road; thence with the Northern edge of said road North 62 degrees West 6 chains 80 links to the center of a small ditch; thence with the center of the said ditch North 7 degrees 20 minutes East 9 chains 5 links to a stake; thence South 70 degrees 5 minutes West 15 chains 26 links to a stake at the edge of the road; thence North 3 degrees 14 minutes East with the edge of said road 10 chains 91 links to the center of the State Line Road; thence with the center of State Line Road 63 degrees 27 minutes West 3 chains to the beginning corner.

For a more detailed description reference is craved to a certain map or blue print made by T. P. Hinson for J. Hibert Strickland and dated February, 1949, recorded in Plat Book 8 at page 7A. This tract being designated as Tract No. 1 on said map or blue print.

PARCEL 10:    TMS #: 010-00-01-100
All and singular all that a certain piece, parcel or tract of land situate, lying and being in Green Sea Township, County and State aforesaid, containing Forty-seven and Forty-five one hundredths (47.45) acres, more or less, and being more particularly described as follows:

Beginning at a Stake N on the East side of the Old Tram Road, being on the South side of the C. A. Buffkin tract of land, thence 71 deg. 40 minutes Northeast 1877 ft. to gum corner O; thence 14 deg. 35 minutes Northwest 563 ft. to a gum; thence 11 deg. 40 minutes Northwest 460 ft. thence 35 deg. 45 min. Northwest 94 ft. thence 89 deg. 35 minutes Northwest 409 feet; thence 89 deg. 50 min. Northwest 627 feet to a stake N; thence 13 deg. 20 minutes Southwest parallel with the old tram road 1820 ft. back to beginning corner.

Bounded on the North by other lands of C. A. Buffkin; on the East by lands of N. H. Buffkin and lands of this day conveyed to Gertrude Buffkin Strickland by C. A. Buffkin; on the South by lands of J. H. Strickland, and on the west by other lands of C.A. Buffkin.

This being a portion of a 100 acre tract of land conveyed to C. A. Buffkin by Jackson Buffkin and recorded in Book Z-6, page 291, records of Horry County and designated as

tract on a map of S. D. Cox, Jr., dated October 25th, 1939 in a survey of lands of C. A. Buffkin which map is incorporated herein and made a part hereof.

Parcels 4, 5, 6, 7-Tract 3 only, 8, 9 & 10 Derivation: This being a portion of that property conveyed by Terry Wayne Strickland to Terry Wayne Strickland, as Trustee for the Terry Wayne Strickland Living Trust UTD April 2, 2010 as Amended and Restated on December 21, 2011 by Quit Claim Deed dated December 21, 2011, recorded February 1, 2012 in Deed Book 3565 at page 1471 in the office of the ROD for Horry County, South Carolina.