UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | Case No.  20-02804-jw |
| | ) | |
| TERRY WAYNE STRICKLAND and | ) | Chapter 12 |
| MATTIE CHARLENE | ) | |
| STRICKLAND, | ) | |
| | ) | **NOTICE OF MOTION FOR** |
| Debtors | ) | **RELIEF FROM AUTOMATIC STAY** |
| | ) | **PURSUANT TO 11 U.S.C. §362(d)** |

TO:    THE DEBTORS, THE TRUSTEE, AND THOSE NAMED IN THE
ATTACHED MOTION

PLEASE TAKE NOTICE THAT a hearing will be held on the attached Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. §362(d)(1) and (2) (the "Motion") on:

> DATE:    November 10, 2020
>
> TIME:    11:30 a.m.
>
> PLACE:    United States Bankruptcy Court
> King and Queen Building
> 145 King Street, Room 225
> Charleston, South Carolina 29401

Within fourteen (14) days after service of the attached Motion, the Notice of Motion, the Movant's Certification of Facts, (and a blank Certification of Facts form, applicable only to motions for relief from the automatic stay and for service on *pro se* parties only), any party objecting to the relief sought shall:

1.    File with the Court a written objection to the 11 U.S.C. § 362 Motion;

2.    File with the Court a Certification of Facts (for motions for relief from the automatic stay);

3.    Serve items 1 and 2 above on the attorney for Harvey Fertilizer and Gas Co., the Movant, at the address shown below; and

4.    File a certificate of such service with the Court.

If you fail to comply with this procedure, you may be denied the opportunity to appear and be heard on this proceeding before the Court.

/s/ *J. Michael Fields*
J. Michael Fields
Admitted *Pro Hac Vice*
N.C. State Bar I.D. No.:  018170
E-mail:  jmf@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 8088
Greenville, NC 27835-8088
Telephone:  252.215.4000
Facsimile:  252.215.4077
*Counsel for Harvey Fertilizer and Gas Co.*
  *Admitted Pro Hac Vice*


and

/s/ *Amy H. Wooten*
Amy H. Wooten
S.C. Fed. Bar I.D. No.: 11445
S.C. State Bar I.D. No.: 100128
E-mail:  ahwooten@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 33009
Raleigh, NC  27636-3009
Telephone:  919.277.9130
Facsimile:  919.277.9177
*Local Civil Rule 9011-4(d) Counsel for*
  *Harvey Fertilizer and Gas Co.*

October 16, 2020
Greenville, North Carolina

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No.  20-02804-JW |
| TERRY WAYNE STRICKLAND and | ) | |
| MATTIE CHARLENE | ) | Chapter 12 |
| STRICKLAND, | ) | |
| | ) | |
| Debtors | ) | |
| | ) | |

**MOTION FOR RELIEF FROM AUTOMATIC STAY
PURSUANT TO 11 U.S.C. § 362(d)(1) AND (2)**

NOW COMES Harvey Fertilizer and Gas Co. ("Harvey's"), a secured creditor of Terry Wayne Strickland ("Mr. Strickland") and Charlene Elliott Strickland ("Mrs. Strickland") (collectively, "Debtors"), by and through its undersigned counsel, and hereby moves for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (2), Rule 4001(a) of the Federal Rules of Bankruptcy Procedure and SC LBR 4001-1(a), to allow Harvey's to proceed with all of its rights and remedies under its Mortgage and applicable law with respect to certain real property collateral.  Relief is proper and should be granted under § 362(d)(1) for cause, including the lack of adequate protection of Harvey's interest in the collateral; and under § 362(d)(2) because the Debtors lack equity in the property securing Harvey's, and the property is not necessary for an effective reorganization, for the reason that successful reorganization is not reasonably possible within a reasonable time in this case.

Harvey's is owed a total of $630,998.27 as of the petition date.  This indebtedness is secured by, among other things, a Mortgage on the real estate described below.

3

This Chapter 12 case is the third filing by the Debtors under Chapter 12 since December 11, 2018, a span of less than 19 months. The first two cases were dismissed without a plan having been filed, among other deficiencies. Harvey's has not received any payment in any amount since the debt was incurred. Harvey's should be granted relief from the automatic stay now, without further delay.

In support of this Motion, Harvey's shows unto the Court as follows:

## I.    <u>Jurisdiction and Venue</u>

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b), and Local Civil Rule 83.IX.01, DSC. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.    <u>Background</u>

3.      On July 6, 2020 ("<u>Petition Date</u>"), the Debtors filed their petition for this case. This case is the latest of three filings made by the Debtors under Chapter 12 of the United States Bankruptcy Code (11 U.S.C. § 101, et seq., the "<u>Bankruptcy Code</u>").

4.      Mr. Strickland filed his first Chapter 12 case on December 11, 2018, Case No. 18-06291-jw. On January 9, 2019, he also filed a Chapter 12 case for Strickland Farms of Green Sea, Inc. ("<u>Strickland Farms</u>"), Case No. 19-000180-jw, in his capacity as President of Strickland Farms.

5.      Mrs. Strickland filed her first Chapter 12 case also on January 9, 2019, Case No. 19-00181-jw.

6.      Although the Debtors never filed a motion for joint administration of their cases, at the meetings of creditors in the first cases (the 11 U.S.C. § 341(a) meetings) the Debtors presented their cases as comprising one reorganization by the Debtors and Strickland Farms.

7.     Mr. Strickland's first case, Case No. 18-06291-jw, was dismissed upon motion by the Chapter 12 Trustee pursuant to an Order entered on March 6, 2019.  Mrs. Strickland's first case, Case No. 19-00181-jw, and the Strickland Farms case, Case No. 19-00180-jw, were dismissed upon motions by the Trustee pursuant to Orders entered on April 17, 2019.

8.     The Debtors next filed for relief under Chapter 12 on November 25, 2019, Case No. 19-06177-jw.  This time, Mr. Strickland and Mrs. Strickland filed jointly, and Strickland Farms did not file a new Chapter 12 case. This second case was filed eight and one-half (8 1/2) months after the dismissal of Mr. Strickland's first case and seven (7) months after the dismissal of Mrs. Strickland's first case and the case of Strickland Farms.

9.     On January 27, 2020, the Trustee filed a Motion to Dismiss the second case, based upon the Debtors' failure to (1) file a summary of operations, (2) provide the Trustee with proof of insurance on their property, (3) provide the Trustee with proof that they had opened a Chapter 12 bank account, (4) provide the Trustee with copies of their tax returns, (5) provide the Trustee with requested trust documents, (6) file their November 2019 and December 2019 monthly reports, and (7) file an application for employment of their bankruptcy counsel.  The Court granted the Trustee's motion and dismissed the case pursuant to the Order entered on February 26, 2020.

10.     Four and one-half (4½) months later, the Debtors filed this third Chapter 12 case.

11.     Harvey's is informed and believes that the Debtors were able to obtain an operating loan in 2019 for their farming operation, but the Debtors were not able to repay the 2019 operating loan.  At the meeting of creditors on August 7, 2020 in this latest Chapter 12 case, the Debtors stated that they do not have an operating loan for 2020 to cover their farming expenses.

### III.    HARVEY'S CLAIM

12.    On or about December 5, 2013, Debtors and Strickland Farms executed and delivered to Harvey's a Credit Application and Credit Agreement (the "Credit Agreement"). A copy of the Credit Agreement is attached as **Exhibit A** and is incorporated by reference as if completely set forth. Pursuant to the Credit Agreement, Harvey's sold certain agricultural goods to Debtors and Strickland Farms on credit in connection with the 2014 crop year.

13.    Debtors and Strickland Farms became past due on their account with Harvey's and defaulted on the payment terms set forth in the Credit Agreement. As part of a workout of Debtors' and Strickland Farms' past due payment obligation to Harvey's, Debtors and Strickland Farms executed and delivered to Harvey's a Promissory Note dated July 1, 2015 in the original principal amount of $377,247.93 (the "Note"). A copy of the Note is attached as **Exhibit B** and is incorporated by reference as if completely set forth.

14.    Debtors and Strickland Farms did not make the payment required under the Promissory Note by December 31, 2015. In fact, Debtors and Strickland Farms did not make any payment toward the amount owing under the Promissory Note. In response, Harvey's agreed to extend the Debtors' and Strickland Farms' payment deadline. As a further attempted workout of the Debtors' and Strickland Farms' past due obligation:

a.    Debtors and Strickland Farms executed and delivered to Harvey's a Note Modification Agreement dated February 9, 2016 (the "Modification"). A copy of the Note Modification Agreement is attached as **Exhibit C** and is incorporated by reference as if completely set forth; and

b.    Debtors, Strickland Farms, Terry Wayne Strickland Living Trust, and Charlene Elliott Strickland Living Trust executed and delivered to Harvey's a Mortgage, Assignment of Rents, Security Agreement and Fixture Filing dated February 9, 2016 and recorded in Book 5791, at Page 3342, in the office

of the Registrar of Deeds of Horry County (the "Mortgage").  A copy of the Mortgage is attached as **Exhibit D** and is incorporated by reference as if completely set forth.

c.    The Modification extended the maturity date of the Promissory Note to December 31, 2016.  Debtors and Strickland Farms did not make, and have not made, the payment due on December 31, 2016.  In fact, Debtors and Strickland Farms have not made any payment on their obligation to Harvey in any amount.

d.    On October 11, 2017, Harvey's obtained a Judgment against Debtors and Strickland Farms in the United States District Court for the District of South Carolina, Civil Action No. 4:17-cv-02740-MGL.  A copy of the Judgment is attached as **Exhibit E** and is incorporated by reference as if completely set forth.

15.    Harvey's collateral specifically includes, but is not limited to[1], the following (the "Real Property"):

a.    Second priority lien on the following properties located in Horry County:

i.    24.82 acres and improvements thereon identified as TMS # 015-00-01-002; and

ii.    81.09 acres and improvements thereon identified as TMS # 010-00-01-040.

b.    First priority lien on the following properties located in Horry County:

i.    50.14  acres and improvements thereon identified as TMS # 021-00-01-083;

ii.    6.68 acres identified as TMS # 010-00-01-057;

---

[1]  ArborOne, ACA purports to have a first-priority lien on Harvey's equipment collateral and certain other real property collateral, has obtained relief from the automatic stay with respect thereto, and indicated in its Motion for Relief from Automatic Stay [DE 29] that its Petition Date payoff ($4,204,334.66) exceeds the Debtors' scheduled value of such other collateral ($3,354,035.00).  Thus, in this Motion, Harvey's does not seek relief from the automatic stay with respect to such other collateral.

iii.    7.51 acres and improvements thereon identified as TMS # 038-00-01-006; and

iv.    0.99 acres identified as TMS # 019-00-01-041.

16.    In the Debtors' Chapter 12 Plan and Motion to Value Security [DE 49],[2] the Debtors indicate that the Real Property has an aggregate value of $950,400.00[3] and that, after taking into account prior liens, there is equity for the benefit of Harvey's of $594,903.72.[4]

17.    As of the Petition Date, Debtors and Strickland Farms owe Harvey's $630,998.27.

18.    Cause exists for the lifting of the automatic stay pursuant to 11 U.S.C. § 362(d)(1) with respect to the Real Property, in that Harvey's lacks adequate protection, and the Debtors are unable or unwilling to provide the same to Harvey's.

19.    Grounds exist for the lifting of the automatic stay pursuant to 11 U.S.C. § 362(d)(2) with respect to the Real Property, in that, upon information and belief, there is no equity in the Real Property, and the same is not necessary for an effective reorganization, for the reason that successful reorganization is not reasonably possible within a reasonable time in this case.

## IV.    ARGUMENT

Harvey's should be granted relief from the automatic stay pursuant to each of 11 U.S.C. §§ 362(d)(1) and (2).  Relief from the stay imposed under 11 U.S.C. § 362(a) is governed by 11 U.S.C. § 362(d), which provides in pertinent part that:

(d)    On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay —

---

[2]  Harvey's has filed an Objection to Chapter 12 Plan and Motion to Value Security [DE 55].

[3]  Harvey's does not stipulate as to the correctness of the Debtors' values.  However, for purposes of this Motion only, Harvey's is willing to agree to use the Debtors' stated values.

[4]  With respect to TMS # 010-00-01-040, the Debtors' Plan and Motion to Value Security lists Helena Chemical Company's lien as a senior lien.  Actually, Helena Chemical Company's lien is junior to the lien of Harvey's.  Thus, using the Debtors' values (but not stipulating to them), the equity in the Real Property for the benefit of Harvey's actually would total $602,296.72 instead of $594,903.72.

(1)  for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2)  with respect to a stay of an act against property under subsection (a) of this section, if —

(A)  the debtor does not have an equity in such property; and

(B)  such property is not necessary to an effective reorganization.

Grounds exist for relief under each of these provisions.

## A. Relief Pursuant to 11 U.S.C. 362(d)(1)

Pursuant to 11 U.S.C. § 362(d)(1), a party shall be granted relief from the stay for cause, including the lack of adequate protection of the party's interest in property.   "Cause" for relief from the automatic stay is not defined in the Bankruptcy Code, and it is determined on a case-by-case basis.   Robbins v. Robbins (In re Robbins), 964 F.2d 342, 345 (4th Cir. 1992); In re Wolsonovich, C/A 19-06136-jw, slip op. at 4 (Bankr. D.S.C. April 1, 2020); and In re James, C/A 17-01656-jw, slip op. at 3 (Bankr. D.S.C. September 26, 2017).   In the present case, cause for relief exists in the lack of adequate protection of Harvey's interest in the Real Property, in the futility of the Debtors' purported reorganization under Chapter 12.

The Bankruptcy Code imposes separate burdens of proof with respect to motions for relief from the automatic stay.   "In a hearing . . . concerning relief from the stay . . . the party requesting such relief has the burden of proof on the issue of the debtor's equity in the property; and . . . the party opposing such relief has the burden of proof on all other issues." 11 U.S.C. § 362(g).

Accordingly, while the courts require the movant to initially articulate prima facie cause for the relief, thereafter the burden shifts to the debtor (or other party opposing the relief) to prove the absence of cause.   See In re Abdul Muhaiman, 343 B.R. 159, 169-170 (Bankr. D.Md. 2006) ("The party seeking relief from the automatic stay has an initial burden of going forward with evidence to establish prima facie cause for relief; but the burden of proof, i.e., the burden of persuasion, then shifts to the party opposing relief on all issues, except the existence of equity.

This burden of persuasion may be also viewed as the risk of non-persuasion." [internal citations omitted]). The debtor has the burden to show the absence of cause for relief.  In re Gauwin, 24 B.R. 578, 580 (9th Cir. BAP 1982).

"Cause" exists in the futility of the Debtors' purported reorganization. This case is the Debtors' third attempt at reorganization under Chapter 12 within a period of approximately 19 months.  The first cases were dismissed without a Chapter 12 plan having been filed.  The second case was dismissed due to the Debtors' failure to comply with the administrative requirements of Chapter 12 and the Debtors' failure to cooperate with the Trustee.

In addition, Harvey's is informed and believes that the Debtors were able to obtain an operating loan for 2019 from another lender, but were unable to fully repay the 2019 operating loan.  Furthermore, the Debtors were unable to obtain an operating loan for 2020, and their ability to successfully farm in 2021 and service their secured debt appears unlikely.

Harvey's should be granted stay relief pursuant to 11 U.S.C. § 362(d)(1).

### B.  Relief Pursuant to 11 U.S.C. § 362(d)(2)

Relief from the automatic stay is proper under 11 U.S.C. § 362(d)(1). The Debtors lack equity in the Real Property, and the property is not necessary to an effective reorganization, for the reason that an successful reorganization is not reasonably possible within a reasonable time.

