**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>Terry Wayne Strickland and Mattie Charlene Strickland<br><br>Debtors | Case No. 20-02804-JW<br><br>Chapter 12 |

**OBJECTION TO THE CONFIRMATION OF PLAN**

Agrifund, LLC, d/b/a ARM ("ARM") files this objection the confirmation of the Debtors' plan filed on October 5, 2020.

**Statutory Predicates for Relief and Jurisdiction**

1. This Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157(a) and (b), and Local Civil Rule 83.IX.01, DSC. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

2. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for relief are 11 U.S.C. § 1222, 1225.

**Facts**

4. These Debtors, according to their own schedules, indicate that they have filed for bankruptcy four times since December 11, 2018, including this case. See Docket No. 32.

5. The first case was filed by Terry Wayne Strickland, Case No. 18-06291; the second case was filed by Mattie Charlene Strickland, Case No. 19-00181; and the third prior case was filed as Case No. 19-06387, filed by Willian Scott Strickland.

6. It is unclear who William Scott Strickland is or how that prior case is related to these Debtors.

7. ARM provided crop financing for the Debtors in April 22, 2019, in the amount of $1,568,502 for the 2019 crop year.

8. This was approximately 5 days after the dismissal of the Debtors' second case.

9. ARM's loan was secured by a security agreement and a UCC-1 against the

Debtors' interests in any state or federal farm programs, all proceeds (including insurance, general intangibles or programs); any and all crops/farm products of every kind and included a detailed list of FSN numbers which were included in the security agreement. See Page 15 of Proof of claim 16-1.

10. ARM was further protected by a subordination agreement between ArborOne and ARM whereby ArborOne (a creditor in this case) agreed to be subordinated to ARM to any crops, crop insurance indemnity for 2019 crop year, and any FSA payments for 2019 and 2020. See Proof of claim 16-1 at page 17.

11. The 2019 crop year was not sufficent to pay ARM in full and the balance due to ARM for the unpaid financing for the 2019 crop year was $157,655.92 as of the petition date for this case.

12. The Debtors filed this joint chapter 12 case on July 6, 2020, (the "Petition Date").

13. ARM was not listed as a creditor on the Debtors' schedules or amended schedules.

14. The Debtors' schedules indicate that they either directly, or indirectly through trusts, own approximately 560 acres of property.

15. Two stay relief motions have been filed seeking to foreclose on properties pledged as collateral for loans from creditors.

16. One such stay relief motion, filed by ArborOne, was granted, and ArborOne appears to be proceeding with foreclosing on a significant portion of the Debtors' properties.

17. ArborOne's foreclosure appears to encompass 376 acres of property, or 67% of the total property owned or controlled by the Debtor.

18. Additionally, Harvey Fertilizer and Gas Co. has a pending motion for relief from the automatic stay and are seeking to foreclose on property pledged as collateral.

19. The Debtors' schedules and statements list several parcels of property held in trust or jointly owned with others which appear to be unencumbered and non-exempt. Specifically those properties are:

    a. A 50% interest in 62.42 acres with a TMS # of 0150001017 and a an estimated ownership of $83,270.00;

    b. The remainderman in a life estate held by Virginia Strickland in TMS # 0100001098 with a tax value $55,800;

    c. A property located Cerro Gordo township, Columbus county, NC PIN # 0107.00-80-5788.000 with a tax value $26,700;

    d. 24.82 acres in Green Sea, SC TMS # 150001002 with a tax value of $119,860;

    e. A 6.68 acre property with the TMS # 100001057 and a value of $29,700;

    f. A 3.24 acre property with the TMS # 1500001085 and a value of $16,400;

    g. A 50% interest in 7.51 acre property with improvements held in trust with the TMS # 0380001006 and a value to the Debtors of $176,650.

    h. A 5.39 acre property in Columbus County, NC, held in trust with the PIN # 0107.00-81-8059.00 and a value to the Debtors of $12,300.

20. ARM learned of the bankruptcy and filed a proof of claim on September 10, 2020, Claim No. 16-1.

21. The Debtors' plan was filed on October 5, 2020 (the "Plan").

22. In the Plan ARM was listed as a secured creditor.

23. The Plan proposes to value ARM's claim at $0 because it asserts that ArborOne's lien is superior to ARM's.

24. The Debtors' Plan further proposes to pay $147,656.87 per year to their creditors for five years, starting December 31, 2021.

25. This income is apparently to be derived through a sharecropping relationship with a friend, Cal Cox.

## Arguments

The Court should not approve the filed Plan as it is not feasible, pays less to unsecured creditors than they would receive in a chapter 7, and improperly values ARM's secured claims.

3

I.    *The Plan Does Not Appear Feasible*

The Debtor bears the burden to prove by a preponderance of the evidence that the Court should confirm a proposed plan. *In re Pressley*, 502 B.R. 196, 202 (Bankr. D.S.C. 2013). Thus, "if any creditor calls into question any element required for confirmation, it is the debtor's burden to prove compliance therewith." *In re Keith's Tree Farms*, 519 B.R. 628, 636 (Bankr. W.D. Va. 2014).

In re Akers, 594 B.R. 362, 369 (Bankr. W.D. Va. 2019)

The Debtors have not met their burden of proving that the Court should confirm this Plan. In order to confirm this Plan, the Debtors must demonstrate that the Plan is feasible. The Debtors are not required to "guarantee the ultimate success of their plan, but only to provide a reasonable assurance that the plan can be effectuated." *In re Wise*, No. 12-07535-dd, 2013 Bankr. LEXIS 2299, 2013 WL 2421984, at *3 (Bankr. D.S.C. May 31, 2013).