The first element for relief under § 362(d)(2) – the Debtors' lack of equity in the property – is met.  The aggregate value placed by the Debtors on the Real Property is $950,400.00.  See the Debtors' Chapter 12 Plan and Motion to Value Security [DE 49].  The indebtedness to Harvey's is $630,998.27 as of the Petition Date.  According to the Debtors, other lien holders on the Real Property are United Community Bank ($89,416.28), Anderson Brothers Bank ($258,687), and Helena Chemical ($448,973) whose liens total $797,076.28.   See the Debtors'

Chapter 12 Plan and Motion to Value Security [DE 49]. Accordingly, by the Debtors' own numbers, the Debtors lack equity in the Real Property.

The second element for relief under § 362(d)(2) is that the property is not necessary for an effective reorganization. This element is not a question of whether the property is necessary for a reorganization, but, instead, an effective reorganization. The party opposing the stay relief must show that there is "a reasonable possibility of a successful reorganization within a reasonable time," and that the property is necessary to that reorganization. United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd. (In re Timbers of Inwood Forest Associates, Ltd.), 484 U.S. 365, 375-76, 108 S.Ct. 626, 632 (1988). Under this test, stay relief should be granted if the debtor has no reasonable likelihood of reorganization. 3 Collier on Bankruptcy ¶ 362.07[4][b] (16th Ed.).

In the present case, the Debtors cannot satisfy the second element of § 362(d)(2) – that there is a reasonable possibility of a successful reorganization within a reasonable time. The Debtors' failure of their prior two cases, their inability to pay their operating line lender for 2019, their inability to obtain an operating line for 2020, and the lack of feasibility of a plan that will service their secured debt show that a successful reorganization is not reasonably possible in this case.

Harvey's should be granted stay relief pursuant to 11 U.S.C. § 362(d)(2).

## V.    CONCLUSION

For the foregoing reasons, Harvey's should be granted relief from the automatic stay pursuant to each of 11 U.S.C. §§ 362(d)(1) and (2).

WHEREFORE, Harvey's prays unto the Court as follows:

1.    That the Court enter an Order granting Harvey's relief from the automatic stay so that Harvey's may proceed with all of its rights and remedies with respect to the Real Property, including but not limited to foreclosing upon the Real Property pursuant to its Mortgage and applicable by state law.

2.      That the Court waive the requirements of Rule 4001(a)(3).

3.      That if relief from the automatic stay is not granted, the Court grant adequate protection to Harvey's.

4.      That Harvey's have such other and further relief as to the Court may seem just and proper.

*/s/ J. Michael Fields*
J. Michael Fields
Admitted *Pro Hac Vice*
N.C. State Bar I.D. No.:  018170
E-mail:  jmf@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 8088
Greenville, NC 27835-8088
Telephone:  252.215.4000
Facsimile:  252.215.4077
*Counsel for Harvey Fertilizer and Gas Co.*
   *Admitted Pro Hac Vice*

and

*/s/ Amy H. Wooten*
Amy H. Wooten
S.C. Fed. Bar I.D. No.: 11445
S.C. State Bar I.D. No.: 100128
E-mail:  ahwooten@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 33009
Raleigh, NC  27636-3009
Telephone:  919.277.9130
Facsimile:  919.277.9177
*Local Civil Rule 9011-4(d) Counsel for*
   *Harvey Fertilizer and Gas Co.*

October 16, 2020
Greenville, North Carolina

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:                                    )
                                          )
  TERRY WAYNE STRICKLAND and              )       CASE NO.:  20-02804-JW
  MATTIE CHARLENE STRICKLAND,             )            Chapter 12
                                          )
                    Debtors               )

## MOVANT'S CERTIFICATION OF FACTS

In the above-entitled proceeding, in which relief is sought by Harvey Fertilizer and Gas Company ("Harvey's") from the automatic stay provided by 11 U.S.C. § 362(a), in support of Harvey's Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362 (d)(1) and (2) (the "Motion"), I do hereby certify to the best of my knowledge the following:

1.    **Nature of Movant's Interest**:

       Harvey's is a secured creditor of Terry Wayne Strickland ("Mr. Strickland") and Mattie Charlene Strickland ("Mrs. Strickland") (collectively, the "Debtors").

2.    **Brief Description of Security Agreement**:

       Harvey's has a Mortgage covering, among other things, the real property described below located in Horry County, South Carolina.  The indebtedness to Harvey's is **$630,998.27 as of July 6, 2020, plus interest accruing thereafter**.  Copies of the relevant loan documents and the Judgment are attached to the Motion as **Exhibits A through E**.

3.    **Description of the Real Property Encumbered by Stay:**
       a.    24.82 acres and improvements thereon identified as TMS # 015-00-01-002 (Horry County);
       b.    81.09 acres and improvements thereon identified as TMS # 010-00-01-040 (Horry County);
       c.    50.14  acres and improvements thereon identified as TMS # 021-00-01-083 (Horry County);
       d.    6.68  acres identified as TMS # 010-00-01-057 (Horry County);
       e.    7.51 acres and improvements thereon identified as TMS # 038-00-01-006 (Horry County); and
       f.    0.99 acres identified as TMS # 019-00-01-041 (Horry County).

4.    **Basis for Relief:**

Harvey's is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) for cause, in that Harvey's lacks adequate protection, and the Debtors are unable or unwilling to provide the same to Harvey's.  Further cause exists under 11 U.S.C. § 362(d)(2), in that, upon information and belief, there is no equity in the Real Property and the same is not necessary for an effective reorganization.

5.    **Prior Adjudication by Other Courts**:

None on the issue of stay relief.  However, this Court has entered Orders dismissing the previous Chapter 12 cases filed by Mr. Strickland (Case No. 18-06291-jw), Mrs. Strickland (Case No. 19-00181-j w), Strickland Farms (Case No. 19-00180-jw) and Mr. and Mrs. Strickland jointly (Case No. 19-06177-jw).  The previous cases were each dismissed upon motion of the Trustee.

6.    **Valuation of Property**:

   a.    TMS #:  015-00-01-002

| | |
|---|---|
| Fair Market Value: | $ 119,860.00 |
| Senior Lien(s): | |
|    United Community Bank | $   89,416.28 |
| Movant's Lien: | $ 630,998.27 |
| Other Lien(s): | |
|    Helena Chemical Company | $ 448,973.00 |
| Net Equity: | $ 0.00 |

   b.    TMS #:  010-00-01-040

| | |
|---|---|
| Fair Market Value: | $ 266,080.00 |
| Senior Lien(s): | |
|    Anderson Brothers Bank | $ 258,686.63 |
| Movant's Lien: | $ 630,998.27 |
| Other Lien(s): | |
|    Helena Chemical Company[5] | $ 448,973.00 |
| Net Equity: | $ 0.00 |

---

[5]  The Debtors' Plan and Motion to Value Security lists Helena Chemical Company's lien as a senior lien.  Actually, Helena Chemical Company's lien is junior to the lien of Harvey's.

c.   TMS #: 021-00-01-083

| | |
|---|---|
| Fair Market Value: | $ 173,460.00 |
| Senior Lien(s): | N/A |
| Movant's Lien: | $ 630,998.27 |
| Other Lien(s): | |
| Helena Chemical Company | $ 448,973.00 |
| Net Equity: | $0.00 |

d.   TMS #:  010-00-01-057

| | |
|---|---|
| Fair Market Value: | $ 29,700.00 |
| Senior Lien(s): | N/A |
| Movant's Lien: | $ 630,998.27 |
| Other Lien(s): | |
| Helena Chemical Company | $ 448,973.00 |
| Net Equity: | $ 0.00 |

e.   TMS #:  038-00-01-006

| | |
|---|---|
| Fair Market Value: | $ 353,300.00 |
| Senior Lien(s): | N/A |
| Movant's Lien: | $ 630,998.27 |
| Other Lien(s): | |
| Helena Chemical Company | $ 448,973.00 |
| Net Equity: | $ 0.00 |

f.   TMS #:  019-00-01-041

| | |
|---|---|
| Fair Market Value: | $ 8,000.00 |
| Senior Lien(s): | N/A |
| Movant's Lien: | $ 630,998.27 |
| Other Lien(s): | |
| Helena Chemical Company | $ 448,973.00 |
| Net Equity: | $ 0.00 |

**Source/Basis of Value**:

For each parcel of the Real Property, the Debtor's indication of value is set forth above.  See the Debtors' Chapter 12 Plan and Motion to Value Security [DE 49]. Harvey's does not stipulate as to the correctness of the values, but Harvey's is willing to agree to use the Debtors' values for purposes of this Motion only.

7.    **Amount of Debtors' Estimated Equity:**

$0.00

8.    **Month and Year in Which First Direct Post-Petition Payment Came Due to Movant (if applicable):**

Not applicable.

9.    **(a)  For Movant/Lienholder (if applicable):  List or attach a list of all post-petition payments received directly from Debtors, clearly showing date received, amount, and month and year for which each such payment was applied:**

| Date Received | Amount Paid | Applied to Date |
|---|---|---|
| None | None | N/A |

10.   **(b)  For Objecting Party (if applicable): List or attach a list of all post-petition payments included in the Movant's list from (a) above which objecting party disputes as having been made.  Attach written proof of such payment(s) or a statement as to why such proof is not available at the time of filing this objection.**

Not applicable

11.   **Month and Year for Which Post-Petition Account of Debtors is Due as of the Date of this Motion:**

Harvey's has received no payments for the Debtors during this case.

/s/ *J. Michael Fields*
J. Michael Fields
Admitted *Pro Hac Vice*
N.C. State Bar I.D. No.:  018170
E-mail:  jmf@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 8088
Greenville, NC 27835-8088
Telephone:  252.215.4000
Facsimile:  252.215.4077
*Counsel for Harvey Fertilizer and Gas Co.*
   *Admitted Pro Hac Vice*


and

/s/ *Amy H. Wooten*
Amy H. Wooten
S.C. Fed. Bar I.D. No.: 11445
S.C. State Bar I.D. No.: 100128
E-mail:  ahwooten@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 33009
Raleigh, NC  27636-3009
Telephone:  919.277.9130
Facsimile:  919.277.9177
*Local Civil Rule 9011-4(d) Counsel for*
   *Harvey Fertilizer and Gas Co.*

October 16, 2020
Greenville, North Carolina

# EXHIBIT A

# Harvey's

ESTABLISHED 1871

Outlet #: **55**

☑ Harvey Fertilizer and Gas Co.

☐ Roanoke Farm Supply, LLC

Date: *12-5-2013*

☐ Alligood-Owens, Inc.

_____ ORIGINAL _____

COPY

## - Credit Application -

### SECTION 1    (PLEASE PRINT CLEARLY and COMPLETE APPLICABLE SECTIONS ONLY; ATTACH MORE PAGES IF NECESSARY) *REQUIRED FIELDS

| FIRST NAME* TERRY | MI W | LAST NAME* STRICKLAND | EMPLOYER SELF | SOCIAL SECURITY#* |
| DATE OF BIRTH | STREET # AND NAME 6470 STRICKLAND ROAD | CITY GREEN SEA | STATE* SC | ZIP* 29545 |

ALTERNATE MAILING ADDRESS | HOME TELEPHONE* | BUSINESS TELEPHONE | CELL TELEPHONE

EMAIL ADDRESS | YEARS AT RESIDENCE | ANNUAL INCOME | OCCUPATION

| CO-APPLICANT - FIRST NAME CHARLENE | MI E | LAST NAME STRICKLAND | EMPLOYER SELF | SOCIAL SECURITY # |
| DATE OF BIRTH | STREET # AND NAME 6470 STRICKLAND RD | CITY GREEN SEA | STATE SC | ZIP 29545 |

ALTERNATE MAILING ADDRESS | HOME TELEPHONE* | BUSINESS TELEPHONE | CELL TELEPHONE

EMAIL ADDRESS | YEARS AT RESIDENCE | ANNUAL INCOME | OCCUPATION

### SECTION 2    ☑ CORPORATION    ☐ LLC    ☐ PARTNERSHIP    ☐ PROPRIETORSHIP

BUSINESS STRICKLAND FARMS OF GREEN SEA, INC | TAX ID#*

| STREET # AND NAME 6470 STRICKLAND ROAD | CITY* GREEN SEA | STATE* SC | ZIP* 29545 |

ALTERNATE MAILING ADDRESS | BUSINESS TELEPHONE* | YR. BUS. EST* | E-MAIL ADDRESS

| (OFFICER OR PARTNER) FIRST NAME TERRY | MI W | LAST NAME STRICKLAND | SOCIAL SECURITY # |

HOME TELEPHONE | BUSINESS TELEPHONE | E-MAIL ADDRESS

### TRADES

CURRENT/PREVIOUS SUPPLIER HELENA | PHONE | FAX

ADDRESS

CURRENT/PREVIOUS SUPPLIER | PHONE | FAX

ADDRESS

### FINANCIAL

LOAN OFFICER

BANK REFERENCE | CITY | STATE

HAS APPLICANT EVER FILED BANKRUPTCY?    ☐ YES    ☐ NO    IF YES, YEAR: _____ & CHAPTER: _____ STATUS: _____

All of the terms and conditions of the Credit Agreement appearing on the reverse side hereby are incorporated by reference and are a material part of this Credit Application. By signing below, each customer/applicant agrees to such terms and conditions.

*Each individual applicant/customer has hereunto set his/her hand and adopted as his/her seal the word "SEAL" set forth beside his/her name as his/her seal, intending this to be a sealed instrument, as of the date first above written. Each corporate, partnership, limited liability company, etc. applicant/customer has caused this instrument to be executed in its name by a person or persons duly authorized, and if a corporation its corporate seal to be affixed hereto, otherwise having adopted the word "SEAL" set forth beside its name as its seal, intending this to be a sealed instrument, all by authority duly given, as of the date first above written.*

Individual customers/applicants:

_____ (SEAL)

_____ (SEAL)
Charlene E Strickland

_____ (SEAL)

_____ (SEAL)

Corporate, Partnership, L.L.C., etc. customer/applicant:

NAME: STRICKLAND FARMS of Green Sea, IN (SEAL)

BY: _____ (SEAL)

TITLE: PRESIDENT

BY/ATTEST: Charlene E Strickland (SEAL)

TITLE: SECRETARY


ESTABLISHED 1871

# CREDIT AGREEMENT

The customer(s) signing the Application on the reverse side ("I", whether one or more) agree that the businesses checked on the previous page, or if none checked then all of them ("you"), from time-to-time has furnished and/or may in the future furnish to me on one or more accounts such goods and labor as you may determine in your sole discretion ("principal"). You may discontinue furnishing me goods and labor at any time for an reason. All goods and labor furnished or to be furnished are subject to the terms and conditions of this Credit Agreement.

Promise to Pay. I promise to pay you for all goods and labor furnished or to be furnished, together with interest as specified below at such places as you from time to time may designate in writing.

Interest. I will not incur an interest charge on account of a principal advance reflected in your invoice if I pay such invoice in full on or before the last day of the month following the month in which such invoice is dated. However, if I do not pay such invoice in full on or before the last day of the month following the month in which such invoice is dated, interest shall accrue on the unpaid balance of such invoice at the rate of 18% per annum (1 1/2% per month), or 15% per annum (1 1/4% per month) if and when this Credit Agreement is secured, beginning on the date which is 31 days following the date of such invoice and continuing until the such invoice is paid in full.

Payment Terms. The due date for payment of each principal advance made hereunder is the last day of the month following the month in which the invoice reflecting such principal advance is dated.