While the Debtors need not guarantee the results, "[t]he Court must be persuaded that it is *probable*, not merely possible or hopeful, that the Debtors can actually pay the restructured debt and perform all obligations of the plan." *In re Rape*, 104 B.R. 741, 749 (W.D.N.C. 1989) . The Debtors' Plan is not feasible for the numerous reasons set out below.

The Debtors' Plan proposes to pay creditors through a sharecropping arrangement with a friend. According to the Plan, this arrangement will generate income for the Debtors. The detailed terms of this agreement were not sufficiently disclosed in the Plan, nor was the written agreement provided. The lack of information in the sharecropper arrangement frustrates the ability of parties to evaluate the feasibility of this Plan. It does not provide long term projections of what the Debtors estimate the yields to be in future years, it does not detail if the sharecropper will use the Debtors' equipment or his own, it does not demonstrate how the sharecropper will afford the financing needed to fund the planting and harvesting expenses, it does not address to what extent the proceeds will be impaired by liens, it does not specify will crop insurance be placed on the endeavors, it does not stipulate how those proceeds will be divided, etc. Additionally, because this is a new arrangement, the Debtors cannot provide any evidence demonstrating this arrangement will provide the promised results. This lack of information clearly

demonstrates that the Debtors have failed to carry their burden of showing the Plan is feasible.

The Debtors' projections on disposable income are vague and leave a large amount of money unaccounted for, which appears to be disposable income that should go to pay unsecured creditors. According to this sharecropping arrangement, the Debtors estimate that they will receive $228,916 from this agreement and $16,800 from social security according to the bankruptcy schedules. This gives the Debtors a total proposed income of $245,716 per year. The Plan requires $147,656 to pay creditors, and $38,700 for living expenses. This is a total expense burden of $186,356. This leaves a total net income after paying plan and living expenses of $59,360, which appears to be disposable income that should go to pay the unsecured creditors. Additionally, ARM would note this Plan does not include a provision to pay taxes related to this income, explain how such taxes might affect this income in some estimated fashion, or how the Debtors will remain current on taxes going forward as required.

The success of this Plan is predicated on successful sharecropping of property currently owned by the Debtors. However, ArborOne has been granted stay relief to foreclose upon approximately 67% of the Debtors' property. Harvey Fertilizer and Gas Co. has a pending stay relief motion to foreclose on another portion of the Debtors' property. Presumably this reduction in the Debtors' land holdings will affect the Debtors' ability meet his estimates on what income is possible from the sharecropping arrangement between the Debtors and the sharecropper. This goes directly to the feasibility of the Plan and a reduction in the land holdings makes the Plan less feasible.

Finally, the Debtors' Plan indicates that they require $38,700 for living expenses. The Debtors receive income from social security of $16,800. It is unclear how the Debtors' have maintained their living expenses since the case was filed as the Debtors have only filed the monthly operating report for July and have failed to file August or September. The failure to file those documents are grounds for the dismissal or conversion of the case and make it impossible for the parties in interest to evaluate the Debtors Plan and its feasability.

For the numerous reasons outlined above the Plan is not feasible and should not be confirmed.

### II.     The Plan Fails to Adequately Address the Chapter 7 Liquidation Analysis

It appears that this Plan would pay far less to unsecured creditors than they would receive in a chapter 7. As set out in the facts above, the Debtors have several significant assets in trust that are not subject to liens. The details about the trusts were not provided to explain what level of creditor protection is provided by the trusts. Presumably, if these assets were liquidated, they would pay something to the unsecureds since they do not appear to be exempt, and appear to be a recoverable transfer. There also appear to exist several parcels of wholly or partially owned property which could go to repay creditors and do not appear to be exempt property. The Plan does not address or propose to liquidate these properties.

As such there may be more than $520,000 in unencumbered, non-exempt property that may be liquidated to pay unsecured creditors, far more than the roughly $25,000 the Plan proposes to pay unsecured creditors. The failure to pay more in the chapter 12 than the unsecured creditors would receive in a hypothetical chapter 7 is grounds for denial of the Plan pursuant to 11 U.S.C. § 1225(a)(4).

### III.    The Plan Does Not Allow ARM to Retain its Secured Claim

ARM is unsure to what extent it is secured and unsecured. ARM believes it retains a lien in the Debtors' expected Farm Service Agency payments ("FSA") for 2019 and 2020, making ARM at least partially secured. Pursuant to 11 U.S.C. § 1125(a)(B)(i), when a secured creditor does not accept a plan, the debtor must either surrender the collateral or allow the creditor to retain its lien. ARM does not accept this Plan and as such the Debtors' options are to surrender ARM's collateral or to provide it the lien or value of such property. The Debtors' Plan as filed proposes to improperly avoid ARM's claims, does not propose to surrender its collateral, and does it propose to provide ARM the value of its secured claim. To the extent there are insurance proceeds payable from the 2019 crop year, or FSA payments which remain unpaid from 2019 or 2020, this Plan fails to address those items of collateral and as such the Plan should be denied.

### **Conclusion**

Any of the above objections to the Plan are independent grounds for the denial of confirmation of the Plan. Taken together, and due to the inadequacies in the Plan, Creditors cannot reasonably be expected to rely on this Plan to govern their future payments and conduct with these Debtors. The Court should not confirm this Plan and should deny confirmation.

Wherefore ARM would respectfully ask this court to deny confirmation of this Plan and to award such other relief as it deems necessary.

Date of Service: October 23, 2020

**Markham Law Firm, LLC**

  /s/Sean Markham
Sean Markham , I.D. # 10145
Attorney for Agrifund, LLC
PO Box 20074
Charleston, SC 29413-0074
Tel: (843) 284-3646
Email: sean@markhamlawsc.com