Application of Payments. All payments shall be applied first to unpaid attorneys' fees and collection costs, then to accrued but unpaid interest, and any remaining amount to principal in the chronological order in which the invoices are dated (i.e., oldest invoice first).

Default; Remedies. I will be in default if I fail to make any payment when due; if I break any promise I have made to you or fail to comply with or to perform when due any other term, obligation, covenant, or condition contained in this Credit Agreement, any addendum hereto, or any agreement related to this Credit Agreement; if any creditor tries to take any of my property on or in which you have a lien or security interest; upon the occurrence of a default specified in any instrument securing this Credit Agreement; or if you in good faith believe that the prospect of timely payment or other performance by me is impaired or you otherwise in good faith deem yourself or your collateral insecure. Upon default, interest shall continue to accrue, and you may declare the entire unpaid principal balance of this Credit Agreement and all accrued unpaid interest immediately due, without demand or notice of any kind, and then I will pay that amount. The waiver by you of any default shall not operate as a waiver of any other default or of the same default on a future occasion. Acceptance by you of payment of less than the entire unpaid balance after default and acceleration of this Credit Agreement shall not waive the acceleration, and you may proceed with your rights and remedies. If you initiate any legal proceedings or incur any legal expense or attorneys' fees in exercising any of your rights or remedies upon default, whether or not there is a lawsuit, such expenses and reasonable attorneys' fees shall be added to the principal balance due, and I shall be liable for the payment of same as an additional obligation under this Credit Agreement.

General. I authorize you from time to time to investigate my credit worthiness, credit history and financial responsibility, including direct contact with past, present and future creditors; to obtain my credit report; to conduct lien searches; and to answer questions or inquiries from others seeking credit experience or information about me. The obligations under this Credit Agreement are joint and several. This means that the words "I", "me", and "my" mean each and all the persons signing on the previous page. "You", "your" and "yourself" mean the holder of this Credit Agreement. This Credit Agreement and any addendum hereto are binding upon me and my heirs, personal representatives, successors and assigns and shall insure to the benefit of and be enforceable by you and your successors, transferees and assigns. If any clause or provision of this Credit Agreement or any addendum hereto is found to be invalid or is incapable of being enforced by any rule or law or public policy, all other clauses and provisions shall, nevertheless, remain in full force and effect.

THERE IS **NO IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE**. YOU HAVE MADE NO EXPRESS WARRANTIES TO ME. THE EXCLUSIVE REMEDY AGAINST YOU FOR ANY CLAIM RELATING TO THE HANDLING OR USE OF GOODS FURNISHED BY YOU IS A CLAIM FOR DAMAGES, AND IN NO EVENT SHALL DAMAGES OR ANY OTHER RECOVERY OF ANY KIND AGAINST YOU EXCEED THE PRICE OF THE SPECIFIC GOODS WHICH CAUSED THE ALLEGED LOSS, DAMAGE, INJURY OR OTHER CLAIM. YOU SHALL NOT BE LIABLE, AND ANY AND ALL CLAIMS AGAINST YOU ARE WAIVED, FOR SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OR EXPENSES, OF ANY NATURE, INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS OR INCOME, AND CROP OR PROPERTY LOSS OR DAMAGE, WHETHER OR NOT BASED ON YOUR NEGLIGENCE, STRICT LIABILITY IN TORT OR ANY OTHER CAUSE OF ACTION.

# EXHIBIT B

PROMISSORY NOTE

$377,247.93                                                                July 1, 2015

FOR VALUE RECEIVED, the undersigned makers (collectively "Borrowers")
promise to pay to the order of Harvey Fertilizer and Gas Co. ("Lender"), at such address as is
designated by the holder hereof from time to time, in lawful money of the United States of
America, the sum of $377,247.93, consisting of principal of $370,712.14 (which principal
includes $3,250.00 in attorneys' fees) and accrued but unpaid interest of $6,535.79 as of the date
hereof, together with interest on the principal balance at the fixed rate of Ten Percent (10%) per
annum from and after the date hereof until paid in full.

Repayment. This Note shall be due and payable in full in one (1) single payment
on December 31, 2015.

Credit Agreement. Should any part of the indebtedness owed hereunder at any
time be evidenced by or in a credit application, credit agreement, or guaranty, the terms and
provisions of this Note shall supersede those contained in such credit application, credit
agreement, or guaranty.

Application of Payments. All payments shall be applied first to any unpaid
attorneys' fees and collection costs, then to any unpaid interest, and any remaining amount to
principal.

Prepayment. Borrowers may prepay any or all of the outstanding balance due at
any time without penalty.

Default. Borrowers shall be in default if any of the following events occur:
(a) Borrowers fail to make any payment when due, (b) Borrowers break any other promise made
to Lender, or fail to comply with or to perform when due any other term, obligation, covenant, or
condition contained in this Note or any agreement related to this Note, or in any other agreement
or loan Borrowers have with Lender, (c) any representation or statement made or furnished to
Lender by Borrowers or on Borrowers' behalf is false or misleading in any material respect either
now or at the time made or furnished, (d) the death, dissolution, business failure, liquidation, or
termination of existence of any maker or guarantor, (e) the limited liability company or legal
existence of any maker or guarantor is terminated or suspended, or any maker or guarantor fails

to maintain its corporate or legal existence in good standing, (f) any voluntary or involuntary bankruptcy, reorganization, insolvency, receivership, or other similar proceeding is commenced by or against any maker or guarantor, or any maker or guarantor becomes insolvent, makes an assignment for the benefit of creditors, or conveys substantially all of its assets, (g) any creditor tries to take any of Borrowers' property on or in which Lender has a lien or security interest, (h) the occurrence of a default under any other note, obligation or indebtedness to Lender of any obligor on this Note, or default in any obligation or instrument securing any such note, obligation or indebtedness, or (i) Lender in good faith believes that the prospect of timely payment or other performance by any maker or guarantor is impaired or Lender otherwise in good faith deems itself or its collateral insecure.

      Remedies. Upon default, interest shall continue to accrue and Lender may declare the entire unpaid principal balance of this Note and all accrued unpaid interest immediately due, without demand or notice of any kind, and then Borrowers shall pay that amount. The waiver by Lender of any default shall not operate as a waiver of any other default or of the same default on a future occasion. Acceptance by Lender of payment of less than the entire unpaid balance after default and acceleration of this Note shall not waive the acceleration, and Lender may proceed with its rights and remedies.

      If Lender initiates any legal proceedings or incurs any legal expense or attorney fees in exercising any of its rights or remedies upon default, whether or not there is a lawsuit, such expenses and reasonable attorneys' fees shall be added to the principal balance due and Borrowers shall be liable for the payment of same as an additional obligation under this instrument.

      Collateral. This Note is secured by a mortgage of even date herewith and a security agreement of even date herewith.

      Release. This Note is given as part of a workout, compromise and extension of a past due debt. In consideration for Lender's agreement to such workout, compromise and extension, Borrowers hereby release Lender and its agents, employees, officers, directors, attorneys, affiliates, successors and assigns of and from any and all defenses, affirmative defenses, actions, causes of action, claims, counterclaims, liabilities, damages, attorneys' fees,

expenses, costs, and demands, of any kind or nature, known or unknown, at law or in equity, which have been asserted or could have been asserted, or which have arisen, from the beginning of time through and including the date of the execution of this Note.

General. All parties to this Note, whether maker, guarantor or endorser, hereby waive presentment for payment, demand, protest, notice of protest, notice of acceleration of maturity, notice of nonpayment, notice of dishonor, and diligence in the collection of this Note, and agree that their liability for the payment hereof shall not be affected or impaired by any release, exchange, surrender, modification, substitution or change in any security that may be given for this Note or by any extension of time for the payment of all or any part of the principal and interest due hereunder. Borrowers hereby waive any right to require Lender to proceed against any collateral prior to making a claim against Borrowers for sums due under this Note. Lender may delay or forego enforcing any of its rights or remedies without losing them.

Notwithstanding any other provision of this Note to the contrary, the holder of this Note shall not charge a rate of interest greater than that which is permitted by applicable law. The interest rate provided for in this Note shall apply, to the extent allowed by applicable law, to any indebtedness due following the entry of a judgment relating to the collection of this Note.

Upon any change in the terms of this Note, unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties also agree that Lender may modify this Note without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This Note is binding upon Borrowers and their heirs, personal representatives, successors and assigns and shall inure to the benefit of and be enforceable by Lender and its successors, transferees and assigns. This Note shall be deemed to have been made under and shall be governed by the laws of the State of North Carolina.

IN WITNESS WHEREOF, the corporate maker has caused this instrument to be executed in its corporate name and has adopted as its seal the typewritten word "SEAL" set forth beside its name, intending this to be a sealed instrument, effective as of the date first above written. Each individual maker has hereunto set his/her hand and adopted as his/her seal the

3

typewritten word "SEAL" set forth beside his/her name, intending this to be a sealed instrument, effective as of the date first above written.

STRICKLAND FARMS OF GREEN SEA, INC.

By: _____ (SEAL)
Terry Wayne Strickland, President

_____ (SEAL)
TERRY WAYNE STRICKLAND

_____ (SEAL)
CHARLENE ELLIOTT STRICKLAND

ND: 4838-4608-9253, v. 1

4

# EXHIBIT C

NOTE MODIFICATION AGREEMENT

THIS NOTE MODIFICATION AGREEMENT ("Agreement"), made and entered into effective this the 9th day of February, 2016, by and between HARVEY FERTILIZER AND GAS CO. ("Harvey's"); and STRICKLAND FARMS OF GREEN SEA, INC., TERRY WAYNE STRICKLAND and CHARLENE ELLIOTT STRICKLAND (collectively, "Borrowers");

R E C I T A L S :

WHEREAS, Borrowers are jointly and severally indebted to Harvey's pursuant to a Promissory Note dated July 1, 2015 in the original principal amount of Three Hundred Seventy-Seven Thousand Two Hundred Forty-Seven and 93/100 Dollars ($377,247.93) executed and delivered by Borrower to Harvey's (the "Note");

WHEREAS, as security for the Note, Borrowers executed and delivered to Harvey's a Security Agreement dated July 1, 2015 covering the property described therein;

WHEREAS, the Note matured on December 31, 2015 and is due and payable in full; and

WHEREAS, Borrowers desire for Harvey's to modify and extend the maturity of the Note from December 31, 2015 to December 31, 2016, and Harvey's is willing to do so in accordance with the terms and conditions set forth below.

NOW, THEREFORE, for and in consideration of the mutual promises and covenants contained herein, the receipt and legal sufficiency of which hereby are acknowledged, the parties hereto hereby agree as follows:

1.      Recitals.  Each of the statements, representations and other information contained in the above recitals is expressly incorporated herein and is represented by Borrowers to be true and correct.  Borrowers acknowledge and agree that Harvey's is relying on the truth and accuracy of the foregoing recitals and the acknowledgements below in entering into this Agreement.

2.      Current Payoff.  As of December 31, 2015, there is due and owing on the Note the sum of Four Hundred Three Thousand Seven Hundred Ninety-Nine and 44/100 Dollars ($403,799.44), of which sum Three Hundred Sixty-Nine Thousand Five Hundred Seventy-Eight and 60/100 Dollars ($369,578.60) represents the outstanding principal balance, and Thirty-Four Thousand Two Hundred Twenty and 84/100 Dollars ($34,220.84) represents accrued but unpaid

interest. Harvey's attorneys' fees and expenses incurred in connection with the preparation, negotiation and recordation, as applicable, of this Agreement and the Mortgage (defined below), and in connection with title searches, shall be added to the outstanding principal balance of the Note and be secured by the Security Agreement and the Mortgage. Interest shall continue to accrue from and after December 31, 2015, as provided for in the Note.

      3.   <u>Modification of Payment Terms and Maturity</u>. Principal and interest under the Note shall be paid in full by way of one (1) single payment due at maturity, which maturity hereby is extended from December 31, 2015 to December 31, 2016.

      4.   <u>Collateral</u>. All collateral securing the Note shall continue to secure the Note. As additional security for the Note, Borrowers shall execute and deliver, and/or cause to be executed and delivered, to Harvey's a mortgage, dated of even date herewith, in form and substance acceptable to Harvey's in its sole discretion (the "<u>Mortgage</u>").

      5.   <u>Ratification</u>. Borrowers hereby (a) ratify and confirm the Note and the Security Agreement, (b) confirm that Harvey's currently holds all right, title and interest in, to and under the Note and the Security Agreement, (c) agree that nothing contained in this Agreement is intended to or shall impair the validity of the indebtedness evidenced by the Note, and (d) confirm the truth and effectiveness of all representations, warranties and covenants contained in the Note and the Security Agreement. Unless specifically modified by the terms of this Agreement, the parties hereto hereby ratify and confirm each and every term of the Note and the Security Agreement.

      6.   <u>Continuing Effect</u>. Except as expressly modified herein, the terms of the Note shall continue in full force and effect. This Agreement is not a novation; rather, it constitutes a modification of the terms of existing contractual relationships between the parties and is not intended as a cancellation of the original debts or the creation of new debt.

      7.   <u>Release</u>. Borrowers hereby release, acquit and forever discharge Harvey's and Harvey's subsidiaries, affiliates, officers, directors, agents, employees, servants, attorneys and representatives from any and all claims, demands, debts, actions, causes of action, suits, contracts, agreements, obligations, accounts, defenses, offsets against the Note, and liabilities of any kind or character whatsoever, known or unknown, which any of Borrowers ever had or now has.

8.    Governing Law; Jurisdiction; Venue. The Note and this Agreement shall be governed by the laws of the State of North Carolina. Any legal action or proceeding arising out of or relating to the Note and/or this Agreement may be instituted and prosecuted in the courts of the State of North Carolina, County of Pitt; and the undersigned hereby expressly consent and submit to the jurisdiction and venue of such courts for the purposes thereof and expressly waive any claim or defense relating to such jurisdiction and venue.

IN WITNESS WHEREOF, each of the undersigned has signed this Agreement under seal, adopting as its/his/her seal the typewritten word "SEAL" appearing beside its/his/her name, intending this to be a sealed instrument, as of the date first above written.

BORROWERS:

STRICKLAND FARMS OF GREEN
SEA, INC.                                              (SEAL)

By: _____
Terry Wayne Strickland, President

_____         (SEAL)
PERRY WAYNE STRICKLAND

_____         (SEAL)
CHARLENE ELLIOTT STRICKLAND

HARVEY'S:

HARVEY FERTILIZER AND GAS CO.

By: _____         (SEAL)
Name:  George M. Pollard
Title:  Regional Credit Manager

3

# EXHIBIT D

THIS INSTRUMENT WAS PREPARED BY:

Susan E. Driscoll, Esq.
Driscoll Sheedy, P.A.
11520 N. Community House Road, Ste. 200
Charlotte, NC 28277

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

J. Michael Fields, Esq.
Ward and Smith, P.A.
PO Box 8088
Greenville, NC 27835-8088

> **Instrument#: 2016000082860, MTG BK:
> 5791 PG: 3342 DOCTYPE: 002 07/15/2016
> at 01:17:31 PM, 1 OF 27
> MARION D. FOXWORTH III, HORRY
> COUNTY, SC REGISTRAR OF DEEDS**

Space above this line for Recorder's Use

## MORTGAGE, ASSIGNMENT OF RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING

*THE COLLATERAL SUBJECT TO THIS MORTGAGE, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING INCLUDES GOODS THAT ARE OR ARE TO BECOME FIXTURES.*

*THIS MORTGAGE, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING IS TO BE FILED IN THE REAL PROPERTY RECORDS FOR HORRY COUNTY, AND SHALL SERVE AS A FIXTURE FILING FINANCING STATEMENT.*

This Mortgage dated as of February 9, 2016, is given by **Strickland Farms of Green Sea, Inc.; Terry Wayne Strickland; Charlene Elliott Strickland; Terry Wayne Strickland Living Trust;** and **Charlene Elliott Strickland Living Trust,** as mortgagors (collectively, "Mortgagor"), whose address is 6470 Strickland Road, Green Sea, SC  29545-4338, to **Harvey Fertilizer and Gas Co.,** a North Carolina corporation, as mortgagee ("Mortgagee"), whose address is Attn:  Mike Pollard, PO Box 189, Kinston, NC  28502.

1. GRANT.

      1.1 The Property.  To secure the prompt and timely repayment of the Secured Obligation, defined in Section 2 below, and in order to charge the properties, interests and rights hereunder described with such payment, performance and observance, and for other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, Mortgagor does hereby grant, bargain, sell, remise, release, convey, assign, transfer, mortgage, hypothecate, pledge, deliver, set over, warrant and confirm unto Mortgagee, its successors and assigns forever, all estate, right, title and interest which Mortgagor now has or may later acquire in the following property (all or any part of such property, or any interest in all or any part of it, together with the Personalty (as hereinafter defined), being collectively referred to as the "Property"):

           (a)  The real property located in the County of Horry, State of South Carolina, as described in **Exhibit A** hereto (the "Land");

           (b)  All buildings, structures, improvements, fixtures and appurtenances now or hereafter placed on the Land, and all apparatus and equipment now or hereafter attached in any manner to the Land or any building on the Land, including all pumping plants, engines, pipes, ditches and flumes, and also all gas, electric, cooking, heating, cooling, air conditioning, lighting, refrigeration and plumbing fixtures and equipment (collectively, the "Improvements");

(c)  All easements and rights of way appurtenant to the Land; all crops growing or to be grown on the Land (including all such crops following severance from the Land); all standing timber upon the Land (including all such timber following severance from the Land); all development rights or credits and air rights; all water and water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant to the Land) and shares of stock pertaining to such water or water rights, ownership of which affect the Land; all minerals (whether or not extracted), oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Land;

(d)  All existing and future leases, subleases, sub-tenancies, licenses, occupancy agreements and concessions relating to the use and enjoyment of all or any part of the Land or the Improvements, and any and all guaranties and other agreements relating to or made in connection with any of the foregoing;

(e)  All proceeds, including all claims to and demands for them, of the voluntary or involuntary conversion of any of the Land, Improvements, or the other property described above into cash or liquidated claims, including proceeds of all present and future fire, hazard or casualty insurance policies, whether or not such policies are required by Mortgagee, and all condemnation awards or payments now or later to be made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding or loss of any nature to the Land or Improvements, and all causes of action and their proceeds for any breach of warranty, misrepresentation, damage or injury to, or defect in, the Land, Improvements, or the other property described above or any part of them; and

(f)  All proceeds of, additions and accretions to, substitutions and replacements for, and changes in any of the property described above.

1.2  Fixture Filing.  This Mortgage constitutes a financing statement filed as a fixture filing under the South Carolina Uniform Commercial Code, as amended or recodified from time to time, covering any Property which now is or later may become a fixture attached to the Land or any building located thereon.

## 2.  THE SECURED OBLIGATION.

2.1  Purpose of Securing.  Mortgagor makes the grant, conveyance, transfer and assignment set forth in Section 1, makes the irrevocable and absolute assignment set forth in Section 3, and grants the security interest set forth in Section 4, all for the purpose of securing the following obligation (the "Secured Obligation"):

(a)  (i) that certain Promissory Note dated July 1, 2015 in the amount of $377,247.93, executed by Strickland Farms of Green Sea, Inc., Terry Wayne Strickland, and Charlene Elliott Strickland in favor of Mortgagee, as the same from time to time may be modified, amended, extended, renewed, substituted and/or replaced; and (ii) any and all other debts, liabilities and obligations of every type and description which Strickland Farms of Green Sea, Inc., Terry Wayne Strickland, and/or Charlene Elliott Strickland may now or at any time hereafter owe to Mortgagee, whether or not reasonably contemplated by the parties hereto as of the date hereof, and any and all promissory notes, credit applications, credit agreements, sales tickets, invoices, statements and/or other documents heretofore or hereafter executed by Strickland Farms of Green Sea, Inc., Terry Wayne Strickland, and/or Charlene Elliott Strickland or generated by Mortgagee in connection with any of the foregoing ((i) and (ii) collectively, the "Note"); and

(b)  Payment and performance of all obligations of Mortgagor under this Mortgage.

2.2  Terms of Secured Obligation.  All persons who may have or acquire an interest in all or any part of the Property will be considered to have notice of, and will be bound by, the terms of the Note described in Section 2.1(a), and each other agreement or instrument made or entered in connection with the Secured Obligation. These terms include any provisions in the Note which permit borrowing, repayment and re-borrowing, or which provide that the interest rate on the Secured Obligation may vary from time to time.

## 3. ASSIGNMENT OF RENTS.

3.1 <u>Assignment</u>. Mortgagor hereby irrevocably, presently and conditionally assigns to Mortgagee as collateral for the Secured Obligation all rents, royalties, issues, profits, revenue, income and proceeds of the Property, whether now due, past due or to become due, including all prepaid rents and security deposits (collectively, the "Rents"), and confers upon Mortgagee the right to collect such Rents with or without taking possession of the Property. In the event that anyone establishes and exercises any right to develop, bore for or mine for any water, gas, oil or mineral on or under the surface of the Property, any sums that may become due and payable to Mortgagor as bonus or royalty payments, and any damages or other compensation payable to Mortgagor in connection with the exercise of any such rights, shall also be considered Rents assigned under this Section.

3.2 <u>Grant of License</u>. Notwithstanding the provisions of Section 3.1, Mortgagee hereby confers upon Mortgagor a license ("License") to collect and retain the Rents as they become due and payable, so long as no Event of Default as defined in Section 6.2 shall exist and be continuing. If an Event of Default has occurred and is continuing, Mortgagee shall have the right, which it may choose to exercise in its sole discretion, to terminate this License without notice to or demand upon Mortgagor, and without regard to the adequacy of the security for the Secured Obligation. Mortgagee shall then have the right to send notices to any and all tenants of the Property advising them of this assignment of rents and directing all Rents be paid directly to Mortgagee or Mortgagee's agent.

## 4. GRANT OF SECURITY INTEREST.

4.1 <u>Grant of Security Interest</u>. Mortgagor grants to Mortgagee a security interest in, and pledges and assigns to Mortgagee, all of Mortgagor's right, title and interest now or hereafter acquired in and to all of the following described personal property (collectively, the "Personalty"):

(a) All tangible personal property of every kind and description, whether stored on the Land or elsewhere, including, without limitation, all goods, materials, supplies, tools, books, records, chattels, furniture, fixtures, equipment, and machinery, and which in all cases is (i) used or useful or acquired in connection with any construction or mining undertaken on the Land or the maintenance of the Land and the Improvements, or (ii) affixed or installed, or to be affixed or installed, in any manner on the Land or the Improvements, including with respect to any mining operation;

(b) All standing timber upon the Land (including all such timber following severance from the Land); all water and water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant to the Land) and shares of stock pertaining to such water or water rights, ownership of which affect the Land; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Land (including after severance or removal from the Land); and all architectural and engineering plans, specifications and drawings, and as-built drawings which arise from or relate to the Land or the Improvements;

(c) All general intangibles and rights relating to the Property, including, without limitation, all permits, licenses and claims to or demands for the voluntary or involuntary conversion of any of the Land, Improvements, or other Property into cash or liquidated claims, proceeds of all present and future fire, hazard or casualty insurance policies, whether or not such policies are required by Mortgagee, and all condemnation awards or payments now or later to be made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding, and all causes of action and their proceeds for any breach of warranty, misrepresentation, damage or injury to, or defect in, the Land, Improvements, or other Property or any part of them;

(d) All deposit accounts from which Mortgagor may from time to time authorize Mortgagee to debit payments due on the Secured Obligation; and

(e) All substitutions, replacements, additions, accessions and proceeds for or to any of the foregoing, and all books, records and files relating to any of the foregoing, including, without

limitation, computer readable memory and data and any computer software or hardware reasonably necessary to access and process such memory and data.

## 5. RIGHTS AND DUTIES OF THE PARTIES.

5.1 <u>Representations and Warranties</u>. Mortgagor represents and warrants that Mortgagor lawfully possesses and holds fee simple title to all of the Land and the Improvements.

5.2 <u>Taxes, Assessments, Liens and Encumbrances</u>. Mortgagor shall pay prior to delinquency all taxes, levies, charges and assessments, including assessments on appurtenant water stock, imposed by any public or quasi-public authority or utility company which are (or if not paid, may become) a lien on all or part of the Property or any interest in it. Mortgagor pay when due each obligation secured by or reducible to a lien, charge or encumbrance which now or hereafter encumbers or appears to encumber all or part of the Property, whether the lien, charge or encumbrance is or would be senior or subordinate to this Mortgage. Mortgagor shall timely provide Mortgagee with evidence of such payments.

5.3 <u>Damages and Insurance and Condemnation Proceeds</u>.

(a) Mortgagor hereby absolutely and irrevocably assigns to Mortgagee, and authorizes the payor to pay to Mortgagee, the following claims, causes of action, awards, payments and rights to payment (collectively, the "Claims"):

(i) all awards of damages and all other compensation payable directly or indirectly because of a condemnation, proposed condemnation or taking for public or private use which affects all or part of the Property or any interest in it;

(ii) all other awards, claims and causes of action, arising out of any breach of warranty or misrepresentation affecting all or any part of the Property, or for damage or injury to, or defect in, or decrease in value of all or part of the Property or any interest in it;

(iii) all proceeds of any insurance policies payable because of loss sustained to all or part of the Property, whether or not such insurance policies are required by Mortgagee; and

(iv) all interest which may accrue on any of the foregoing.

(b) Mortgagor shall immediately notify Mortgagee in writing if:

(i) any damage occurs or any injury or loss is sustained to all or part of the Property, or any action or proceeding relating to any such damage, injury or loss is commenced; or

(ii) any offer is made, or any action or proceeding is commenced, which relates to any actual or proposed condemnation or taking of all or part of the Property.

If Mortgagee chooses to do so, it may in its own name appear in or prosecute any action or proceeding to enforce any cause of action based on breach of warranty or misrepresentation, or for damage or injury to, defect in, or decrease in value of all or part of the Property, and after the occurrence and during the continuation of an Event of Default it may make any compromise or settlement of the action or proceeding. Mortgagee, if it so chooses, may participate in any action or proceeding relating to condemnation or taking of all or part of the Property, and may join Mortgagor in adjusting any loss covered by insurance.

(c) All proceeds of the Claims assigned to Mortgagee under this Section shall be paid to Mortgagee. In each instance, Mortgagee shall apply those proceeds first toward reimbursement of all of Mortgagee's costs and expenses of recovering the proceeds, including reasonable attorneys' fees of not less than 15% of the entire amount due and owing. Mortgagor further authorizes Mortgagee, at Mortgagee's option and in Mortgagee's sole discretion, and regardless of whether there is any impairment of the Property, (i) to apply the balance of such proceeds, or any portion of them, to pay or prepay some or all of

the Secured Obligation in such order or proportion as Mortgagee may determine, or (ii) to hold the balance of such proceeds, or any portion of them, in an interest-bearing account to be used for the cost of reconstruction, repair or alteration of the Property, or (iii) to release the balance of such proceeds, or any portion of them, to Mortgagor. If any proceeds are released to Mortgagor, Mortgagee shall not be obligated to see to, approve or supervise the proper application of such proceeds. If the proceeds are held by Mortgagee to be used to reimburse Mortgagor for the costs of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition, or such other condition as Mortgagee may approve in writing. Mortgagee may, at Mortgagee's option, condition disbursement of the proceeds on Mortgagee's approval of such plans and specifications prepared by an architect satisfactory to Mortgagee, contractor's cost estimates, architect's certificates, waivers of liens, sworn statements of mechanics and materialmen, and such other evidence of costs, percentage of completion of construction, application of payments, and satisfaction of liens as Mortgagee may reasonably require.

5.4    Insurance.  Mortgagor shall provide and maintain in force at all times all risk property damage insurance (including, without limitation, windstorm and hurricane coverages as applicable) on the Property and such other type of insurance on the Property as may be required by Mortgagee in its reasonable judgment. At Mortgagee's request, Mortgagor shall provide Mortgagee with a counterpart original of any policy, together with a certificate of insurance setting forth the coverage, the limits of liability, the carrier, the policy number and the expiration date. Each such policy of insurance shall be in an amount, for a term, and in form and content satisfactory to Mortgagee, shall be written only by companies approved by Mortgagee, and shall name Mortgagee as mortgagee, loss payee and/or additional insured, as required by Mortgagee. In addition, each policy of hazard insurance shall include a loss payable endorsement in favor of Mortgagee.

5.5    Maintenance and Preservation of Property.

(a)    Mortgagor shall keep the Property in good condition and repair and shall not commit or allow waste of the Property. Except with Mortgagee's express prior written consent in each instance, Mortgagor shall not (1) remove or demolish the Property or any part of it, or (2) alter, restore or add to the Property if any such action impairs the value thereof, or (3) initiate or allow any change in any zoning or other land use classification which affects the Property or any part of it or the ability or legality of a mining operation thereon.

(b)    If all or part of the Property becomes damaged or destroyed, Mortgagor shall promptly, in a good and workmanlike manner in accordance with sound building practices, restore, repair, replace and rebuild the Property as nearly as possible to its value, condition and character immediately prior to the damage, loss or destruction, regardless of whether or not Mortgagee agrees to disburse insurance proceeds or other sums to pay costs of the work of repair or reconstruction under Section 5.3.

(c)    Mortgagor shall not commit or allow any act upon or use of the Property which would violate any applicable law or order of any governmental authority, whether now existing or later to be enacted and whether foreseen or unforeseen, or any public or private covenant, condition, restriction or equitable servitude affecting the Property. Mortgagor shall not bring or keep any article on the Property or cause or allow any condition to exist on it, if that could invalidate or would be prohibited by any insurance coverage required to be maintained by Mortgagor on the Property or any part of it under this Mortgage.

(d)    Mortgagor shall perform all other acts which from the character or use of the Property may be reasonably necessary to maintain and preserve its value.

5.6    Releases, Extensions, Modifications and Additional Security. Without affecting the personal liability of any person, including Mortgagor, for the payment of the Secured Obligation or the lien of this Mortgage on the remainder of the Property for the unpaid amount of the Secured Obligation, Mortgagee may from time to time and without notice:

(a)    release any person liable for payment of any Secured Obligation;

(b) extend the time for payment, or otherwise alter the terms of payment, of any Secured Obligation;

(c) accept additional real or personal property of any kind as security for any Secured Obligation, whether evidenced by deeds of trust, mortgages, security agreements or any other instruments of security;

(d) alter, substitute or release any property securing the Secured Obligation;

(e) consent to the making of any plat or map of the Property or any part of it;

(f) join in granting any easement or creating any restriction affecting the Property;

(g) join in any subordination or other agreement affecting this Mortgage or the lien of it; or

(h) release the Property or any part of it from the lien of this Mortgage.

5.7 Release of Lien; Substitution of Collateral. When all of the Secured Obligation has been paid in full and no further commitment by Mortgagee to extend credit continues, Mortgagee shall release the Property, or so much of it as is then held under this Mortgage, in full from the lien of this Mortgage, without the requirement of substitute collateral.

5.8 Compensation and Reimbursement of Costs and Expenses.

(a) Mortgagor agrees to pay fees in the maximum amounts legally permitted, or reasonable fees as may be charged by Mortgagee when the law provides no maximum limit, for any services that Mortgagee may render in connection with this Mortgage, including Mortgagee's providing a statement of the Secured Obligation. Mortgagor shall also pay or reimburse all of Mortgagee's reasonable costs and expenses which may be incurred in rendering any such services.

(b) Mortgagor further agrees to pay or reimburse Mortgagee for all costs, expenses and other advances which may be incurred or made by Mortgagee to protect or preserve the Property or to enforce any terms of this Mortgage, including the exercise of any rights or remedies afforded to Mortgagee under Section 6.3, whether any lawsuit is filed or not, or in defending any action or proceeding arising under or relating to this Mortgage, including attorneys' fees not less than 15% of the entire amount then due, and other legal costs, costs of any sale of the Property and any cost of evidence of title or appraisal(s).

(c) Mortgagor shall pay all obligations arising under this Section promptly upon demand by Mortgagee (but not later than five (5) business days after demand therefor). Each such obligation shall be added to, and considered to be part of, the principal of the Secured Obligation, and shall bear interest from the date the obligation arises at the lesser of (i) the rate provided in any instrument or agreement evidencing the Secured Obligation and (ii) the highest rate permitted by law. If more than one rate of interest is applicable to the Secured Obligation, the highest rate shall be used for purposes hereof.

5.9 Exculpation and Indemnification.

(a) Mortgagee shall not be directly or indirectly liable to Mortgagor or any other person as a consequence of any of the following:

(i) Mortgagee's exercise of or failure to exercise any rights, remedies or powers granted to it in this Mortgage;

(ii) Mortgagee's failure or refusal to perform or discharge any obligation or liability of Mortgagor under any agreement related to the Property or under this Mortgage;

(iii)  Mortgagee's failure to produce Rents from the Property or to perform any of the obligations of the lessor under any lease covering the Property;

(iv)  any waste committed by lessees of the Property or any other parties, or any dangerous or defective condition of the Property; or

(v)  any loss sustained by Mortgagor or any third party resulting from any act or omission of Mortgagee in operating or managing the Property upon exercise of the rights or remedies afforded Mortgagee under Section 6.3.

Mortgagor hereby expressly waives and releases all liability of the types described above, and agrees that no such liability shall be asserted against or imposed upon Mortgagee.

(b)  Mortgagor agrees to indemnify Mortgagee against and hold Mortgagee harmless from all losses, damages, liabilities, claims, causes of action, judgments, court costs, attorneys' fees and other legal expenses, cost of evidence of title, cost of evidence of value, and other costs and expenses which Mortgagee may suffer or incur in performing any act required or permitted by this Mortgage or by law or because of any failure of Mortgagor to perform any of its obligations.  This agreement by Mortgagor to indemnify Mortgagee shall survive the release and cancellation of any or all of the Secured Obligation and the full or partial release of this Mortgage.

5.10  <u>Defense and Notice of Claims and Actions</u>.  At Mortgagor's sole expense, Mortgagor shall protect, preserve and defend the Property and title to and right of possession of the Property, and the security of this Mortgage and the rights and powers of Mortgagee created under it, against all adverse claims.  Mortgagor shall give Mortgagee prompt notice in writing if any claim is asserted which does or could affect any of these matters, or if any action or proceeding is commenced which alleges or relates to any such claim.

5.11  <u>Representation and Warranty Regarding Hazardous Substances</u>.  Before signing this Mortgage, Mortgagor researched and inquired into the previous uses and ownership of the Property.  Based on that due diligence, Mortgagor represents and warrants that to the best of their knowledge, no hazardous substance has been disposed of or released or otherwise exists in, on, under or onto the Property.  Mortgagor further represents and warrants that Mortgagor has complied, and will comply and cause all occupants of the Property to comply, with all current and future laws, regulations and ordinances or other requirements of any governmental authority relating to or imposing liability or standards of conduct concerning protection of health or the environment or hazardous substances ("Environmental Laws").  Mortgagor shall promptly, at Mortgagor's sole cost and expense, take all reasonable actions with respect to any hazardous substances or other environmental condition at, on, or under the Property necessary to (i) comply with all applicable Environmental Laws; (ii) allow continued use, occupation or operation of the Property; or (iii) maintain the fair market value of the Property.  Mortgagor acknowledges that hazardous substances may permanently and materially impair the value and use of the Property.  "Hazardous substance" means any substance, material or waste that is or becomes designated or regulated as "toxic," "hazardous," "pollutant," or "contaminant" or a similar designation or regulation under any current or future federal, state or local law (whether under common law, statute, regulation or otherwise) or judicial or administrative interpretation of such, including without limitation petroleum or natural gas.

5.12  <u>Site Visits, Observation and Testing</u>.  Mortgagee and its agents and representatives shall have the right at any reasonable time, after giving reasonable notice to Mortgagor, to enter and visit the Property for the purposes of performing appraisals, observing the Property, taking and removing environmental samples, and conducting tests on any part of the Property.  Mortgagor shall reimburse Mortgagee on demand for the costs of any such environmental investigation and testing.  Mortgagee will make reasonable efforts during any site visit, observation or testing conducted pursuant this Section to avoid interfering with Mortgagor's use of the Property.  Mortgagee is under no duty, however, to visit or observe the Property or to conduct tests, and any such acts by Mortgagee will be solely for the purposes of protecting Mortgagee's security and preserving Mortgagee's rights under this Mortgage.  No site visit, observation or testing or any report or findings made as a result thereof ("Environmental Report") (i) will result in a waiver of any default of Mortgagor; (ii) impose any liability on Mortgagee; or (iii) be a representation or warranty of any kind regarding the Property (including its condition or value or compliance with any laws) or the Environmental Report (including its accuracy or completeness).  In the

event Mortgagee has a duty or obligation under applicable laws, regulations or other requirements to disclose an Environmental Report to Mortgagor or any other party, Mortgagor authorizes Mortgagee to make such a disclosure. Mortgagee may also disclose an Environmental Report to any regulatory authority, and to any other parties as necessary or appropriate in Mortgagee's judgment. Mortgagor further understands and agrees that any Environmental Report or other information regarding a site visit, observation or testing that is disclosed to Mortgagor by Mortgagee or its agents and representatives is to be evaluated (including any reporting or other disclosure obligations of Mortgagor) by Mortgagor without advice or assistance from Mortgagee.

6. ACCELERATING TRANSFERS, DEFAULT AND REMEDIES.

    6.1 Accelerating Transfers

        (a) "Accelerating Transfer" means any sale, contract to sell, conveyance, encumbrance, or other transfer, whether voluntary, involuntary, by operation of law or otherwise, of all or any material part of the Property or any interest in it, including any transfer or exercise of any right to drill for or to extract any water (other than for Mortgagor's own use), oil, gas or other hydrocarbon substances or any mineral of any kind on or under the surface of the Property.

        (b) Mortgagor agrees that Mortgagor shall not make or permit any Accelerating Transfer, unless the transfer is preceded by Mortgagee's express written consent to the particular transaction and transferee. Mortgagee may withhold such consent in its sole discretion. If any Accelerating Transfer occurs, Mortgagee in its sole discretion may declare all of the Secured Obligation to be immediately due and payable, and Mortgagee may invoke any rights and remedies provided by Section 6.3 of this Mortgage.

    6.2 Events of Default. The occurrence of any one or more of the following events, at the option of Mortgagee, shall constitute an event of default ("Event of Default") under this Mortgage:

        (a) Mortgagor fails to make any payment due under the Note or fails to perform any other obligation which arises under the Note (subject to any applicable grace or cure periods expressly set forth therein);

        (b) Mortgagor fails to make any payment which arises under this Mortgage within ten (10) days of the date when due or fails to perform any other obligation which arises under this Mortgage (subject to any applicable grace or cure periods expressly set forth herein);

        (c) Mortgagor makes or permits the occurrence of an Accelerating Transfer in violation of Section 6.1;

        (d) Any representation or warranty made in connection with this Mortgage or the Note proves to have been false or misleading in any material respect when made; or

        (e) Any default occurs under any other mortgage on all or any part of the Property, or under any obligation secured by such mortgage, whether such mortgage is prior to or subordinate to this Mortgage (subject to any applicable grace or cure periods expressly set forth in any such mortgage).

    6.3 Remedies. At any time after the occurrence of an Event of Default, Mortgagee shall be entitled to invoke any and all of the rights and remedies described below, as well as any other rights and remedies authorized by law. All of such rights and remedies shall be cumulative, and the exercise of any one or more of them shall not constitute an election of remedies.

        (a) Mortgagee may declare any or all of the Secured Obligation to be due and payable immediately.

        (b) Mortgagee may apply to any court of competent jurisdiction for, and obtain appointment of, a receiver for the Property.

(c) Mortgagee, by court-appointed receiver, may enter, take possession of, manage and operate all or any part of the Property, and in its own name or in the name of Mortgagor sue for or otherwise collect any and all Rents, including those that are past due, and may also do any and all other things in connection with those actions that Mortgagee may in its sole discretion consider necessary and appropriate to protect the security of this Mortgage. Such other things may include: entering into, enforcing, modifying, or canceling leases on such terms and conditions as Mortgagee may consider proper; obtaining and evicting tenants; fixing or modifying Rents; completing any unfinished construction; contracting for and making repairs and alterations; performing such acts of cultivation or irrigation as necessary to conserve the value of the Property; and preparing for harvest, harvesting and selling any crops that may be growing on the property. Mortgagor hereby irrevocably constitutes and appoints Mortgagee as its attorney-in-fact to perform such acts and execute such documents as Mortgagee in its sole discretion may consider appropriate in connection with taking these measures, including endorsement of Mortgagor's name on any instruments. Mortgagor agrees to deliver to Mortgagee all books and records pertaining to the Property, including computer-readable memory and any computer hardware or software necessary to access or process such memory, as may reasonably be requested by Mortgagee in order to enable Mortgagee to exercise its rights under this Section.

(d) Mortgagee may cure any breach or default of Mortgagor, and if it chooses to do so in connection with any such cure, Mortgagee may also enter the Property and/or do any and all other things which it may in its sole discretion consider necessary and appropriate to protect the security of this Mortgage. Such other things may include: appearing in and/or defending any action or proceeding which purports to affect the security of, or the rights or powers of Mortgagee under, this Mortgage; paying, purchasing, contesting or compromising any encumbrance, charge, lien or claim of lien which in Mortgagee's sole judgment is or may be senior in priority to this Mortgage, such judgment of Mortgagee to be conclusive as among the parties to this Mortgage; obtaining insurance and/or paying any premiums or charges for insurance required to be carried under this Mortgage; otherwise caring for and protecting any and all of the Property; and/or employing counsel, accountants, contractors and other appropriate persons to assist Mortgagee. Mortgagee may take any of the actions permitted hereunder either with or without giving notice to any person.

(e) Mortgagee may bring an action in any court of competent jurisdiction to foreclose this instrument or to obtain specific enforcement of any of the covenants or agreements of this Mortgage.

(f) Mortgagee may exercise the remedies contained in the Note or in any other instrument or agreement evidencing any of the Secured Obligation.

(g) Mortgagee may proceed under the Uniform Commercial Code as to all or any part of the Personalty, and in conjunction therewith may exercise all of the rights, remedies and powers of a secured creditor under the Uniform Commercial Code. When all time periods then legally mandated have expired, and after such notice of sale as may then be legally required has been given, Mortgagee may sell the Personalty at a public sale to be held at the time and place specified in the notice of sale. It shall be deemed commercially reasonable for the Mortgagee to dispose of the Personalty without giving any warranties as to the Personalty and specifically disclaiming all disposition warranties.

6.4 Application of Sale Proceeds and Rents.

(a) Mortgagee shall apply the proceeds of any sale of the Property to which Mortgagee is legally entitled in the following manner: first, to pay the portion of the Secured Obligation attributable to the costs, fees and expenses of the sale, including costs of evidence of title in connection with the sale; and, second, to pay all other Secured Obligation in any order and proportions as Mortgagee in its sole discretion may choose. The remainder, if any, shall be remitted to the person or persons entitled thereto.

(b) Mortgagee shall apply any and all Rents collected by it, and any and all sums other than proceeds of any sale of the Property which Mortgagee may receive or collect under Section 6.3, in the following manner: first, to pay the portion of the Secured Obligation attributable to the costs and expenses of operation and collection that may be incurred by Mortgagee or any receiver; and, second, to pay all other

Secured Obligation in any order and proportions as Mortgagee in its sole discretion may choose. The remainder, if any, shall be remitted to the person or persons entitled thereto. Mortgagee shall have no liability for any funds which it does not actually receive.

7. <u>MISCELLANEOUS PROVISIONS</u>

    7.1 <u>No Waiver or Cure</u>.

        (a) Each waiver by Mortgagee must be in writing, and no waiver shall be construed as a continuing waiver. No waiver shall be implied from any delay or failure by Mortgagee to take action on account of any default of Mortgagor. Consent by Mortgagee to any act or omission by Mortgagor shall not be construed as consent to any other or subsequent act or omission or to waive the requirement for Mortgagee's consent to be obtained in any future or other instance.

        (b) If any of the events described below occurs, that event alone shall not cure or waive any breach, Event of Default or notice of default under this Mortgage or invalidate any act performed pursuant to any such default or notice; or nullify the effect of any notice of default or sale (unless the entire Secured Obligation then due has been paid and performed and all of the obligations that are secured hereby have been terminated); or impair the security of this Mortgage; or prejudice Mortgagee or any receiver in the exercise of any right or remedy afforded any of them under this Mortgage; or be construed as an affirmation by Mortgagee of any tenancy, lease or option, or a subordination of the lien of this Mortgage:

        (i) Mortgagee, its agent or a receiver takes possession of all or any part of the Property;

        (ii) Mortgagee collects and applies Rents, either with or without taking possession of all or any part of the Property;

        (iii) Mortgagee receives and applies to any Secured Obligation proceeds of any Property, including any proceeds of insurance policies, condemnation awards, or other claims, property or rights assigned to Mortgagee under this Mortgage;

        (iv) Mortgagee makes a site visit, observes the Property and/or conducts tests thereon;

        (v) Mortgagee receives any sums under this Mortgage or any proceeds of any collateral held for any of the Secured Obligation, and applies them to one or more Secured Obligation;

        (vi) Mortgagee or any receiver performs any act which it is empowered or authorized to perform under this Mortgage or invokes any right or remedy provided under this Mortgage.

    7.2 <u>Powers of Mortgagee</u>. Mortgagee may take any of the actions permitted under Sections 6.3(b) and/or 6.3(c) regardless of the adequacy of the security for the Secured Obligation, or whether any or all of the Secured Obligation has been declared to be immediately due and payable, or whether notice of default and election to sell has been given under this Mortgage.

    7.3 <u>Merger</u>. No merger shall occur as a result of Mortgagee's acquiring any other estate in or any other lien on the Property unless Mortgagee consents to a merger in writing.

    7.4 <u>Joint and Several Liability</u>. Each Mortgagor shall be jointly and severally liable for the faithful performance of all of Mortgagor's obligations under this Mortgage.

    7.5 <u>Applicable Law</u>. Mortgagor agrees that their and Mortgagee's rights and obligations under this Mortgage shall be governed by and construed and interpreted in accordance with the laws of South Carolina.

7.6  Successors in Interest.  The terms, covenants and conditions of this Mortgage shall be binding upon and inure to the benefit of the heirs, successors and assigns of the parties.  However, this Section does not waive the provisions of Section 6.1.

7.7  Dispute Resolution Provision.  MORTGAGOR HEREBY CONSENTS TO THE NONEXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT SITTING WITHIN THE STATE OF SOUTH CAROLINA FOR ANY ACTION TO WHICH MORTGAGOR AND MORTGAGEE ARE PARTIES ARISING OUT OF OR IN CONNECTION WITH THIS MORTGAGE OR THE DEBT INSTRUMENT. MORTGAGOR WAIVES TRIAL BY JURY AND WAIVES ANY OBJECTION WHICH  MORTGAGOR MAY HAVE BASED ON LACK OF JURISDICTION OR IMPROPER VENUE OR FORUM NON CONVENIENS TO THE CONDUCT OF ANY ACTION INSTITUTED HEREUNDER OR UNDER THE DEBT INSRUMENT  OR ARISING OUT OF OR IN CONNECTION WITH THIS MORTGAGE OR THE NOTE, OR ANY OTHER PROCEEDING ARISING OUT OF OR IN CONNECTION WITH THIS MORTGAGE OR THE NOTE TO WHICH MORTGAGOR IS A PARTY, INCLUDING ANY ACTIONS BASED UPON, ARISING OUT OF OR IN CONNECTION WITH ANY COURSE OF CONDUCT, COURSE OF DEALING OR STATEMENT (WHETHER ORAL OR WRITTEN) OR ACTIONS OF  MORTGAGEE OR MORTGAGOR, AND MORTGAGOR CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT. NOTHING IN THIS SECTION SHALL AFFECT THE RIGHT OF MORTGAGEE TO BRING ANY ACTION OR PROCEEDING AGAINST MORTGAGOR IN THE COURTS OF ANY OTHER JURISDICTION THAT HAS JURISDICTION OVER MORTGAGOR.

7.8  Interpretation.  Whenever the context requires, all words used in the singular will be construed to have been used in the plural, and vice versa, and each gender will include any other gender.  The captions of the sections of this Mortgage are for convenience only and do not define or limit any terms or provisions.  The word "include(s)" means "include(s), without limitation," and the word "including" means "including, but not limited to." The word "obligations" is used in its broadest and most comprehensive sense, and includes all primary, secondary, direct, indirect, fixed and contingent obligations.  It further includes all principal, interest, prepayment charges, late charges, loan fees and any other fees and charges accruing or assessed at any time, as well as all obligations to perform acts or satisfy conditions.  No listing of specific instances, items or matters in any way limits the scope or generality of any language of this Mortgage.  **Exhibit A** to this Mortgage is hereby incorporated in this Mortgage.

7.9  Waiver of Marshaling.  Mortgagor waives all rights, legal and equitable, they may now or hereafter have to require marshaling of assets or to direct the order in which any of the Property will be sold in the event of any sale under this Mortgage.  Each successor and assign of Mortgagor, including any holder of a lien subordinate to this Mortgage, by acceptance of its interest or lien agrees that it shall be bound by the above waiver, as if it had given the waiver itself.

7.10  Severability.  If any provision of this Mortgage should be held unenforceable or void, that provision shall be deemed severable from the remaining provisions and in no way affect the validity of this Mortgage except that if such provision relates to the payment of any monetary sum, then Mortgagee may, at its option, declare all Secured Obligation immediately due and payable.

7.11  Notices.  Mortgagor hereby requests that any notices provided under this Mortgage be mailed to her at the address set forth below.  That address is also the mailing address of Mortgagor as debtor under the Uniform Commercial Code.  Mortgagee's address given below is the address for Mortgagee as secured party under the Uniform Commercial Code.

| | |
|---|---|
| Addresses for Notices to Mortgagor: | 6470 Strickland Road<br>Green Sea, SC 29545-4338 |
| Address for Notices to Mortgagee: | Harvey Fertilizer and  Gas Co.<br>Attn:  Mike Pollard<br>PO Box 189<br>Kinston, NC  28502 |

7.12    **Waiver of Appraisal Rights.**  The laws of South Carolina provide that, in any real estate foreclosure proceedings a defendant against whom a personal judgment is taken or asked may within thirty days after the sale of the mortgaged property apply to the court for an order of appraisal.  The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction.  THE UNDERSIGNED HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE MORTGAGED PROPERTY.

IN WITNESS WHEREOF, this Mortgage, Assignment of Rents, Security Agreement and Fixture Filing has been duly executed, delivered and sealed by the Mortgagor as of the day and year first above written.

Witnesses:                                MORTGAGOR:

Strickland Farms of Green Sea, Inc.

By: _____(SEAL)
Name:  Terry Wayne Strickland
Its:  President


STATE OF NORTH CAROLINA
                                ACKNOWLEDGEMENT
COUNTY OF COLUMBUS

On this 13th day of July _____, 2016, before me personally appeared Terry Wayne Strickland, President of Strickland Farms of Green Sea, Inc., who provided satisfactory evidence of his/her identification to be the person whose name is subscribed to this instrument and s/he acknowledged that s/he executed the foregoing instrument by his/her signature here.

_____
Terry Wayne Strickland, President of Strickland Farms of Green Sea, Inc.

Sworn to (or affirmed) and subscribed before me this the 13th day of July _____, 2016.

_____
Signature of Notary Public

George M. Pollard
Printed name of Notary Public
Notary Public for Johnston
My Commission Expires: 9/23/2017

(NOTARIAL SEAL)

**Waiver of Appraisal Rights.** **The laws of South Carolina provide that, in any real estate foreclosure proceedings a defendant against whom a personal judgment is taken or asked may within thirty days after the sale of the mortgaged property apply to the court for an order of appraisal.  The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction.  THE UNDERSIGNED HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE MORTGAGED PROPERTY.**

Witnesses:                                                      MORTGAGOR:

_(signatures)_

_Linda Clark_                                      _Terry Wayne Strickland_      (SEAL)

STATE OF NORTH CAROLINA

                                                       ACKNOWLEDGEMENT

COUNTY OF COLUMBUS

        On this 13th day of ___July___, 2016, before me personally appeared Terry Wayne Strickland, who provided satisfactory evidence of his/her identification to be the person whose name is subscribed to this instrument and s/he acknowledged that s/he executed the foregoing instrument by his/her signature here.

_(signature)_
Terry Wayne Strickland

Sworn to (or affirmed) and subscribed before me this the 13th day of ___July___, 2016.

_(signature)_
Signature of Notary Public

_George M. Pollard_
Printed name of Notary Public
Notary Public for ___Johnston___
My Commission Expires: __9/23/2017__

(NOTARIAL SEAL)

**Waiver of Appraisal Rights**. The laws of South Carolina provide that, in any real estate foreclosure proceedings a defendant against whom a personal judgment is taken or asked may within thirty days after the sale of the mortgaged property apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. **THE UNDERSIGNED HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE MORTGAGED PROPERTY.**

Witnesses:                                                     MORTGAGOR:

_____          _____ (SEAL)
_____                    Charlene Elliott Strickland


STATE OF NORTH CAROLINA

                                                   ACKNOWLEDGEMENT

COUNTY OF COLUMBUS

        On this 13th day of July _____, 2016, before me personally appeared Charlene Elliott Strickland, who provided satisfactory evidence of his/her identification to be the person whose name is subscribed to this instrument and s/he acknowledged that s/he executed the foregoing instrument by his/her signature here.

                                        _____
                                                    Charlene Elliott Strickland

Sworn to (or affirmed) and subscribed before me this the 13th day of July _____, 2016.

_____
Signature of Notary Public

George M. Pollard
Printed name of Notary Public
Notary Public for Johnston
My Commission Expires: 9/23/2017

          (NOTARIAL SEAL)

**Waiver of Appraisal Rights.** The laws of South Carolina provide that, in any real estate foreclosure proceedings a defendant against whom a personal judgment is taken or asked may within thirty days after the sale of the mortgaged property apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. **THE UNDERSIGNED HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE MORTGAGED PROPERTY.**

Witnesses:                                          MORTGAGOR:

                                                    Terry Wayne Strickland Living Trust

                                                    By: _____ (SEAL)
                                                    Name: Terry Wayne Strickland
                                                    Its: Trustee

STATE OF NORTH CAROLINA

                                ACKNOWLEDGEMENT

COUNTY OF COLUMBUS

        On this 13th day of July_____, 2016, before me personally appeared Terry Wayne Strickland, Trustee of Terry Wayne Strickland Living Trust, who provided satisfactory evidence of his/her identification to be the person whose name is subscribed to this instrument and s/he acknowledged that s/he executed the foregoing instrument by his/her signature here.

                                                    _____
                                                    Terry Wayne Strickland, Trustee of Terry Wayne
                                                    Strickland Living Trust

Sworn to (or affirmed) and subscribed before me this the 13th day of July_____, 2016.

_____
Signature of Notary Public

George M. Pollard
Printed name of Notary Public
Notary Public for Johnston
My Commission Expires: 9/23/2017

      (NOTARIAL SEAL)

**Waiver of Appraisal Rights.** The laws of South Carolina provide that, in any real estate foreclosure proceedings a defendant against whom a personal judgment is taken or asked may within thirty days after the sale of the mortgaged property apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. **THE UNDERSIGNED HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE MORTGAGED PROPERTY.**

Witnesses:                                     MORTGAGOR:

Charlene Elliott Strickland Living Trust

By: _____ (SEAL)
Name:  Charlene Elliott Strickland
Its:  Trustee


STATE OF NORTH CAROLINA

                                    ACKNOWLEDGEMENT

COUNTY OF COLUMBUS

On this 13th day of July _____, 2016, before me personally appeared Charlene Elliott Strickland, Trustee of Charlene Elliott Strickland Living Trust, who provided satisfactory evidence of his/her identification to be the person whose name is subscribed to this instrument and s/he acknowledged that s/he executed the foregoing instrument by his/her signature here.

                    Charlene Elliott Strickland
                    Charlene Elliott Strickland, Trustee of Charlene
                    Elliott Strickland Living Trust

Sworn to (or affirmed) and subscribed before me this the 13th day of July _____, 2016.

Signature of Notary Public

George M. Pollard
Printed name of Notary Public
Notary Public for Johnston
My Commission Expires: 9/23/2017

(NOTARIAL SEAL)

## EXHIBIT A TO MORTGAGE

The real property and undivided interests in real property owned by Mortgagor in Horry County, South Carolina, described in the following deeds recorded in Horry County, South Carolina:

1) Book 3775, Page 3088, executed by Phyllis L. Elvington and Derhonda L. Bonnette, as Grantors, to Terry Wayne Strickland and Mattie C. Strickland, as Grantees, recorded November 4, 2014, and being more particularly described as follows:

ALL AND SINGULAR, all that certain tract of land in Green Sea Township, Horry County, South Carolina, containing eighty-three and six tenths (83.6), more or less, bounded and described as follows:

On the North by State Highway and Turner land; East by Strickland land; South by Turberville land and Pine Strickland land and on the West by Red Strickland land.

Reference is made to a plat of said property prepared by T.P. Hinson, Surveyor, dated January 17, 1957, recorded in Plat Book 22, at Page 95, records of Horry County, South Carolina, which plat by reference thereto is incorporated herein as a part of the foregoing description as if set forth by courses and distances shown thereon.

This being the identical property conveyed by J. D. Lovette to Phyllis L. Elvington and Derhonda L. Bonnette, after first reserving a life estate unto J.D. Lovette by deed dated October 18, 2011, recorded November 4, 2011 in Deed Book 3550 at Page 974 in the office of the ROD for Horry County, South Carolina. Be it known that J.D. Lovette is now deceased as more fully shown by that certain Death Certification recorded July 25, 2013 in Deed Book 3672 at Page 2557 in the office of the ROD for Horry County, South Carolina. TMS #: 010-00-01-040

2) Book 3731, Page 2584, executed by Horry County State Bank, as Grantor, to Terry Wayne Strickland, as Grantee, recorded May 6, 2014, and being more particularly described as follows:

PARCEL ONE (1):

All and Singular, all that certain piece, parcel or tract of land situate, lying and being in Green Sea Township, County and State aforesaid and being more particularly described as 11.79 acres, as shown on a plat of survey made by Jack F. Davis, RLS, dated September 24, 2005 and recorded October 18, 2005 in Plat Book 208 at page 141 in the Office of the ROD for Horry County. Said plat is incorporated herein by reference and made a part and parcel hereof.

The hereinabove parcel is subject to, and the grantor retains a twenty foot wide non-exclusive and appurtenant easement along the eastern margin of the canal that forms the western boundary of the hereinabove referenced tract. Said easement extends from Broadwell Road along said canal to property owned by Odell Hill. Said easement shall be used for ingress and egress to the Odell Hill tract and for maintenance for said canal.

PARCEL TWO (2):

All and Singular, all that certain piece, parcel or lot of land lying and being in Green Sea Township, County and State aforesaid, and known as the home tract, bound and described as follows:

Commencing at a corner on the South side of a county road, this being the common corner of this lot and property of G.L. Hill, and running with the G.L.

Hill line a South direction 105 feet to a corner; thence a Westward direction with the G.L. Hill line 181 feet to a corner; thence with the G.L. Hill line a Northward direction 105 feet to a corner on county road; thence with said road an Eastward direction 181 feet to the beginning corner.

LESS AND EXCEPTING:

ALL AND SINGULAR, all that certain piece, parcel or lot of land lying and being in Green Sea Township, State and County aforesaid being 1.0 acre as more fully shown upon a plat of Lot Reconfiguration Survey for Everette Guy Long and Margie Dianne Long by James E. Hayes, Jr., RLS of Affiliated Surveyors, dated January 6, 2006, recorded February 10, 2006 in Plat Book 211 at page 188 in the office of the ROD for Horry County, South Carolina. Said plat being incorporated herein by reference and made a part and parcel of this description.

This being the identical property conveyed by Cynthia Graham Howe as Master-in-Equity for Horry County to Horry County State Bank by Master-in-Equity's Deed dated March 13, 2014, recorded March 24, 2014 in Deed Book 3722 at Page 1844 in the office of the ROD for Horry County, South Carolina. TMS: #015-00-01-128

3)  Book 3725, Page 2578, executed by Ginny Hill Oxendine, as Grantor, to Terry Wayne Strickland, as Grantee, recorded April 8, 2014, and being more particularly described as follows:

PARCEL 1:
ALL that certain piece, parcel or tract of land, together with improvements thereon, lying on the Eastern side of South Carolina Highway #33, in the Green Sea Township, and containing 13.2 acres, more or less, the same being a portion of the old D. C. Fussell tract and being more particularly described as follows:

Beginning at a stake corner on the Eastern side of South Carolina Highway #33 and in the corner of George L. Hill land line; thence, turning and running N 02 degrees 0 minutes West along with S. C. Highway #33 for approximately 803.9 feet to a stake corner; thence, North 8 degrees 36 minutes East for 231.2 feet to a stake corner in V. L. Turbeville line; thence South 83 degrees 11 minutes East for 359.1 feet along with V. L. Turbeville line to a stake corner; thence, North 25 degrees 23 minutes East for 89.0 feet to a stake corner, thence, South 67 degrees 30 minutes East for 133.5 feet to a stake corner in Odell Hill line; thence, along with Odell Hill line South 02 degrees 0 minutes East for 996.6 feet to a stake corner in the George L. Hill line; thence, North 87 degrees East for 560.4 feet along with George L. Hill line to the beginning corner.

Being bounded as follows: North by land of V. L. Turbeville, East by land of Odell Hill, South by other land of George L. Hill, and West by South Carolina Highway #33 and E. L. Buffkin Estate. For further reference, see Survey Plat dated October, 1963 and surveyed by Robert D. Inman, R.L.S. #L851(NC).

LESS AND EXCEPTING:

Tract 1: All and Singular, all that certain piece, parcel or lot of land lying and being in Green Sea Township, State and County aforesaid, containing 0.09 acres according to a plat of survey prepared for David N. Collins and Debbie M. Collins by Jack F. Davis, RLS, dated July 20, 1999, recorded September 8, 1999 in Plat Book 165 at page 80 in the office of

the ROD for Horry County. Said plat being incorporated herein by reference and made a part and parcel hereof. This being the identical property conveyed by George L. Hill to Terry W. Strickland by Deed recorded September 22, 1999 in Deed Book 2190 at page 58 in the office of the ROD for Horry County, South Carolina. TMS #: 015-00-01-094

Tract 2: All and Singular, all that certain piece, parcel or lot of land lying and being in Green Sea Township, State and County aforesaid, containing 1.31 acres according to a plat of survey prepared for David N. Collins and Debbie M. Collins by Jack F. Davis, RLS, dated July 20, 1999, recorded September 8, 1999 in Plat Book 165 at page 80 in the office of the ROD for Horry County. Said plat being incorporated herein by reference and made a part and parcel hereof. This being the identical property conveyed by George L. Hill to David N. Collins and Debbie M. Collins by Deed recorded September 22, 1999 in Deed Book 2190 at page 64 in the office of the ROD for Horry County, South Carolina. TMS #015-00-01-108

Tract 3: All and Singular, all that certain piece, parcel, or lot of land lying and being in Green Sea Township, State and County aforesaid, containing 1.94 acres according to a plat of survey prepared for George L. Hill by Jack F. Davis, RLS, dated December 10, 1999, recorded February 24, 2000 in Plat Book 168 at page 33 in the office of the ROD for Horry County. Said plat being incorporated herein by reference and made a part and parcel hereof. This being the identical property conveyed by George L. Hill to Ginny H. Livingston and Davis Henry Livingston, Jr. by Deed recorded March 10, 2000 in Deed Book 2241 at page 750 in the office of the ROD for Horry County, South Carolina. TMS #: 015-00-01-109

Tract 4: ALL AND SINGULAR, all that certain piece, parcel or lot of land lying and being in Green Sea Township, State and County aforesaid, containing 2.02 acres, as more fully shown on that certain plat of survey prepared for Debbie Jean Collins and David Nathan Collins by Jack F. Davis R.L.S., dated September 2, 2009, recorded October 2, 2009 in Plat Book 245 at page 244 in the office of the ROD for Horry County, South Carolina. Said plat is incorporated herein by reference and made a part and parcel of this description.

This property is to be combined with TMS Number: 015-00-01-108 owned by David N. Collins and Debbie M. Collins as more fully shown on the hereinabove referenced plat. This being the identical property conveyed by George L. Hill to David N. Collins and Debbie M. Collins by deed recorded October 9, 2009 in Deed Book 3424 at page 3380 in the office of the ROD for Horry County, South Carolina.

Tract 5: All and Singular, all that certain piece, parcel or lot of land, lying and being in Green Sea Township, County and State aforesaid, containing 3.25 acres, more or less, as shown on that certain map of survey prepared by Carolina Land

Surveyors, LLC, dated October 28, 2005 and recorded in Plat Book 214 at page 223 in the Office of the ROD for Horry County.  Said plat being incorporated herein by reference and made a part and parcel hereof.

Said land is bounded on the West by Fair Bluff Highway; on the South by remaining portion of the lot herein; on the East by Dorris and Odel Hill; and on the North by a remaining portion of land owned by George L. Hill and Ginny H. and Davis Henry Livingston, Jr.  This being the identical property conveyed by George L. Hill to Jeffrey S. Reynolds and Kim E. Reynolds by Deed recorded June 22, 2006 in Deed Book 3117 at page 488 in the office of the ROD for Horry County, South Carolina. TMS #: 015-00-01-129

This being a portion of the property conveyed by the Estate of George L. Hill to Ginny Hill Oxendine by Deed of Distribution, dated May 22, 2012, recorded May 22, 2012 in Deed Book  3586 at page 378 in the office of the ROD for Horry County, South Carolina. TMS#: 015-00-01-011

Parcel 2:
ALL AND SINGULAR, all that certain piece, parcel or tract of land lying and being in Green Sea Township, State and County aforesaid, and being designated as Tract B, containing 8.33 acres, as more fully shown on that certain plat of survey prepared for The Estate of G. L. Hill by Jack F. Davis, R.L.S., dated October 19, 2011, recorded May 15, 2012 in Plat Book 254 at page 263 in the office of the ROD for Horry County, South Carolina.  Said plat being incorporated herein by reference and made a part and parcel of this description.

Together with the right of ingress, egress and other customary usages to that certain 30' Private Shared Driveway as more fully shown on the hereinabove referenced plat of survey.

This being the identical property conveyed by the Estate of George L. Hill to Ginny Hill Oxendine and Deborah Hill Norris by Deed of Distribution dated May 22, 2012, recorded May 22, 2012 in Deed Book 3586 at page 383 and the identical property conveyed by Deborah Hill Norris to Ginny Hill Oxendine by Deed dated May 22, 2012, recorded May 22, 2012 in Deed Book 3586 at page 386 in the office of the ROD for Horry County, South Carolina. TMS #: 015-00-01-154

4)  Book 3565, Page 1471, executed by Terry Wayne Strickland, as Grantor, to Terry Wayne Strickland, Trustee of the Terry Wayne Strickland Living Trust, as Grantee, recorded February 1, 2012 – TMS 0100001034, 0100001050, 0100001057, 0100001100, 0100001111, 0150001001, 0150001007, 0150001085, 0150001094, 0210001083, 0380001006, and being more particularly described as follows:

**TMS #015-00-01-001 & 015-00-01-085**

PARCEL 1  ALL that certain piece, parcel or tract of land, together with improvements thereon, situate, lying and being in Green Sea Township, State and County aforesaid, on the Eastern side of the old Play Card Road and containing sixteen (16) acres, more or less, and being more particularly described as follows: Commencing at a stake corner on the Eastern edge of the Old Play Card Road  at the Southwestern corner of the Elray Buffkin tract running in a northeasterly direction and in a straight line and along the edge of the Elray Buffkin tract to a stake corner in a ditch; thence turning and running in

a easterly direction along said ditch to a stake corner in the turn of said ditch; thence turning and running in a northeasterly direction to a stake corner in the mouth of the said ditch at or near a little branch; thence turning and running in easterly direction to a stake corner in the run of the said branch along the Vollie Turbeville land to a stake corner in the run of said branch at or near the mouth of another ditch; thence turning and running in a southeasterly direction along the tract this day conveyed to Vollie Turbeville to a stake corner near the mouth of a ditch; thence turning and running in a southerly direction along said ditch and along the edge of the tract this day conveyed to Vollie Turbeville to a stake corner in the turn of said ditch; thence turning and running in a westerly direction along the said ditch to a stake corner in the turn of the said ditch; thence turning in a southerly direction and following the said ditch to a stake corner (the same being the southeastern corner of the old Giles Strickland tract); thence turning and running in a westerly direction and following the said ditch to a stake corner on the eastern side of the old Play Card Road (the same being the Southwestern corner of the old Giles Strickland tract); thence turning and running in a northerly direction along the Eastern edge of the old Play Card Road to the beginning corner.  Bounded on the North by the tract this day conveyed to Vollie Turbeville and the tract this day conveyed to Joseph B. Turbeville and a portion of the tract this day conveyed to Sally T. Strickland; on the West by the old Play Card Road.

PARCEL 2    ALL that certain piece, parcel or tract of land together with improvements thereon situate, lying and being on the East side of the old Play Card Road and on the South side of Crooked Run Branch in Green Sea Township, containing sixteen (16) acres, more or less, and being a portion of the old B.A. Anderson tract and being more particularly described as follows: Commencing at an old stake corner at the northwestern corner of the tract herein conveyed and being a corner common to this property and Vollie Turbeville's property and running from said corner in a Southeasterly direction along the run of Crooked Run Branch to a Sweet Gum corner in the run of said branch, being the southeastern corner of this tract and the Northwestern corner of the tract conveyed to Essie T. Hill; thence about eighty-four (84) feet to a pine corner (the same being a corner of the tract conveyed to Essie T. Hill); thence turning and running in a southerly direction and in a straight line and following the western boundary line of the tract conveyed to Essie T. Hill to a ditch on the southern side of the old community road; thence turning and running in an easterly direction and following said ditch along the southern side of said community road to a point in the eastern line of the Old Giles Strickland tract at or near the southern edge of the community road; thence turning and running in a northerly direction and in a straight line with a ditch and with an eastern boundary of the old Giles Strickland tract to a corner in the bend of a ditch; thence turning and running in a Easterly direction and along said ditch to a stake corner in the turn of said ditch; thence turning and running in a Northerly direction and along said ditch to a stake corner in the run of the little branch; thence turning and running in a westerly direction along the run of said branch to a southeastern corner of the Vollie Turbeville property in said branch; thence turning and running in a northeasterly direction along the eastern boundary of the Vollie Turbeville property to the beginning corner.  Bounded on the North by Crooked Run Branch; on the East by the tract this day conveyed to Joseph B. Turbeville; on the West by a portion of the tract conveyed to James French Turbeville and the property of Vollie Turbeville.

PARCEL 3    ALL AND SINGULAR, one certain tract or parcel of land containing fifty (50) acres, more or less, in Green Sea Township on the east side of the Old Play Card Road, bounded as follows:  Commencing at a stake on

corner A. G. Strickland line; thence nearly East course with said Strickland line to the run of Crooked Run Branch; thence with said Branch to the mouth of Little Crooked Run Branch; thence nearly West course with run of said Branch to an agreed corner of E.K. Wilson's line to the beginning corner.

PARCEL 4  ALL that certain tract of land lying and being in Green Sea Township, Horry County, South Carolina, containing twenty-one (21) acres, more or less, and on the East side of the Play Card and Conway County Road. Beginning on George W. Buffkin corner thence said road Northward 175 yards to a stake corner; thence Southeast 608 yards to the run of Crooked Run Branch; thence up said Branch to G.L. Turbeville corner 146 yards; thence Southwesterly to a corner in G.L. Turbeville 183 yards; thence straight line Southwesterly 486 yards; thence to line South westerly 486 yards; thence to the beginning corner and containing 21 acres, more or less, known as the William Strickland land conveyed to Randle Fully.

THIS BEING the same property conveyed to Terry Wayne Strickland by way of Deed from Stan O'Keith Buffkin, Lindy Gene Buffkin, and Gloria R. Buffkin dated February 22, 2011 and recorded February 22, 2011 in the Office of the Register of Deeds for Horry County in Deed Book 3505, at Page 3212.

**TMS #010-00-01-034**

ALL AND SINGULAR all that certain piece, parcel or tract of land situate, lying and being in Green Sea Township, County and State aforesaid, containing thirty (30) acres, more or less, and being more particularly described as follows: Commencing at a stake corner on an old neighborhood road leading from Gapway Swamp to the State line road, thence running along said road a Southern direction 40 yards to an iron stake; thence a Western direction 48 yards to a stump corner; thence 35 degrees 45 minutes Southeast 94 feet; thence 11 degrees 40 minutes Southeast 460 feet to a corner; thence 18 degrees Southeast 100 feet to a gum; thence 88 degrees 15 minutes Southeast 1104 feet to a stake; thence 20 degrees Northeast 297 feet to a stump, thence 66 degrees 10 minutes Southeast 913 feet to a stake corner in the State line; thence running the State line 43 degrees Northwest 733 feet to a point on line, bearing No. 36; thence a straight line a Western direction back to beginning corner.

BOUNDED on the North by land of C.A. Buffkin, and on the East by the state line; on the South by N.H. Buffkin, and on the West by lands of C.A. Buffkin.

THIS BEING A PORTION of that certain tract of land deeded to C.A. Buffkin by Jack Buffkin October 7, 1936, described as a 12 acre tract, there being approximately 40 acres, in said tract of land, recorded in Deed Book A-7, at Page 17, records of Horry County.

THIS BEING the same property conveyed to Terry Wayne Strickland by way of Deed from Eldridge B. Strickland and Flonee S. Schainis dated February 13, 1996 and recorded February 13, 1996 in the Office of the Horry County RMC in Deed Book 1848, at Page 866.

**TMS #010-00-01-050**

ALL AND SINGULAR, all that certain piece, or lot or tract of land situate, lying and being in Green Sea Township, Horry County, South Carolina, and containing 38.1 acres, more or less and being more particularly bounded and described as follows: Lying on the Southern side of the State Line Road leading

from Norton to Spring Branch beginning in the center of the road and ditch; thence North 31 degrees 30 minutes East with said ditch 1 chain and 12 links to the curve of said ditch; thence South 2 degrees 28 minutes West to the center of said ditch 12 chains 84 links to a stake; thence South 86 degrees 30 minutes East 16 chains 71 links to a stump; thence North 19 degrees East 18 chains 81 links to a stake at the Northern edge of said road; thence with the Northern edge of said road North 62 degrees West 6 chains 80 links to the center of a small ditch; thence with the center of the said ditch North 7 degrees 20 minutes East 9 chains 5 links to a stake; thence South 70 degrees 5 minutes West 15 chains 26 links to a stake at the edge of a road; thence North 3 degrees 14 minutes East with the edge of said road 10 chains 91 links to the center of the State Line Road; thence with the center of State Line Road 63 degrees 27 minutes West 3 chains to the beginning corner.

For a more detailed description reference is craved to a certain map or blue print made by T.P. Hinson for J. Hibert Strickland and dated February 1949.  This tract being designated as Tract No. 1 on said map or blue print.

THIS BEING the same property conveyed to Terry Wayne Strickland by way of Deed form Eldridge B. Strickland and Flonee S. Schainis dated February 13, 1996 and recorded February 13, 1996 in the Office of the Horry County RMC in Deed Book 1848, at Page 866.

### TMS#010-00-01-100

ALL AND SINGULAR all that a certain piece, parcel or tract of land situate, lying and being in Green Sea Township, County and State aforesaid, containing Forty-seven and Forty-five one hundredths (47.45) acres, more or less, and being more particularly described as follows:  Beginning at a stake N on the East side of the old Tram Road, being on the South side of the C.A. Buffkin tract of land; thence 71 degrees 40  minutes Northeast 1877 feet to a gum corner; thence 14 degrees 35 minutes Northwest 563 feet to a gum; thence 11 degrees 40 minutes Northwest 460 feet; thence 35 degrees 45 minutes Northwest 94 feet; thence 89 degrees 35 minutes Northwest 409 feet; thence 89 degrees 50 minutes Northwest 627 feet to a stake N; thence 13 degrees 20  minutes Southwest parallel with the old Tram Road 1820 feet back to beginning corner.

BOUNDED on the North by other lands of C.A. Buffkin; on the East by lands of N.H. Buffkin and land of this day conveyed to Gertrude Buffkin Strickland by C.A. Buffkin; on the South by lands of J.H. Strickland; and on the West by other lands of C.A. Buffkin.

THIS BEING A PORTION of a 100 acre tract of land conveyed to C.A. Buffkin by Jackson Buffkin and recorded in Book Z-6, at Page 291, records of Horry County and designated as tract a on map of S.D. Cox, Jr., dated October 25, 1939 in a survey of lands of C.A. Buffkin.

THIS BEING the same property conveyed to Terry Wayne Strickland by way of Deed from Eldridge B. Strickland and Flonee S. Schainis dated February 13, 1996 and recorded February 13, 1996 in the Office of the Horry County RMC in Deed Book 1848, at Page 866.

### TMS #010-00-01-111

ALL AND SINGULAR, all that certain piece, parcel or tract of land lying and being in Green Sea Township, State and County aforesaid, containing 13.55

acres, as more fully shown on that certain plat of survey prepared for Eddie Lascoe Strickalnd and Allyson S. Strickland by Lower Carolina Surveying, dated November 15, 2010, recorded March 9, 2011 in Plat Book 251 at Page 93 in the Office of the Register of Deeds for Horry County, South Carolina. Said plat being incorporated herein by reference and made a part and parcel of this description.

THIS BEING the same property conveyed to Terry Wayne Strickland by way of Deed form Eddie Lascoe Strickland and Allyson S. Strickland dated March 24, 2011 and recorded March 25, 2011 in the Office of the Register of Deeds for Horry County in Deed Book 3511, at Page 2239.

### TMS #021-00-01-083

ALL AND SINGULAR, all that certain piece, parcel or tract of land in State and County aforesaid and in Green Sea Township, containing thirty-six (36) acres, more or less, and lying on both sides of Plantation Road running through farm of E. Luther Floyd, deceased, and South of Iron Springs swamp, and bounded and described as follows: Beginning at a stake on the Southern edge of said swamp, property line of Mrs. Maude Floyd Crosby, running Southeastwardly along the edge of said swamp to white oak 3x0; in the edge of said swamp; thence South 53 deg. 30 min. East along J. Floyd estate land 1140 feet to a stake 3x0; thence South 39 deg. 30 min. East 470 feet to a stake 3x0; thence South 47 deg. 30 min. West 2470 feet to a stake on the property line of Mrs. Maude Crosby; thence North 15 deg. 30 min. West to the beginning point on the edge of Iron Springs Swamp.

BOUNDED on the North by Iron Spring Swamp and J. Floyd estate lands; East by J. Floyd estate lands and HC Powell estate lands; South by estate lands of HC Powell; and West by tract #7, property of Mrs. Maude Crosby, being designated as tract #8 on Partition map of estate lands of E. Luther Floyd made by J.B. Gore surveyor November 1927.

THIS BEING the same property conveyed to Terry Wayne Strickland by way of Deed from Richard "Ricky" Wayne Floyd dated May 20, 2011 and recorded May 20, 2011 in the Office of the Register of Deeds of Horry County in Deed Book 3520, at Page 2750.

### TMS #015-00-01-002

ALL AND SINGULAR, that certain tract or parcel of land in State and County aforesaid and in Green Sea Township, containing 22 acres, more or less, and bounded as follows: On the North by V.L. Turbeville, East by B.L. Turbeville, South by V.L. Turbeville, on West by J.F. Wilson.

LESS AND EXCEPTING: Three acres previously deeded to J.F. Wilson. For further references as to the courses and distances refer to Deed by Randall J. Foley to E.K. Wilson dated September 1915 in Book D-4, at Page 140.

ALSO EXCEPTING: One acre of land previously conveyed to Ernest Foley recorded in Book 46, at Page 236 and Book 8, at Page 160 in the Office of the Register of Deeds for Horry County.

THIS BEING the same property conveyed to Terry Wayne Strickland by way of Deed from J. Stanton Cross, Jr., as Master in Equity for Horry County, dated June 10, 2008 and recorded June 17, 2008 in the Office of the Register of Deeds

for Horry County in Deed Book 3343, at Page 2034.

**TMS #015-00-01-007**

ALL AND SINGULAR, all that certain piece, parcel or tract of land situate, lying and being in Green Sea Township, Horry County, South Carolina, in School District No. 2, about One (1) mile south of the North Carolina state line on the West side of the Green Sea-Fair Bluff Highway, containing 23.15 acres, more or less, and being bounded now or formerly as follows: on the Northeast by Flossie Strickland; on the Southeast by V. Carlisle Buffkin and Eldred Buffkin; and on the West by Carrietta Strickland and W.P. Strickland.

THE ABOVE described land is more particularly shown on a map or survey by J.F. Thomas, R.L.S., dated August 23, 1973 and recorded in Plat Book 56, at Page 168, in the Office of the Clerk of Court for Horry County, reference to which is craved as forming a part and parcel hereof.

THIS BEING the identical property conveyed to George Gately Hammond by deed recorded in Deed Book 1149 at Page 157, and the same property conveyed to Terry Wayne Strickland by way of Deed from George Gately Hammond dated December 23, 1999 and recorded December 30, 1999 in the Office of the Register of Deeds for Horry County in Deed Book 2220, at Page 1264.

**TMS #038-00-01-006**

ANY AND ALL INTEREST in and to the following described property:

ALL AND SINGULAR, all those certain pieces, parcels or lots of land lying and being in Green Sea Township, State of South Carolina, County of Horry and being designated as Lot A, containing 3.83 acres and Lot B containing 3.69 acres according to a plat of survey prepared for Twin City Equipment Co., Inc. by Terry M. Watson, RLS, dated February 8, 2005 and recorded in Plat Book 203, at Page 232 in the Office of the Register of Deeds for Horry County and being incorporated herein by reference and made a part and parcel hereof.

This being the identical property conveyed by the Master-in-Equity for Horry County to Horry County State Bank by Master's Deed dated June 15, 2011, recorded July 6, 200 in Deed Book 3528 at Page 1695 in the office of the ROD for Horry County, South Carolina.

THIS BEING the same property conveyed to Terry W. Strickland and Jean S. Causey by way of Deed from Horry County State Bank dated August 17, 2011 and recorded August 18, 2011 in the Office of the Register of Deeds for Horry County in Deed Book 3536, at Page 437.

**TMS #015-00-01-094**

ALL AND SINGULAR, that certain piece, parcel or tract of land, lying, being and situate in Green Sea Township containing 1.21 acres, more or less, and being more particularly designated as Tract 2 on a plat by Soles & Walker, P.A., R.L.S., dated March 5, 1991 and by reference thereto is incorporated as a part and parcel of this description.

THIS PROPERTY is more particularly bounded as follows: on the North by other lands of the grantee; on the East by other lands of Landis and Joyce Buffkin; on the South by lands of G.L. Hill in part and South Carolina Highway

33 in part; on the West by the center line of South Carolina Highway 33.

THIS BEING the same property conveyed to Terry W. Strickland by way of Quit-Claim Deed from Vollie L. Turbeville, Landis Buffkin, Joyce Buffkin, and Virginia T. Strickland dated March 18, 1991 and recorded March 19, 1991 in the Office of the Register of Deeds for Horry County in Deed Book 1457, at Page 391.

**TMS #010-00-01-057**

ANY AND ALL INTEREST in and to the following described property:

ALL AND SINGULAR, that certain piece, parcel or tract of land containing nine (9) acres, more or less, in Green Sea Township, Horry County, South Carolina described as follows:  Bounded on the north by Wilma Ruth Lovette; on the East by Tunney Strickland; on the South by the W.P. Strickland Estate; and on the West by Tunney Strickland.

THIS IS THE BALANCE of a tract of land containing 30 acres, more or less, in Green Sea Township, conveyed to Gracie Turbeville by Georgianna Strickland on March 21, 1950, which deed is recorded in Deed Book 74, Page 198, Office of the Clerk of Court for Horry County.

LESS AND EXCEPTING a 3 acre tract conveyed to W. Pink Strickland by M.J. Strickland on April 2, 1927, recorded in Deed Book T-5, at Page 221, Office of the Clerk of Court for Horry County.

THIS BEING the same property conveyed to Tunney Strickland and Terry Wayne Strickland by way of Deed from Gracie Turbeville dated March 5, 1974 and recorded March 5, 1974 in the Office of the Clerk of Court for Horry County in Book 508, at Page 265.

5) Book 3565, Page 1483, executed by Charlene Elliott Strickland, as Grantor, to Charlene Elliott Strickland, Trustee of the Charlene Elliott Strickland Living Trust, as Grantee, recorded February 1, 2012 – TMS #019-00-01-041, and being more particularly described as follows:

ALL that certain piece, parcel, tract, or lot of land situated in Floyds Township, Horry County, containing 1.0 acre, more or less.  This being the same property conveyed to Myrtle Elliott October 13, 1979 and recorded in Deed Book 656, at Page 890 in the RMC Office of Horry County.

THIS BEING the same property conveyed to Charlene Elliott Strickland by way of Deed of Distribution from the Estate of Myrtle Elliott dated June 17, 2008 and recorded June 17, 2008 in the Office of the Register of Deeds for Horry County in Deed Book 3343, at Page 2038.

6) Book 3343, Page 2038, executed by Myrtle Elliott and Charlene Strickland, as Grantors, to Charlene Strickland, as Grantee, recorded June 17, 2008, and being more particularly described as follows:

All that certain piece, parcel, tract, or lot of land situated in Horry County, this being the same land conveyed to Myrtle Elliott.  The decedent herein, by Deed dated October 13, 1979 and recorded in Deed Book 656 at Page 890 in the RMC office of Horry County.  Floyds Township, 1.0 acre, more or less.

7) Book 2190, Page 58, executed by George L. Hill, as Grantor, to Terry W. Strickland, as Grantee, recorded September 22, 1999, and being more particularly described as follows:

All and Singular, all that certain piece, parcel, or lot of land lying and being in Green Sea Township, State and County aforesaid, containing 0.09 acres according to a plat of survey prepared for David N. Collins and Debbie M. Collins by Jack F. Davis, RLS, dated July 20, 1999, recorded September 8, 1999 in Plat Book 165 at page 80 in the office of the ROD for Horry County.  Said plat being incorporated herein by reference and made a part and parcel hereof.

This being a portion of the property conveyed by Sally T. Strickland and Willie Strickland to George L. Hill by deed recorded June 17, 1988 in Deed Book 1226 at page 329 in the office of the ROD for Horry County.

8)  Book 1452, Page 349, executed by James E. Clardy, as Grantor, to Terry Wayne Strickland, as Grantee, recorded February 22, 1991, and being more particularly described as follows:

All and Singular, all that certain parcel or tract of land, together with the improvements thereon, situate, lying and being in Green Sea Township, Horry County, South Carolina, containing 53.5 acres, more or less, lying approximately 6 miles North of Green Sea, South Carolina, on both sides of the highway leading from Green Sea South Carolina to Fair Bluff, North Carolina in High School District Number 3, being more particularly bounded and described as follows:  North by lands of V. L. Turbeville and Flossie Strickland; East by lands of V.L. Turbeville; South by lands of V. A. Buffkin; West by lands of V. A. Buffkin and Robert Buffkin.

For a more accurate and complete description of this tract of land reference is made to a map thereof made for Elery Buffkin dated January 28, 1935, by W. J. Baldwin, Surveyor, and recorded in the office of the RMC for Horry County, in Plat Book 30 at Page 70.

There is included with this conveyance 6,488 pounds of Tobacco Allotment.

EXCEPTING from this conveyance is a tract of land described as follows:  All and Singular, all that certain piece, parcel or lot of land lying and being in Green Sea Township, State and County aforesaid and containing 1.94 acres, more or less, excluding South Carolina Highway 33 right-of-way, and being more particularly delineated on map entitled "Survey for James E. Clardy", dated February 20, 1991, by Soles and Walker, R.L.S. , a copy of which is attached to the deed recorded in Book 1452 at Page 349, and which is incorporated herein by reference as if completely set forth.

This is a portion of that tract of land conveyed by Louise B. Grainer to James E. Clardy by deed recorded in Deed Book 1452 at Page 346 in the office of the RMC for Horry County.

Less and except any piece, parcel of land conveyed to a third party after recordation of the above referenced deeds and prior to the date of recording of this Mortgage.

# EXHIBIT E

AO 450 (Rev. 01/09)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### District of South Carolina

| | |
|---|---|
| HARVEY FERTILIZER AND GAS CO., | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.    3:09-342-CMC |
| STRICKLAND FARMS OF GREEN SEA, INC., | ) |
| TERRY WAYNE STRICKLAND, and CHARLENE | ) |
| ELLIOTT STRICKLAND, | ) |
| *Defendants* | |

### JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

■ the plaintiff, Harvey Fertilizer and Gas Co., recover from the defendants, Strickland Farms of Green Sea, Inc.; Terry Wayne Strickland; and Charlene Elliott Strickland, the amount of Four Hundred Three Thousand, Seven Hundred Ninety-Nine and 44/100 dollars ($403,799.44), plus prejudgment interest at the rate of 10% per annum from and after December 31, 2015 until the date of this judgment, plus postjudgment interest at the rate of 1.86%, along with attorneys fees in the amount of Seventy Thousand, Four Hundred Forty-One and 79/100 dollars ($70,441.79).

     the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____ recover costs from the plaintiff *(name)* _____.

This action was *(check one)*:

     tried by a jury with Judge _____ presiding, and the jury has rendered a verdict.

     tried by Judge _____ without a jury and the above decision was reached.

■ decided by the Court, the Honorable Mary Geiger Lewis, US District Judge, presiding.  The Court having heard and granted the plaintiff's motion for summary judgment.

Date:  September 25, 2019             *ROBIN L. BLUME, CLERK OF COURT*

                                         s/Charles L. Bruorton

                                         *Signature of Clerk or Deputy Clerk*

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No.  20-02804-jw |
| TERRY WAYNE STRICKLAND and | ) | |
| MATTIE CHARLENE | ) | Chapter 12 |
| STRICKLAND, | ) | |
| | ) | |
| Debtors | ) | **CERTIFICATE OF SERVICE** |
| | ) | |

I, J. Michael Fields, of Ward and Smith, P.A., do hereby certify that a copy of the foregoing NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY PURSUANT TO 11 U.S.C. §362(d)**,** MOTION FOR RELIEF FROM AUTOMATIC STAY PURSUANT TO 11 U.S.C. §362(d)(1) and (2), and MOVANT'S CERTIFICATION OF FACTS were served upon all parties in interest as shown below, by placing copies of the same in the United States Mail, first class postage prepaid, and by electronic notification through the Court's ECF/NEF System at the time of filing the 16th day of October, 2020, at Greenville, North Carolina:

Terry Wayne Strickland
6470 Strickland Rd
Green Sea, SC  29545

Reid B. Smith, Esq.
Bird and Smith, P.A.
712 St. Julian Place, Suite 102
Columbia, SC  29204-2447

Mattie Charlene Strickland
6470 Strickland Rd
Green Sea, SC  29545

J. Kershaw Spong, Esq.
Robinson Gray Stepp & Laffitte, LLC
P. O. Box 11449
Columbia, SC  29211-1449

M. Kevin McCarrell, Esq.
Fox Rothschild LLP
2 West Washington Street
Suite 1100
Greenville, SC  29601

Helena Chemical Company
225 Schilling Blvd
Collierville, TN  38017-7177

Suzanne Taylor Graham Grigg,
Esq.
Nexsen Pruet, LLC
Post Office Box 2426
Columbia, SC  29202

Luke M. Allen, Esq.
Adams and Reese LLP
1501 Main Street, 5th Floor
Columbia, SC  29201

Horry County Treasurer
1301 Second Avenue
Conway, SC  29526-5209

Anderson Brothers Bank
Attn:  Luke Gasque
PO Box 301
Mullins SC  29574

United Community Bank
Attn:  Charlotte Childs
PO Box 398
Blairsville, GA  30512

/s/ *J. Michael Fields*
J. Michael Fields
Admitted *Pro Hac Vice*
N.C. State Bar I.D. No.:  018170
E-mail:  jmf@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 8088
Greenville, NC 27835-8088
Telephone:  252.215.4000
Facsimile:  252.215.4077
*Counsel for Harvey Fertilizer and Gas Co.*
   *Admitted Pro Hac Vice*

October 16, 2020
Greenville, North Carolina